Wesley Mead
**THE MEAD LAW FIRM, P.C.**
*Attorney for Defendants-Lenex Services, Inc., Alexander Blantz, Gala Trading, Inc., and Igal Blantz*
20-77 Steinway Street, Suite SL
Astoria, New York 11105
Tel: (866) 306-5547
Alt Tel: (718) 306-2107
Fax: (866) 306-0337
*wmeadlaw@gmail.com*

**ORAL ARGUMENT REQUESTED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

ALLSTATE INSURANCE COMPANY, ET AL,

Plaintiffs,

-against-

ARTUR AVETISYAN, ET AL.,

Defendants.

---------------------------------------------------------------X

Civil Action No.:
17-CV-4275-LDH-RML

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION PURSUANT TO RULE 65 AND 28 U.S.C. § 2283 FOR A TEMPORARY RESTRAINING ORDER, AND A STAY OF ALL NEW YORK STATE COURT PROCEEDINGS AND ARBITRATIONS**

**TABLE OF CONTENTS**

**INTRODUCTION**......5

**PRELIMINARY STATEMENT**......5

**COUNTERSTATEMENT OF RELEVANT FACTS**......6

**STANDARD OF REVIEW**......7

**ARGUMENT**......10

I. THE PLAINTIFFS ARE NOT ENTITLED A TEMPORARY RESTRAINING ORDER, AND A STAY OF ALL NEW YORK STATE COURT PROCEEDINGS AND ARBITRATIONS PURSUANT TO RULE 65 AND 28 U.S.C. § 2283......10

A. Plaintiffs have not shown that an exception to the Anti-Injunction Act applies or that Plaintiffs have met the standard for a TRO/Stay......9

B. Plaintiffs have affirmatively utilized the New York State Court proceedings to Continue to litigate after the filing of the instant Complaint, and after the application for the TRO/Stay......14

C. Plaintiffs' application for a TRO/Stay violates the Full Faith and Credit Clause within Article IV, § 1, of the United States Constitution......15

D. Plaintiffs' application for a TRO/Stay violates the McCarran-Ferguson Act, 18 U.S.C. 1012......17

**CONCLUSION**......19

# TABLE OF AUTHORITIES

**Cases**

*Allstate v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 Fed. App'x 716 (2d Cir. 2017)……………………………………………………9,18

*Amaker v. Fischer*, No. 10-CV-0977A, 2012 WL 8020777, (W.D.N.Y. Sept. 28, 2012)……….9

*Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 285 (1970)……………...15,18

*Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)…………………9

*Brooks v. Roberts*, 251 F. Supp. 3d 401 (N.D.N.Y. 2017)……………………………………7,8,9

*Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011)…………………………………….8

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)……………………………………10

*Donohue v. Mangano*, 886 F.Supp.2d 126, 149-50 (E.D.N.Y. 2012)……………………………8

*GEICO v. Lenex Services, Inc., et al.*, E.D.N.Y., 16-cv-06030-LDH-CLP……………………..13

*Gen. Mills, Inc. v. Chobani, LLC*, 158 F.Supp.3d 106, 114 (N.D.N.Y. 2016)……………..……7

*Hancock v. Essential Res., Inc.*, 792 F.Supp. 924, 928 (S.D.N.Y. 1992)……………………….9

*Lincoln House, Inc. v. Dupre,* 903 F. 2d 845 (1st Circuit 1990)……………………………….10

*Mazurek v. Armstrong,* 520 422*422 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)…7

*Medalliance Med. Health Servs. v. Allstate Ins. Co.*, 40 Misc.3d 349 (Civil Court, Queens County 2013)…………………………………………………………..17

*N.Y. ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)…………………..8

*Oliver v. Ricci*, Dist. Court, Civil Action No. 17-cv-140 (WD Pennsylvania 2017)…………..13

*Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F.Supp.2d 446, 452 (S.D.N.Y. 2011)……………..7

*Religious Technology Center v. Wollersheim*, 796 F. 2d 1076 (9th Circuit 1986)………………10

