**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, *et al.*,<br>                                              *Plaintiffs*,<br><br>                    -v.-<br><br>AVETISYAN, *et al.*,<br>                                              *Defendants*. | Civil Action<br>No. 17-CV-4275 (LDH) (RML)<br><br><br>July 13, 2018 |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION PURSUANT TO RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND 28 U.S. Code § 2283 SEEKING A TEMPORARY RESTRAINING ORDER AND ORDER TEMPORARILY STAYING ALL NO-FAULT COLLECTION PROCEEDINGS CURRENTLY PENDING BETWEEN TOP Q INC., AND PLAINTIFFS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 2

    I.      The Second Circuit's decision in *Harvey* is persuasive, on-point authority that should lead this Court to conclude that Allstate has not shown irreparable harm. ............................................................................................... 2

    II.     The Anti-Injunction Act bars a preliminary injunction of state court proceedings. ..................................................................................................... 7

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**

*AIU Ins. Co. v. Deajess Med. Imaging, P.C.*, 882
    N.Y.S.2d 812 (N.Y. Sup. Ct. 2009) ................................................................................ 7

*Allstate Ins. Co. v. Elzanaty*,
    929 F. Supp. 2d 199 (E.D.N.Y. 2013) ..................................................................... 6, 11

*Allstate Ins. Co. v. Harvey Family Chiropractic*,
    677 F. App'x 716 (2d Cir. 2017) (summary order) ............................................... 2, 3, 4

*Amalgamated Clothing Workers of Am. v. Richman Bros.*,
    348 U.S. 511 (1955) ......................................................................................................... 7

*Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*,
    398 U.S. 281 (1970) .............................................................................................. 7, 8, 10

*Brault v. Soc. Sec. Admin., Com'r*,
    683 F.3d 443 (2d Cir. 2012) .......................................................................................... 4

*Chevron Corporation v. Donziger*,
    833 F.3d 74 (2d Cir. 2016) ............................................................................................ 8

*Gov't Employees Ins. Co. v. Strutsovskiy*,
    No. 12-CV-330, 2017 WL 4837584 (W.D.N.Y. Oct. 26, 2017) ............................... 5, 6

*Int'l Controls Corp. v. Vesco*,
    490 F.2d 1334 (2d Cir. 1974) ...................................................................................... 10

*Jayaraj v. Scappini*,
    66 F.3d 36 (2d Cir. 1995) .............................................................................................. 3

*Liana Carrier Ltd. v. Pure Biofuels Corp.*,
    No. 14-CV-3406 (VM), 2015 WL 10793422 (S.D.N.Y. Aug. 14, 2015) ................. 4, 6

*Metroscan Imaging PC v. Geico Ins. Co.*,
    797 N.Y.S.2d 737 (Civ. Ct. 2005) ................................................................................ 7

*Mitchum v. Foster*,
    407 U.S. 225 (1972) ....................................................................................................... 8

*State Farm Mutual Ins. Co. v. Jamaica Wellness Medical, P.C., et al.*,
    16-CV-4948 (FB) (E.D.N.Y. May 18, 2017) .......................................................... 7, 11

*Studebaker Corp. v. Gittlin*,
    360 F.2d 692 (2d Cir. 1966) ................................................................................................ 9

*United States v. Schurkman*,
    728 F.3d 129 (2d Cir. 2013) .............................................................................................. 11

*Vendo Co. v. Lektro-Vend Corp.*,
    433 U.S. 623 (1977) .......................................................................................................... 10

*Vernitron Corp. v. Benjamin*,
    440 F.2d 105 (2d Cir. 1971) .............................................................................................. 12

## **STATUTES**

28 U.S.C. § 2283 ........................................................................................................................... 8

## **RULES**

17A Fed. Prac. & Proc. Juris. § 4221 (3d ed.) .............................................................................. 7

17A Fed. Prac. & Proc. Juris. § 4224 (3d ed.) ............................................................................ 10

17A Fed. Prac. & Proc. Juris. § 4225 (3d ed.) ...................................................................... 11, 12

17A Fed. Prac. & Proc. Juris. § 4226 (3d ed.) ............................................................................ 12

Defendant Top Q Inc. ("Defendant") respectfully submits this Memorandum in opposition to the motion for a temporary restraining order and preliminary injunction staying No-Fault collection proceedings, filed June 4, 2018, by Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and Northbrook Indemnity Company ("Allstate").