*San Remo Hotel, LP v. City and County of San Francisco*, 545 US 323 (2005)……………..16

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*., 130 S. Ct. 1431 (2010)………17

*Sinisgallo v. Town of Islip Hous. Auth.,* 865 F.Supp.2d 307, 331 (E.D.N.Y. 2012)…………8, 13

*Sterling Suffolk Racecourse v. Burrillville Racing*, 802 F. Supp. 662 (Dist. Court, D. Rhode Island 1992)……………………………………………..……………10

*Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999)…………………………………8

*Trane Co. v. O'Connor Securities*, 718 F. 2d 26 (2nd Circuit 1983)…………………………11

Weinstein v. Krumpter, 120 F.Supp.3d 289, 297 (E.D.N.Y. 2015)………………………………8

*Winter v. Nat'l Res. Def. Council, Inc*., 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)..7

*Wisdom Import Sales Co. v. Labatt Brewing Co*., 339 F.3d 101, 113-14 (2d Cir. 2003)………..8

**Statutes**

Fed R. Civ. P. § 65……………………………………………………………………………….5

28 U.S.C. §2283……………………………………………………………………………………5

18 U.S.C. §1012…………………………………………………………………………………..17

28 U.S.C. § 1746(2)…………………………………...……………………………………………5

18 U.S.C. § 1964(a)……………………………………………………………………..……11

CPLR § 7510………………………………………………………………………………………16

CPLR § 7514………………………………………………………………………………………16

**Constitutional Clauses**

Article IV, § 1, of the United States Constitution…………………………………………………16

## INTRODUCTION

Defendants, Lenex Services, Inc., ("Lenex"), Alexander Blantz, Gala Trading, Inc., ("Gala") and Igal Blantz submit the within memorandum of law in opposition to the several Plaintiffs' motion for a temporary restraining order and a stay of all New York State Court proceedings and arbitrations pursuant to Rule 65 of the Fed. R. Civ. P., and 28 U.S.C. §2283.

## PRELIMINARY STATEMENT

Plaintiffs rely completely on the wholly conclusory purported[1] declaration of Mr. Michael Bruno, which is woefully deficient to meet the standard for a TRO or a Stay under Rule 65 of the Fed. R. Civ. P., and 28 U.S.C. §2283. Mr. Bruno states that he "reviewed spreadsheets" and is an SIU Analyst, without an explanation as to when he was employed by Allstate in that capacity, no statements as to his training and experience, no explanation as to what the duties of an SIU Analyst consist of, no statements regarding the merits of the Complaint are adduced by Mr. Bruno, no evidence is presented regarding the substance of the purported 'investigation,' no evidence is introduced regarding Allstate's Claim's Department's perspective on this case (which is a glaring deficiency given that Allstate's Claim's Department not only continues to authorize payments after the filing of the RICO Complaint, but also authorizes its attorney's to not only continue to settle cases with Defendant Lenex almost a full year after the filing of the RICO but also to expedite trials, and enter into prima facie trial stipulations). See Allstate/Lenex Settlements, Trial Stipulations within Exhibit A. It belies the entirety of Plaintiffs arguments on this motion for a TRO/Stay, when Allstate is affirmatively utilizing the New York State Courts and AAA well after

[1] The Michael Bruno declaration, which does not state that it is made "under penalties of perjury" does not meet the requirements of 28 U.S.C. § 1746(2) or Fed. R. Civ. P. §65(b)(1)(A), and given its completely conclusory nature, does not qualify as "evidence" for a TRO/Stay.

the filing of this RICO action, to settle actions, and affirmatively litigate "*all non-waivable defenses*," which of course counsel for Plaintiffs here knows full well, that the phrase "*all non-waivable defenses*" includes any and all allegations of fraud. Simply put, the Plaintiffs here attempted to obtain favorable judgments by going forward in trials and arbitrations, in the hope of obtaining favorable judgments, perhaps to utilize the same within this RICO action, but upon losing those trials and arbitrations, seek to stay those proceedings and others and a TRO to fit their needs in this case.