## PRELIMINARY STATEMENT

This Court should deny Allstate's motion. First, the Second Circuit's summary order in *Harvey* is directly on point in this matter, holding that "mere injuries . . . in terms of money, time and energy necessarily expended absent a stay of ongoing state court and arbitration proceedings are not enough to establish irreparable harm." *Harvey* also rejected Allstate's argument – identical to the one the *Harvey* plaintiffs made – that it faces irreparable harm because the pending No-Fault proceedings in some nebulous way threaten its declaratory judgment. *Harvey* is highly persuasive authority that is predictive of how the Second Circuit would decide this issue, and this Court should follow it.

This Court need not reach the Anti-Injunction Act, as in accordance with *Harvey* the injunction should be denied because Allstate cannot establish irreparable harm. But if the Court does reach the issue, it should hold that the Act bars an injunction directed at state court proceedings here. The Anti-Injunction Act is a fundamental principle of Untied States' dual system of courts and the Supreme Court has cautioned that any doubts should be resolved against an injunction. None of the Act's exceptions apply to this case. The second and third exceptions have no application to this case because this is not an *in rem* action and the state court proceedings do not seek to relitigate any final federal judgment. Moreover, no court has ever found a preliminary injunction under RICO to fall under the expressly authorized exception, nor should this Court where there is no evidence that Congress was concerned with the ability of state courts to adjudicate No-

1

Fault claims and where the Second Circuit has indicated that it is particularly disinclined to allow preliminary injunctions because liability has not yet been proven.

For these reasons and others discussed below, this Court should deny Allstate's motion.

## BACKGROUND

On June 4, 2018, Allstate sought a temporary restraining order and preliminary injunction staying all pending No-Fault collection proceedings between it and Defendants in state court and in arbitration, and prohibiting Defendants from initiating any new No-Fault proceedings. Order To Show Cause and Temporary Restraining Order, Docket No. 168. Judge Donnelly denied the motion on the ground that Allstate had not shown irreparable harm, citing the Second Circuit's decision in *Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x 716, 718 (2d Cir. 2017) (summary order). Order Denying Motion for TRO, entered June 6, 2018.

Judge Donnelly subsequently granted Allstate's motion for reconsideration, Docket No. 173, ordering briefing and argument before Judge Hall as to "the scope of the Anti-Injunction Act as well as the Second Circuit's order in Allstate Insurance Company v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC, 677 Fed. Appx. 716 (2d Cir. 2017)." Order granting Motion for Reconsideration, entered June 21, 2018.

## ARGUMENT

### I.   The Second Circuit's decision in *Harvey* is persuasive, on-point authority that should lead this Court to conclude that Allstate has not shown irreparable harm.

Judge Donnelly correctly concluded that Allstate has not demonstrated the irreparable harm required for a preliminary injunction, relying on the Second Circuit's 2017 decision in *Harvey* as persuasive authority. Order Denying Motion for TRO, entered June 6, 2018.

*Harvey* is indistinguishable in any meaningful way from this case. It involved a RICO action, also brought by Allstate, alleging that the medical-provider defendants had pursued fraudulent No-

2

Fault claims and it sought a declaration very similar to the one sought here – that Allstate was under no obligation to pay any of the defendants' No-Fault claims because of the defendants' fraudulent scheme. A three-judge panel of the Second Circuit considered the plaintiffs' argument that a stay of pending state-court litigations and any new litigation or arbitration was necessary to prevent irreparable harm, and held that "'mere injuries . . . in terms of money, time and energy necessarily expended' absent a stay of ongoing state court and arbitration proceedings 'are not enough' to establish irreparable harm." *Harvey*, 677 F. App'x at 718 (quoting *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995)). Thus, *Harvey*, in nearly identical circumstances to this case, determined that the existence of pending No-Fault state-court proceedings and arbitrations that will adjudicate the same No-Fault claims as a federal lawsuit does not constitute irreparable harm.