## COUNTERSTATEMENT[2] OF FACTS

Defendants deny the allegations as set forth by the Allstate Plaintiffs in their statement of facts within their respective declarations, and memorandums of law and exhibits in support of their application for a TRO/Stay. Defendants, have been subjected to deceptive practices by Allstate and sued here. Allstate has systematically abused the RICO and No-Fault laws in a contrived effort to complete their fraudulent payment avoidance scheme. The various criminal cases yet again, prejudicially cited by Allstate, have no relationship to these defendants. And the purported fraud statistics of insurance companies "suspected" fraud referenced by Allstate, if the statistics include Allstate's false claims of fraud as here, illustrates an even greater elevation of the scheme by Allstate, to influence governmental agencies, federal and state courts, via false reports. And the greater the latitude that Defendants are able to obtain disclosure and discovery in this case, the more unraveled these "statistics" are likely to become. Allstate's affirmative decisions to invoke the New York State Courts and AAA while this case is pending to attempt to obtain favorable decisions or evidence, negates their application for a TRO/Stay.

[2] Defendants incorporate by reference all facts/denials in their Answer/Counterclaim to the Amended Complaint, and in the preliminary statement.

## STANDARD OF REVIEW

A Preliminary Injunction is an Extraordinary Remedy

As addressed in *Brooks v. Roberts*, 251 F. Supp. 3d 401 (N.D.N.Y. 2017), "A preliminary injunction is an extraordinary remedy never awarded as of right." *Gen. Mills, Inc. v. Chobani, LLC*, 158 F.Supp.3d 106, 114 (N.D.N.Y. 2016) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). "The party seeking the injunction carries the burden of persuasion to demonstrate, `by a clear showing,' that the necessary elements are satisfied." *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F.Supp.2d 446, 452 (S.D.N.Y. 2011) (quoting *Mazurek v. Armstrong,* 520 422*422 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)). *See Brooks v. Roberts*, 251 F. Supp. 3d 401 (N.D.N.Y. 2017) at 421-422.

A Movant must show a likelihood of irreparable harm; a likelihood of success on the merits or sufficiently serious questions as to the merits and that the balance of the hardships tip decidedly in the Movant's favor and that an injunction is in the public interest

And, "As a general matter, the party seeking preliminary relief must show: "(1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest." Gen. Mills, Inc., 158 F.Supp.3d at 115; see also Chobani, LLC v. Dannon Co., Inc., 157 F.Supp.3d 190, 199 (N.D.N.Y. 2016)." *See Brooks v. Roberts*, 251 F. Supp. 3d 401 (N.D.N.Y. 2017) at 422.

A Heightened Standard is Required in this Case

However, in cases like this one, where the movant is not only seeking to restore the status quo ante but also requesting an order that commands an affirmative act or mandates a specific course of conduct, a heightened standard applies: this type of preliminary injunction should issue

only "upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citation omitted); see also *N.Y. ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (requiring a "clear" or "substantial" likelihood of success as well as a "strong showing" of irreparable harm); *See Brooks v. Roberts*, 251 F. Supp. 3d 401 (N.D.N.Y. 2017) at 422.

The Court Need Not Accept the Complaint as True

Finally, in contrast to the standard applicable to pleadings on a motion to dismiss, the court need not accept all of a plaintiffs' assertions on a motion for preliminary injunction as true. See *Sinisgallo v. Town of Islip Hous. Auth.,* 865 F.Supp.2d 307, 331 (E.D.N.Y. 2012). "An award of an injunction is not something a plaintiff is entitled to as a matter of right, but rather it is an equitable remedy issued by a trial court, within the broad bounds of its discretion, after it weighs the potential benefits and harm to be incurred by the parties from the granting or denying of such relief." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999) (citation omitted). *See Brooks v. Roberts*, 251 F. Supp. 3d 401 (N.D.N.Y. 2017) at 422.