Allstate's claim that its declaratory judgment is threatened by pending state court litigation and arbitrations was also rejected in *Harvey*. In *Harvey*, Allstate sought a "declar[ation] that Allstate is under no obligation to pay any of Harvey FCPTA's No-Fault claims because of its illegal organization," *Harvey*, 677 F. App'x at 717 (internal quotation marks omitted), and Allstate here seeks a "declar[ation] that Plaintiffs have no obligation to pay any No-fault claims submitted by the Retail Defendants" because Defendants made allegedly fraudulent misrepresentations as to the medical equipment supplied. Amended Complaint at p. 280 (vii). Allstate's argument that the pending state court proceedings and arbitrations somehow threaten the declaratory judgment they seek is identical to the argument it made in *Harvey*; in fact it was the very first argument it put forward regarding irreparable harm. Exhibit 1, Brief and Special Appendix for Plaintiffs-Appellants, *Allstate Ins. Co. v. Harvey Family Chiropractic*, No. 16-1101-cv, 2016 WL 3855272 at *40 (2d Cir. July 13, 2016) ("[I]f the requested injunction is not granted and the State Court Actions are allowed to proceed, any such actions resulting in rulings with regard to Harvey FCPTA's eligibility for reimbursement of No-fault insurance payment that are inconsistent with this Court's ruling on the same issue would severely threaten any judgment of this Court. . . .That threat, which

3

could ultimately strip Plaintiff-Appellants of their right to seek and be awarded a declaratory judgment by this Court, clearly meets the threshold for irreparable harm."). The Second Circuit in *Harvey* rejected this argument, holding that "the declaratory relief sought by the plaintiffs [is not] threatened by the other proceedings." *Harvey*, 677 F. App'x at 718.[1]

Allstate argues that *Harvey* is not binding because it is a summary order. But courts "are, of course, permitted to consider summary orders for their persuasive value, and often draw guidance from them in later cases." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 450 (2d Cir. 2012). Moreover, "courts in the Second Circuit have often noted that . . . Summary Orders . . . can be instructive to district courts in resolving particular disputes, and also may be seen as highly persuasive and predictive of how the Second Circuit Court of Appeals would decide an issue in the future." *Liana Carrier Ltd. v. Pure Biofuels Corp.*, No. 14-CV-3406 (VM), 2015 WL 10793422, at *4 (S.D.N.Y. Aug. 14, 2015), *aff'd*, 672 F. App'x 85 (2d Cir. 2016); *id.* at n.5 (collecting cases). Allstate offers bare statements that summary orders are not binding because they often lack factual detail and that Harvey lacks factual background, *see* Supplemental Memorandum of Law in Support of Plaintiffs' Motion Pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S. Code § 2283 Seeking a Temporary Restraining Order and Preliminary Injunction, Docket No. 178, ("Suppl. Memo.") at 2-3, 7 n.2, but offers no argument as to what facts are lacking and how those missing facts might alter the Second Circuit's conclusion.

Allstate also asserts that the issue of irreparable harm was not raised or briefed by the parties in *Harvey* and that the Second Circuit decided it "*sua sponte*." Suppl. Memo. at 3, 6; *see* Marvin Decl. (Jun. 29, 2018) at 4. This is false, and the misstatement is inexplicable given that Mr. Marvin was Allstate's attorney and author of the briefs both here and in *Harvey*. In fact, the parties in

---

[1] Allstate asserts that none of the underlying actions in *Harvey* involved the fraudulent licensing alleged in the federal complaint, and that was the only reason the Second Circuit concluded that the underlying actions would not interfere with the declaratory judgment. Suppl. Memo. at 7. Allstate offers no citation for this assertion. Moreover, the Second Circuit made no mention of this purported fact, making it unlikely that the Court relied on it.