The Movant must Show Certain and Imminent Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Weinstein v. Krumpter*, 120 F.Supp.3d 289, 297 (E.D.N.Y. 2015) (citation and internal quotation marks omitted). "The concept of irreparable harm has been described `as certain and imminent harm for which a monetary award does not adequately compensate.'" *Donohue v. Mangano*, 886 F.Supp.2d 126, 149-50 (E.D.N.Y. 2012) (quoting W*isdom Import Sales Co. v. Labatt Brewing Co*., 339 F.3d 101, 113-14 (2d Cir. 2003)). "[T]he moving party must establish that without the preliminary injunction, he will suffer an

injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Amaker v. Fischer*, No. 10-CV-0977A, 2012 WL 8020777, at *2 (W.D.N.Y. Sept. 28, 2012). Conclusory assertions lacking supporting evidence will not support a preliminary injunction. *Hancock v. Essential Res., Inc.*, 792 F.Supp. 924, 928 (S.D.N.Y. 1992). *See Brooks v. Roberts*, 251 F. Supp. 3d 401 (N.D.N.Y. 2017) at 422.

The standard applied in *Allstate v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 Fed. App'x 716 (2d Cir. 2017)

The standard applied in *Allstate v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC,* 677 Fed. App'x 716 (2d Cir. 2017), was as follows: "A party seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *N.Y. ex rel. Schneiderman v. Actavis PLC,* 787 F.3d 638, 650 (2d Cir. 2015) (internal quotation marks omitted). Irreparable harm is defined as "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003). Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). See *Allstate v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC,* 677 Fed. App'x 716 (2d Cir. 2017).

ARGUMENT

I. THE PLAINTIFFS ARE NOT ENTITLED A TEMPORARY RESTRAINING ORDER, AND A STAY OF ALL NEW YORK STATE COURT PROCEEDINGS AND ARBITRATIONS PURSUANT TO RULE 65 AND 28 U.S.C. § 2283

A. Plaintiffs have not shown that an exception to the Anti-Injunction Act applies or that Plaintiffs have met the standard for a TRO/Stay

Plaintiffs have not shown that an exception to the Anti-Injunction Act (28 U.S.C. § 2283) applies. In passing the Anti-Injunction Act, Congress implemented "a general policy under which state proceedings 'should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the U.S. Supreme] Court.'" *Chick Kam Choo v. Exxon Corp*., 486 U.S. 140, 146 (1988).

The Anti-Injunction Act (28 U.S.C. § 2283), mandates that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

As to the first exception to the AIA, this has been decided by both district courts, and at least one appellate court, in *Religious Technology Center v. Wollersheim*, 796 F. 2d 1076 (9th Circuit 1986), which squarely decided the issue of whether the RICO statute authorizes injunctions sought by private parties, "[w]e hold that injunctive relief is not available to a private plaintiff in a civil RICO action." Id. at 1077. The 1st Circuit has expressed doubts as to whether there is any express authority under the RICO statute to grant a private party *Lincoln House, Inc. v. Dupre,* 903 F. 2d 845 (1st Circuit 1990) at 848. And district courts have found the 9th Circuit's analysis to be correct, as in *Sterling Suffolk Racecourse v. Burrillville Racing*, 802 F. Supp. 662 (Dist. Court, D. Rhode Island 1992), "[t]his Court finds the Wollersheim analysis persuasive. [i]n

light of the sound reasoning in Wollersheim and the First Circuit's previously expressed doubts as to the authority of district courts to grant injunctive relief to private parties under RICO, this Court concludes that it would lack authority to grant Sterling the relief for which it prayed even if Sterling was otherwise entitled to it. Id. at 671. And the Second Circuit, albeit in *dicta,* has expressed the same doubt that the RICO statute permits injunctive relief to a private party, *Trane Co. v. O'Connor Securities*, 718 F. 2d 26 (2nd Circuit 1983):