4

*Harvey* thoroughly briefed the issue of irreparable harm. Allstate's brief had a separate section comprising approximately 2000 words titled, "Plaintiff-Appellants Established Irreparable Harm" that makes essentially the same arguments Allstate makes here. Exhibit 1, Brief and Special Appendix for Plaintiffs-Appellants, *Allstate Ins. Co. v. Harvey Family Chiropractic*, No. 16-1101-cv, 2016 WL 3855272 at *39-46 (2d Cir. July 13, 2016). The defendants' brief had an approximately 800-word section titled "Plaintiff(s) Have Failed To Establish that It Will Be Irreparably Harmed in the Absence of Injunctive Relief." Exhibit 2, Brief for Defendants-Appellees, *Allstate Ins. Co. v. Harvey Family Chiropractic*, No. 16-1101-cv, 2016 WL 5118452 at *10-15 (2d Cir. Sept. 19, 2016). And the issue was discussed again in Allstate's reply brief. Exhibit 3, Reply Brief for Plaintiffs-Appellants, *Allstate Ins. Co. v. Harvey Family Chiropractic*, No. 16-1101-cv, 2016 WL 5929097 at *10-11 (2d Cir. Oct. 7, 2016). Allstate's characterization of the Second Circuit's holding on irreparable harm as "*sua sponte*" is therefore false and provides no support for disregarding the Second Circuit's reasoning. Irreparable harm was raised and thoroughly briefed in *Harvey*.

Allstate also relies heavily on *Gov't Employees Ins. Co. v. Strutsovskiy*, No. 12-CV-330, 2017 WL 4837584, at *7 (W.D.N.Y. Oct. 26, 2017), a Western District decision that declined to follow *Harvey* on the ground that *Harvey* is a summary order that gives "limited information about the facts." First, *Strutsovskiy* makes no argument as to why *Harvey* is inapposite, and declines to follow it merely on the generic ground that it is a summary order and therefore not binding. As argued above, *Harvey* is on all fours for its holding that multiple pending No-Fault proceedings and the possibility of inconsistent judgments do not constitute irreparable harm in spite of the time and expense required to litigate, and do not threaten a declaratory judgment that an insurer is not obligated to pay claims. Allstate has offered no argument about what specific facts might have existed in *Harvey* but were missing from the *Harvey* decision that might have led to the Second Circuit's decision in that matter and whether those facts are present in the case at bar. Second,

5

*Strutsovskiy* involved a stay of arbitrations only. The *Strutsovskiy* court specifically noted that "federal and state courts have concluded that wasting time and resources in arbitrations that might result in awards inconsistent with future judicial rulings constitutes irreparable harm sufficient to stay arbitration." Id. at *6. This statement implies that the irreparable harm required to stay arbitrations might be less than that required to stay litigation. In any event, because summary orders are "highly persuasive and predictive of how the Second Circuit Court of Appeals would decide an issue in the future," *Liana Carrier Ltd. v. Pure Biofuels Corp.*, 2015 WL 10793422, at *4, this Court should follow the three-judge Second Circuit panel in *Harvey* rather than the Western District decision in *Strutsovskiy*, to the extent they conflict.

    Allstate also relies on *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199 (E.D.N.Y. 2013), to argue that the underlying actions could "result in inconsistent rulings with regard to [Defendants'] eligibility for reimbursement of No-fault insurance payment" and thus establish irreparable harm. Memorandum of Law in Support of Plaintiffs' Motion Pursuant To Rule 65 of the Federal Rules of Civil Procedure and 28 U.S. Code § 2283 Seeking a Temporary Restraining Order and Order Temporarily Staying All No-Fault Collection Proceedings, Docket No. 168, at 11. However, *Elzanaty* was decided before *Harvey*. *Harvey*, like *Elzanaty*, involved allegations of fraudulent medical-provider licensing, and nonetheless held that the hundreds of pending No-Fault proceedings there could not be stayed because those proceedings did not establish irreparable harm. *Elzanaty*'s holding is thus substantially called into doubt by *Harvey*. Moreover, the fraudulent incorporation cases were dominated by the single issue of whether the No-Fault professional corporation was actually owned and controlled by laypeople, which in turn determined the validity of all of the underlying claims. It was therefore likely that some of the underlying proceedings could have determined the fraudulent licensing issue inconsistently with each other and the federal court. In this case, however, the main issue is whether the various kinds of durable medical equipment was medically necessary in what Allstate asserts are 497 individual underlying No-Fault claims. *See*