> Preliminarily it should be noted that courts which have confronted the issue have expressed serious doubt concerning the propriety of granting injunctive relief under any circumstances to private parties alleging securities violations under RICO. See Dan River, Inc. v. Icahn, 701 F.2d 278, 290 (4th Cir.1983); cf. Ashland Oil, Inc. v. Gleave, 540 F.Supp. 81, 85 (W.D.N.Y.1982) (private party cannot seek attachment order under RICO § 1964(c)). The only court squarely to have addressed the issue held that such relief may not be granted, Kaushal v. State Bank of India, 556 F.Supp. 576 (N.D.Ill.1983); but cf. Aetna Casualty & Surety Co. v. Liebowitz, No. 81 Civ. 2616 (E.D.N.Y. Dec. 8, 1981) (availability of preliminary injunctive relief not contested); Vietnamese Fishermen's Association v. Knights of Ku Klux Klan, 518 F.Supp. 993, 1014 (S.D.Tex.1981) (availability of preliminary injunctive relief assumed); United States v. Barber, 476 F.Supp. 182, 189 (S.D.W.Va.1979) (dictum that private parties entitled to § 1964(a) equitable remedies under RICO). We have the same doubts as to the propriety of private party injunctive relief, especially in a case of this nature alleging, garden-variety securities law violations as predicates for the RICO violation.

*Trane Co.* at 28-29.

Given the precedents above, both squarely deciding that the RICO statute does not "expressly" authorize an injunction for a private party, and other federal courts indicating real doubts as to the same, contrary to Plaintiffs' contentions, 18 U.S.C.1964(a), does not "expressly" authorize authority for an injunction to a private party under RICO, and especially of the kind sought here by the Plaintiffs. 18 U.S.C. § 1964(a) reads:

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or

> foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

There can be no dispute, that 18 U.S.C. 1964(a), requires a finding of a violation of 18 U.S.C. 1962, and necessarily a finding of a RICO "enterprise," prior to any order to "prevent and restrain." And these Defendants have interposed a jury demand on all such issues, and are entitled to jury trial on these issues.

Plaintiffs only remaining argument is that a stay and TRO are necessary to aid in the jurisdiction of this Court or to protect or effectuate its judgments. However, granting the requested stay and TRO is not necessary to serve either of those purposes. Initially, if Plaintiffs were somehow able to obtain a judgment in this case, this Court would be able to craft any such judgment as it deems fit, including as to any New York State cases or AAA arbitrations. There is absolutely no impediment to the Court's jurisdiction in this regard, and given that the Plaintiffs have shown absolutely no evidence to support their allegations, there is no finding of a RICO enterprise, or any RICO violations, or any fraud, in fact, all the evidence adduced thus far has proven the opposite, the Plaintiffs have not met their burden as the TRO/Stay in any manner. Perhaps more disconcerting is the fact that Allstate, despite the filing of this RICO action, and even despite the filing of this motion for a TRO/Stay, continues to affirmatively seek to pursue trials and arbitrations in New York State Courts and AAA, in the hope to obtain favorable rulings to aid Plaintiffs in this case. What has come to light, is that Plaintiffs have not been successful in their affirmative pursuits, and they do not desire any further verdicts, factual findings, or judgments which may impair their chances of success on the merits in this case. This is plainly not a basis for a TRO/Stay, as Plaintiffs remedies for the unfavorable decisions is through New York State judicial appellate review, and then review through the U.S. Supreme Court if necessary, not the district courts. Further, the merits of the declaratory judgment and RICO/fraud causes of action

have not been decided by the federal court, which is a prerequisite for the third exception to the AIA, as held in *Oliver v. Ricci*, Dist. Court, Civil Action No. 17-cv-140 (WD Pennsylvania 2017):

> AIA's third exception—which permits an injunction "to protect or effectuate [the federal court's] judgments,"—only applies where an issue has been previously presented to and decided by the federal court." (internal citations omitted)
> Id.