6

Exh. A to Bruno Decl. A. Medical necessity is a case-specific issue that depends on the individual facts of each of the 497 claims. If, as is quite likely, some of the 497 claims are adjudicated in Defendants' favor, because they are so fact-specific it is doubtful they would have an effect on Allstate's broader RICO claim, and thus do not "threaten" Allstate's declaratory judgment.[2]

Finally, Allstate relies on Judge Block's grant of a preliminary injunction in *State Farm Mutual Ins. Co. v. Jamaica Wellness Medical, P.C., et al.*, 16-CV-4948 (FB) (E.D.N.Y. May 18, 2017). However, this decision was issued orally and from the bench, and *Harvey* was not raised or discussed. Because Judge Block did not consider *Harvey*, his oral ruling should not be considered persuasive here.

## II. The Anti-Injunction Act bars a preliminary injunction of state court proceedings.

The Anti-Injunction Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 286 (1970). The Act has existed "[f]or almost as long as there have been federal courts." 17A Fed. Prac. & Proc. Juris. § 4221 (3d ed.). The Act reflects a "fundamental principle of a dual system of courts," *Atl. Coast Line R. Co.*, 398 U.S. at 297, that should "not . . . be whittled away by judicial improvisation." *Amalgamated Clothing Workers of Am. v. Richman Bros.*, 348 U.S. 511, 514 (1955). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state

---

[2] Moreover, Allstate has the option to move the state courts to consolidate the underlying actions for a framed issue hearing and stay arbitrations pending such a hearing if it is concerned with consistency. *See, e.g.*, *Metroscan Imaging PC v. Geico Ins. Co.*, 797 N.Y.S.2d 737, 739 (Civ. Ct. 2005) ("grant[ing] defendant's prayer for relief to the extent of consolidating the 61 actions with the within matter for the purposes of amending the answer and setting same down for a framed issue hearing on August 2, 2005 as to whether the plaintiff professional corporations were fraudulently incorporated"); *AIU Ins. Co. v. Deajess Med. Imaging, P.C.*, 882 N.Y.S.2d 812, 816 (N.Y. Sup. Ct. 2009) ("court [previously] stayed 344 actions and 44 proceedings to stay arbitration and consolidated them with the present declaratory judgment action").

7

courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Co.*, 398 U.S. at 297.

Pursuant to the Anti-Injunction Act as currently enacted, a federal court "may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283.

Granting Allstate's motion to enjoin state court proceedings is prohibited by the Anti-Injunction Act, and none of the limited statutory exceptions apply.

### A. *Expressly authorized exception.*

Under the first exception for injunctions that are "expressly authorized" by Congress, "the test . . . is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 238 (1972). Allstate argues extensively in its brief that RICO authorizes equitable relief and therefore satisfies the first prong of the *Mitchum* test. *See* Suppl. Memo. at 12-17. Although Allstate does not cite it, it appears that the Second Circuit already decided this issue in *Chevron Corporation v. Donziger*, 833 F.3d 74, 137 (2d Cir. 2016), which determined that RICO authorizes injunctive relief for private plaintiffs who have already proven their injury; the *Donziger* plaintiff had already proven its injuries at trial unlike Allstate in this case.