The Court on a TRO/Stay Motion Need Not Accept the Complaint as True as it would on a Rule 12(b)(6) Motion and Allstate's Prior Reliance on the Shaikh Ahmed, M.D. and the *GEICO v. Lenex. Et al* 16-cv-06030 case, Shows Allstate's RICO action as a Sham as it Relies Upon False Evidence Without Regard to the Evidence's Merit and undermines the Complaint as Evidence on this TRO/Stay Motion

The Bruno document is worthless here, it states nothing of substance of an evidentiary nature regarding the claims of fraud or RICO, thus it appears, that Plaintiff relies entirely on the Complaint. However, the Court on a TRO/Stay motion need not accept the Complaint as true as it would on a Rule 12(b)(6) Motion. See *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F.Supp.2d 307, 331 (E.D.N.Y. 2012).

As to Plaintiffs' Complaint, in prior filings, Allstate affirmatively relied upon the Shaikh Ahmed, M.D. documents, and purported 'affidavit' as support for the its Complaint here. Yet, Dr. Ahmed's deposition transcript[3] proves that the purported affidavit was not an affidavit at all, in fact, Dr. Ahmed did not recall even seeing it, or even reading it before he was "referred" to sign it, and the allegations of forgery, fabrication or alteration (which Allstate also claims without showing the Court any proper evidence of the same) were uncovered to be wholly untrue. Not only did Dr. Ahmed testify that he was completely unfamiliar with the billing codes that the purported affidavit stated that he was familiar with, see Dkt. 71-1, in *GEICO v. Lenex Services,*

---

[3] See Dkt. 71 at page 4, and Excerpts of Deposition Transcript of Shaikh Ahmed, M.D., in *GEICO v. Lenex Services, Inc., et al.*, 16-cv-06030.

*Inc., et al.,* 16-cv-06030-LDH-CLP, Ahmed Dep. Tr., 68-24-25; 69:1-14. But despite Allstate's representations, Dr. Ahmed testified[4] that if he had believed someone had altered his prescriptions for DME, that he would have reported that fact to law enforcement or New York State Medical authorities, that he would have an obligation to make such a report, and that he made no such report at all. The foregoing, supports the fact that Allstate is engaging in sham litigation.

Allstate, despite its R.I.C.O. action, continues, before, during and well into this litigation, to pay Lenex for the same DME billings, and the same DME it has claimed as fraudulent in its Complaint. See examples of Allstate Payments to Lenex in Exhibit C. And well, this justifies, the affirmative defense of ratification, and undermines Allstate's RICO/Fraud Complaint here, as it serves to prove that Allstate, either does not rely at all upon a provider's bills and supporting documents in deciding whether or not to pay a bill, and therefore the alleged fraud/RICO damages in Allstate's Complaint are a meritless sham, and not recoverable, as common law fraud damages require reliance, and RICO damages require that the predicate acts cause the damages, and at least third-party reliance[5]. All of the foregoing speaks volumes against Plaintiffs' likelihood of success on the merits of this case, and if the AAA and New York State cases are a fair indicator, the balance does not tip in favor of the Plaintiffs.

B. Plaintiffs have affirmatively utilized the New York State Court proceedings to Continue to litigate after the filing of the instant Complaint, and after the application for the TRO/Stay

---

[4] See Dkt. 71-2, in *GEICO v. Lenex Services, Inc., et al.*, 16-cv-06030-LDH-CLP, Ahmed Dep. Tr., 111:11-24.

[5] In Defendants' Opposition to Plaintiff's MTD the Counterclaim, Defendants' referenced as to the continued post-RICO filing, voluntary payments by Allstate, that "another possibility is that Allstate's Claims Dept. is intentionally issuing false payments post-RICO filing, in order to make a false argument for "open-ended continuity" in the RICO" and the prediction has served accurate as set forth in Plaintiffs' specious argument for a TRO/Stay based on a perverse contention of open ended continuity (see Plaintiff's Filing at Dkt. 178, 6.29.18, 24-26 of 27).