Allstate is incorrect to argue that RICO "c[an] be given its intended scope only by the stay of a state court proceeding." *Mitchum*, 407 U.S. at 238. The Supreme Court in *Mitchum* found that state court injunctions were expressly authorized under § 1983 of the Civil Rights Act because § 1983 was intended to alter the relationship between the federal government and the states and to provide federal protection for constitutional rights, recognizing that "federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights." *Mitchum*, 407 U.S. at 242. In particular, the

8

Court noted that Congress "was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts." *Id.*

Although RICO did establish federal laws that overlapped with the traditionally state-governed police power, Suppl. Memo. at 19, every new federal law in some sense alters the federal-state balance so a change alone does not satisfy the *Mitchum* test. Unlike in *Mitchum* where Congress was concerned with state courts' failure to enforce of constitutional rights, there is no evidence that New York's courts are biased, unable, or unwilling to adjudicate fairly the issue of medical necessity under the No-Fault laws or to ferret out fraud in the underlying claims. In fact, because they handle the bulk of No-Fault claims, New York courts are uniquely qualified to adjudicate those issues. Thus, an injunction is not necessary to give RICO its intended scope; New York's courts are amply able to adjudicate the underlying No-Fault claims and reach the proper result. Allstate's argument otherwise is premised on the possibility that state courts would determine medical necessity incorrectly, thus necessitating their requested injunction – it would be antithetical to the concerns of comity underlying the Anti-Injunction Act to grant an injunction on that basis without any evidence of the state courts' incompetence or bias.

Allstate also argues that the expressly authorized exception is particularly applicable "where the state court actions contribute to ongoing violations of a federal statute." Suppl. Memo. at 20. It cites *Studebaker Corp. v. Gittlin*, 360 F.2d 692 (2d Cir. 1966), which held that the expressly authorized exception permitted an injunction staying a state court proceeding under the Securities Exchange Act "where the very act of prosecuting the state proceeding violated federal law." *Id.* at 698. In *Gittlin*, certain stockholder authorizations were obtained in violation of federal securities law, and then used to institute suit in state court to inspect the record of the company's shareholders. Thus, in *Gittlin*, unlike here, the defendant's use of the state court was improper because it was entirely premised on illegally obtained proxies from other stockholders. In contrast, here,

9

Defendants are medical providers who are authorized as assignees to bring suit on the underlying claims to challenge insurer denials under the No-Fault system. Moreover, the Second Circuit has subsequently limited the holding of *Gittlin* substantially. In *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1349 (2d Cir. 1974), the Court pointed out that in *Gittlin* the "injunction issued after a decision on the merits holding that Gittlin had, in fact, violated [the federal statute]," and declined to find that preliminary injunctive relief fell under the expressly authorized exception in light of "the explicit words of caution appearing in *Atlantic Coast Railroad*," *Vesco*, 490 F.2d at 1349 -- that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings . . . be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Co.*, 398 U.S. at 297. This reasoning makes sense; it is more respectful of comity to take the extraordinary step of issuing an injunction restraining a state court after a plaintiff's claims have proven meritorious rather than when, as here, they are merely allegations. It is thus likely that the Second Circuit would be unwilling to apply the 52-year-old holding in *Gittlin* to preliminary injunctions based on allegations of a RICO violation.

Finally, *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977), is of little precedential value here. *See* 17A Fed. Prac. & Proc. Juris. § 4224 (3d ed.) ("Detailed analysis of the opinions in *Vendo* would serve no purpose because of the fragmentation of the Court."). The Supreme Court overturned the injunction in *Vendo*, so any statements regarding other injunctions that might have been allowed were *dicta*. In any event, the underlying state court proceedings here are not akin to a "pattern of baseless, repetitive claims" used illegitimately as an anti-competitive device, against which a combination of concurring and dissenting justices might have approved an injunction in *Vendo*. *Vendo Co.*, 433 U.S. at 644. Here, the RICO injury is premised on the allegedly fraudulent statements in the claims originally submitted – the state court actions are not abuses of the state-court system brought solely to cause RICO injury. Rather, the state court proceedings are the standard procedure for adjudicating insurer claim denials under the No-Fault system.

10

B.   *Necessary in aid of jurisdiction and to protect or effectuate judgments exceptions.*

Allstate treats the second and third exceptions, the "necessary in aid of jurisdiction" and "protect or effectuate judgments" as if they are one exception, and as if both are satisfied where the possibility of inconsistent judgments could in some nebulous sense "threaten" a future judgment of this court. Allstate misunderstands these exceptions.