The Plaintiffs cannot escape the fact that on June 4, 2018 the original application by Plaintiffs for a TRO/Stay was filed, on June 6, 2018 it was denied by the Hon. Ann M. Donnelly, on June 20, 2018 Plaintiffs filed its motion for reconsideration of the denial of the TRO/Stay, which was permitted by Judge Donnelly on June 21, 2018, and yet even on and after June 21, 2018, Allstate is still entering into trial stipulations and settlements with Lenex. See Exhibit A. Simply put, Allstate is aware that it has already lost, most (if not all) of the claims asserted here, in the New York State Courts/Arbitrations and they have filed this request for a TRO/Stay to prevent any further unfavorable rulings and to prevent the Defendant Lenex from converting the arbitration awards into judgments. However, the fact that the New York State Court and AAA decisions may constitute res judicata or collateral estoppel, is not a basis for a TRO or a Stay. In this respect, Plaintiffs seek not to restore a status quo, but to alter a status quo in their favor, and in so doing, they ignore certain basic fundamental precepts, for instance, each state in the union has a constitutional right to maintain its own independent judicial system for the resolution of legal disputes. See *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 285 (1970). And the Defendants have a 1st Amendment right to file lawsuits to resolve disputes, and Plaintiffs are effectively requesting the Court to issue a prior restraint, without any basis.

C.     Plaintiffs' application for a TRO/Stay violates the Full Faith and Credit Clause within Article IV, § 1, of the United States Constitution

As reflected within the examples AAA Awards in Exhibit B, both prior to and after commencement of this action, the Defendant Lenex has prevailed against Allstate on a litany of issues that are also encompassed within Plaintiffs' Complaint (e.g., medical necessity, fee schedule, billing codes, wholesale invoices), and Plaintiffs' application for a TRO/Stay, would prevent the New York State Courts from confirming the arbitration awards, which may constitute

collateral estoppel, or *res judicata* as to certain claims in this case, into judgments[6], subject to full faith and credit under Article IV, § 1, of the United States Constitution.

The exceptions to the Anti-Injunction Act, were never intended to permit such a restriction, which Plaintiffs no doubt are hopeful that the TRO/Stay preventing the fully litigated issues from being confirmed, and converted into judgments, will alter the *status quo*, and shift it in Plaintiffs' favor. In contrast to Plaintiffs' position, these fully litigated AAA awards such awards do not threaten the efficacy of the declaratory judgment action here. In truth, any awards which this Court deems to relate directly to the issues raised by the Plaintiffs here, would aid the Court in its consideration of the legitimacy of the Plaintiffs' declaratory judgment cause of action. That such awards may constitute res judicata or collateral estoppel, to the detriment of Plaintiffs' case here, does not justify a TRO/Stay. In particular, as restricting the Defendants from confirming AAA awards and converting the same to judgments, which are entitled to "full faith and credit" by this Court under Article IV, § 1, is violative of the Defendants' due process and equal protection rights and 1st Amendment access to the Courts. That such judgments are entitled to full faith and credit is beyond dispute, *San Remo Hotel, LP v. City and County of San Francisco*, 545 US 323 (2005):

> Article IV, § 1, of the United States Constitution demands that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." In 1790, Congress responded to the Constitution's invitation by enacting the first version of the full faith and credit statute. See Act of May 26, 1790, ch. 11, 1 Stat. 122.[15] The modern version of the

---

[6] CPLR § 7510. Confirmation of award. The court shall confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified upon a ground specified in section 7511.

CPLR § 7514. Judgment on an award. (a) Entry. A judgment shall be entered upon the confirmation of an award.

> statute, 28 U. S. C. § 1738, provides that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . ." This statute has long been understood to encompass the doctrines of res judicata, or "claim preclusion," and collateral estoppel, or "issue preclusion." See *Allen v. McCurry*, 449 U. S. 90, 94-96 (1980).[16]
> Id. at 336.