The second exception, when enjoining a state court is necessary in aid of the federal court's jurisdiction, applies to *in rem* actions where a federal court that obtains jurisdiction over the *res* first may enjoin a state court action involving the same *res*. 17A Fed. Prac. & Proc. Juris. § 4225 (3d ed.); *United States v. Schurkman*, 728 F.3d 129, 137 (2d Cir. 2013) ("We recently reaffirmed the principle that the 'in aid of jurisdiction' exception generally applies only where necessary to protect a federal court's jurisdiction over a *res*."). Thus, because this case is *in personam*, the second exception to the Anti-Injunction Act has no application. 17A Fed. Prac. & Proc. Juris. § 4225 (3d ed.) ("in aid of jurisdiction" exception does not authorize "an injunction . . . restrain[ing] a state action *in personam* involving the same subject matter from going on at the same time")

Allstate's reliance on *Elzanaty*, 929 F. Supp. 2d at 220, for support for its argument that the requested injunction falls under the "in aid of jurisdiction" exception is entirely misplaced because *Elzanaty* involved only arbitrations, so the Anti-Injunction Act did not apply. In *Jamaica Wellness*, Judge Block ruled orally from the bench and, relying on the erroneous representations of the plaintiffs there as to the scope of the Anti-Injunction Act exceptions made orally in court, such as that the "in aid of jurisdiction" exception "gives the Court an exception where the Court would have the authority to issue an injunction should the general injunction elements be met," Marvin Decl. (Jun. 4, 2018), Exh. A at 9:5-7, erroneously believed that the "in aid of jurisdiction" exception authorized him to stay pending proceedings to "avoid fragmentation, avoid multiplicity of litigation which could result in disparate determinations," *Id*. at 12:6-7. But case law is clear that the "in aid

11

of jurisdiction" exception applies only to *in rem* cases to protect priority over a *res*, and does not apply even where state and federal courts have concurrent jurisdiction or where the state court determination could have collateral estoppel effect in the federal action. *Vernitron Corp. v. Benjamin*, 440 F.2d 105, 108 (2d Cir. 1971) ("There is no reason why the state court cannot or should not determine issues of fact and state law relevant thereto as they come up in the state litigation. The subsequent effect of collateral estoppel, far from requiring the federal court to stay proceedings in the state court, is a result which should be welcomed to avoid the task of reconsidering issues which have already been settled by another competent tribunal."). 17A Fed. Prac. & Proc. Juris. § 4225 (3d ed.) ("It is immaterial that the state court action involves a question of federal law, or that findings in it may have an issue-preclusion effect in the federal action, or even that the state action may involve a claim that is a compulsory counterclaim in the federal action. The "necessary in aid of its jurisdiction" exception does not allow a federal court to enjoin state proceedings merely because they involve issues presented in a federal *in personam* action." (footnotes omitted)).

 The third exception, where an injunction issues "to protect or effectuate" a court's judgments, is also known as the "relitigation exception." It is applied narrowly and only to prevent relitigation of claims in state court that have already been decided in federal court. 17A Fed. Prac. & Proc. Juris. § 4226 (3d ed.). "It is clear that this does not permit a federal court to enjoin state proceedings to protect a judgment that the federal court may make in the future but has not yet made." *Id.* Because the underlying state court proceedings are not relitigating any prior federal judgments, the third exception has no application to this case.

## CONCLUSION

For the foregoing reasons, Allstate's motion should be denied in its entirety.

Dated: Brooklyn, New York
July 27, 2018

                LAW OFFICE OF GARY TSIRELMAN, P.C.

                By: _____/s/_____
                Nicholas Bowers, Esq.
                Gary Tsirelman, Esq.
                *Attorneys for Defendant Top Q Inc. and Levy Davydov*
                129 Livingston Street
                Second Floor
                Brooklyn, New York 11201
                (718) 438-1200