D.Plaintiffs' application for a TRO/Stay violates the McCarran-Ferguson Act, 18 U.S.C. 1012

Plaintiffs' application for a TRO and a Stay, if granted in the manner requested by Plaintiffs, under Fed. R. Civ. P. 65, and 28 U.S.C. §2283, violates the McCarran-Ferguson Act, which in pertinent part, 18 U.S.C. 1012 reads:

(a) STATE REGULATION
The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
(b) FEDERAL REGULATION
No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance
Id.

There is no question that the State of New York regulates the No-Fault insurance industry, including statutory interest on unpaid no-fault claims. See Exhibit D, including NYS Dept. of Finance Opinion Letter of July 7, 2003, and *Medalliance Med. Health Servs. v. Allstate Ins. Co.*, 40 Misc.3d 349 (Civil Court, Queens County 2013), explicating the No-fault regulations as to statutory interest and attorney's fees on overdue no-fault claims. There is also no question, that cases involving Allstate's schemes to avoid paying statutory interest have reached the Supreme Court. See *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010).

Plaintiffs' do not (and could not) contend that the RICO statute, Fed. R. Civ. P. §65, or 28 U.S.C. §2283, "specifically relates to the business of insurance," yet, Plaintiffs seek in their application for a TRO/Stay, to "invalidate, impair, or supersede" the laws enacted by the State of New York as to No-Fault insurance regulation, in particular to impair the statutory and regulatory

framework for prompt payment or denial, the verification processes, and perhaps most obvious, Plaintiffs seek a Stay/TRO, for the purpose of avoiding the accumulation of statutory no-fault interest on overdue claims, in direct violation of 18 U.S.C. §1012.

Plaintiffs have not distinguished *Allstate v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 Fed. App'x 716 (2d Cir. 2017) from the facts of the instant case

Plaintiffs' attempt to distinguish *Allstate v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC,* 677 Fed. App'x 716 (2d Cir. 2017) from the facts of the instant case is unpersuasive. Both cases involve a RICO action based on alleged violations of New York's No-Fault laws, both cases involve a declaratory judgment cause of action, and both cases involve New York State Court cases. As is discerned from the New York State E Courts as Exhibit E, Allstate's counsel here is representing Allstate in the New York State Court cases, and there is no showing from any of those cases that the Second Circuit's decision impaired the EDNY's jurisdiction, by declining to allow a TRO/Stay, nor would there be in this case.

Finally, any doubts as to the propriety of a federal injunction against state court proceedings "should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." See *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).

**CONCLUSION**

Allstate Plaintiffs' motion for a TRO and a Stay should be denied in its entirety with costs, should the Court be inclined to grant the Allstate-Plaintiffs' motion, Defendants respectfully request that the Court require a hearing to be held for the appropriate security required pursuant to Rule 65(c).

Dated: July 27, 2018
Queens, New York

Respectfully Submitted,

/s/

By: Wesley Mead
**THE MEAD LAW FIRM, P.C.**
*Attorney for Defendants- I. Blantz, A. Blantz, Gala, and Lenex*
20-77 Steinway Street, Suite SL
Astoria, New York 11105
Tel: (866) 306-5547 /Alt Tel: (718) 306-2107
Fax: (866) 306-0337 / *wmeadlaw@gmail.com*

**CERTIFICATE OF SERVICE**

I, hereby certify that Defendants' Memorandum of Law in Opposition to Allstate Plaintiffs' Motion for a TRO/Stay, was served via ECF on July 27, 2018, upon the following:

Morrison Mahoney, LLP
120 Broadway, Suite 1010
New York, New York 10271
Tel: 212.825.1212

All parties/attorneys of record via ECF

Dated: Queens, New York
July 27, 2018

______/s/______________________
By: Wesley Mead
**THE MEAD LAW FIRM, P.C.**
*Attorney for Defendants- I. Blantz, A. Blantz, Gala, and Lenex*
20-77 Steinway Street, Suite SL
Astoria, New York 11105
Tel: (866) 306-5547
Alt Tel: (718) 306-2107
Fax: (866) 306-0337
*wmeadlaw@gmail.com*