# 16-1101-cv

## United States Court of Appeals

*for the*

## Second Circuit

ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY &
CASUALTY INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY
INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY,
ALLSTATE NORTHBROOK INDEMNITY COMPANY,

*Plaintiffs-Appellants,*

– v. –

HARVEY FAMILY CHIROPRACTIC, PHYSICAL THERAPY &
ACUPUNCTURE, PLLC, RICHARD HARVEY, D.C., JIN HWANGBO,
L. AC, BERVIN NELSON BRUAL, P.T.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

WILLIAM J. NATBONY
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
200 Liberty Street
New York, New York 10281
(212) 504-6351

ROBERT A. STERN
DANIEL MARVIN
STERN & MONTANA, LLP
One World Financial Center, 30th Floor
New York, New York 10281
(212) 532-8100

*Attorneys for Plaintiffs-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellants Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate Indemnity Company, and Allstate Northbrook Indemnity Company (collectively, "Plaintiff-Appellants" or "Allstate") certify that each is a wholly-owned subsidiary of The Allstate Corporation, a Delaware corporation. The stock of The Allstate Corporation is publicly traded. No publicly held entity owns 10% or more of the stock of The Allstate Corporation. The Allstate Corporation does not own 10% or more of any publicly traded entity.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT

I.    THIS COURT'S RECENT DECISION IN CHEVRON v. DONZIGER
SUPPORTS PLAINTIFF-APPELLANTS' CONTENTION THAT UNDER
THE NARROW CIRCUMSTANCES OF THIS CASE, THE RICO ACT IS
AN EXPRESSLY AUTHORIZED EXCEPTION TO THE ANTI-
INJUNCTION ACT ......................................................................................... 3

II.    DEFENDANTS-APPELLANTS' ARGUMENT REGARDING
THE FEDERAL ARBITRATION ACT IS NOT AT ISSUE ON THIS
APPEAL .......................................................................................................... 8

III.   PLAINTIFFS-APPELLANTS MADE THE PROPER SHOWING
NECESSARY FOR A STAY OF THE STATE COURT ACTIONS ............... 9

      A.  Plaintiffs-Appellants Would Suffer Irreparable Harm in the Absence
of a Stay ................................................................................................ 10

      B.  Plaintiffs-Appellants Set Forth Sufficiently Serious Questions Going to
the Merits to Make Them Fair Ground for Litigation ............................ 11

      C.  The Balance of Equities Favored Plaintiffs-Appellants ........................ 12

IV.   PLAINTIFFS-APPELLANTS HAVE NOT BEEN AFFORDED THE
RELIEF SOUGHT .......................................................................................... 14

CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Alan Skop, Inc. v. Benjamin Moore, Inc.,*
   909 F.2d 59 (2d Cir.1990) .................................................................12

*Chevron Corp. v. Donziger,*
   No. 14-0826(L), 2016 WL 4173988
    (2d Cir. Aug. 8, 2016) ............................................................ 4, 5, 6

*Dandong v. Pinnacle Performance Ltd.,*
   2011 WL 6156743 (S.D.N.Y. Dec. 12. 2011) ...................................12

*Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199
   (E.D.N.Y. 2013) ...........................................................................10,11

*Government Employees Insurance Co., et al. v. Damien*,
   *et al.,* No. CV 10-5409 (SLT) (JMA) (E.D.N.Y Jan.
   4, 2011) ...........................................................................................11

*Government Employees Insurance Co., et al. v. Damien*, *et al.,* No. CV 10-5409
(SLT) (JMA) (E.D.N.Y Jan. 4, 2011)

*Mitchum v. Foster*,
   407 U.S. 225 (1972).........................................................................4

*National Organization for Women, Inc. v. Scheidler*,
   267 F.3d 6878 (7th Cir. 2001).........................................................6

*Rotella v. Wood*,
   528 U.S. 5497 (2000).......................................................................6

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*,
   900 F.2d 522 (2d Cir.1990).............................................................14

*Allstate Ins. Co. v. Tvildiani,* 14-CV-07328 (SJ)(RLM)
   (E.D.N.Y. March 5, 2015), Doc. No. 12-30.....................................10

## Statutes

11 N.Y.C.R.R. § 65 3.9(a) ......................................................................13

9 U.S.C. §§ 1 ....................................................................................................8

28 U.S.C. § 2283 ...........................................................................................1, 4

18 U.S.C. §§ 1964(a)-(c)....................................................................................4

18 U.S.C. §§ 1964(a) ........................................................................................5

**Rules**

Fed. R. App. P. 32(a)(5) ..................................................................................16

Fed. R. App. P. 32(a)(6) ..................................................................................16

Fed. R. App. P. 32(a)(7)(B)(iii) ......................................................................16

## **INTRODUCTION**

Defendants-Appellees' opposition reflects an abject failure on their part to read and understand Plaintiffs-Appellants' brief on appeal. Demonstrative of that fact, Defendants-Appellees' opposition fails to even address the core issue underlying this appeal, *to wit*: whether the District Court erred by not finding that Section 1964(a) of the RICO Act is an exception to 28 U.S.C. § 2283 (the "Anti-Injunction Act" or "AIA") "expressly authorized by Act of Congress." Instead, Defendants-Appellees argue pointlessly regarding the District Court's authority to rule on that portion of Plaintiffs-Appellants' motion below which sought to stay No-fault *arbitrations* in light of the Federal Arbitration Act, ignoring that such issue *is not even on appeal*. If nothing else, Defendants-Appellees' failure to address the core issue on this appeal must be seen as an indication that they could not conjure any viable argument in opposition. Moreover, Defendants-Appellees' opposition brief arguments must be rejected for four additional reasons.

First, Defendants-Appellees dedicate an entire section of their brief to arguing that Plaintiffs-Appellants have not established a likelihood of success on the merits as required to satisfy the first element for the issuance of the preliminary injunction sought below. However, no showing was required or asserted by Plaintiffs below, as Plaintiffs-Appellants instead asserted that an injunction was appropriate because there were sufficiently serious questions going to the merits of

this matter to make them fair grounds for litigation. In this Circuit, it is well-settled that conflicting stories between parties, as is present here, can establish a sufficiently serious question going to the merits for the purposes of justifying a preliminary injunction, and Defendants-Appellees do not and cannot argue otherwise.

Second, Defendants-Appellees argue that Plaintiffs-Appellants cannot show irreparable harm because Plaintiffs-Appellants' losses can be remedied by monetary damages. Once again, Defendants-Appellees proffer an argument that demonstrates their failure to read and/or understand Plaintiffs-Appellants' brief, or the Complaint, which plainly seeks a declaratory judgment. In that regard, the United States Supreme Court has held declaratory judgment to be a form of equitable relief, and therefore it cannot be redressed by monetary damages. Accordingly, irreparable harm is inherent in Plaintiffs-Appellants' claim for equitable relief and has been demonstrated.

Third, Defendants-Appellees assert that the balance of hardship tips in their favor because if a preliminary injunction is issued, they will be required to wait until this matter is resolved in order have their No-fault claims heard. As discussed below, and for the reasons set forth in Plaintiffs-Appellants' initial brief, that argument simply fails. *See* Pls.' Br., ECF No. 44, at 39–46. A mere delay in litigation resulting from a stay cannot be considered, in and of itself, sufficient

prejudice to preclude a stay and the balance of equities otherwise tip resoundingly in Plaintiffs-Appellants' favor.

Fourth and finally, Defendants-Appellees attempt to mislead this Court by asserting that Plaintiffs-Appellants have already been afforded a stay of the state court proceedings in the lower courts, thus rendering this appeal moot. That argument is patently untrue, and unsupported by any documentary evidence (because it does not exist)and this Court should not consider a claim that is dehors the record. At any event, no stays of the claims in dispute have been granted

Accordingly, for the reasons set forth herein and in Plaintiffs-Appellants' initial brief, it is respectfully submitted that this Court should reverse the District Court's denial of Plaintiffs-Appellants' Motion for Reconsideration, and reverse the District Court's denial of Plaintiffs-Appellants' Motion for Preliminary Injunction.

## ARGUMENT

## I.

## THIS COURT'S RECENT DECISION IN *CHEVRON v. DONZIGER* SUPPORTS PLAINTIFF-APPELLANTS' CONTENTION THAT UNDER THE NARROW CIRCUMSTANCES OF THIS CASE, THE RICO ACT IS AN EXPRESSLY AUTHORIZED EXCEPTION TO THE ANTI-INJUNCTION ACT

As a threshold matter, Plaintiffs-Appellants note that after their initial brief was filed in this matter, this Court, in interpreting the remedial provisions of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1964(a)-(c), held that "a federal court is authorized to grant equitable relief to a private plaintiff who has proven injury to its business or property by reason of a defendant's violation of § 1962." *Chevron Corp. v. Donziger*, No. 14-0826(L), 2016 WL 4173988, at *53 (2d Cir. Aug. 8, 2016) (hereinafter "*Chevron*"). In so holding, this Court effectively found that the first of two prongs necessary under Supreme Court precedent in order for the RICO Act to qualify as an "expressly authorized" exception to the Anti-injunction Act has been satisfied. Other language set forth in *Chevron* makes clear that the second prong is satisfied here as well, and that the *Chevron* holding harmonizes with Plaintiffs-Appellants' position here.

As set forth in Plaintiffs-Appellants' brief on appeal, the Anti-Injunction Act ("AIA"), codified at 28 U.S.C. § 2283, prohibits federal courts from enjoining state court proceedings except, *inter alia*, "as expressly authorized by Act of Congress." *See* Pls.' Br., ECF No. 44, at 22–24. In *Mitchum v. Foster*, 407 U.S. 225 (1972), the United States Supreme Court held that to qualify for this exception, the statute in question need not contain an express reference to the AIA, nor must it explicitly authorize injunctions of state court proceedings. 407 U.S. at 337.  Rather, the test is simply whether "an Act of Congress, (i) clearly <u>creating a federal right or remedy</u> enforceable in a court of equity, and (ii) could be given its <u>intended scope</u> only by a stay of the state court proceeding." *Id.* at 238 (emphasis added).

4

With respect to the first prong of the *Mitchum* test, this Court, in *Chevron*, recognized that the RICO Act clearly created a federal right or remedy enforceable in a court of equity, finding that § 1964(a), which grants federal courts broad powers of equitable relief to "prevent and restrain" violations of the Act, is a substantive grant of remedies available to all plaintiffs, whether private or governmental. *Chevron*, 2016 WL 4173988, at *53-54. This Court explained:

> We read subsection (a) of § 1964 as expansively authorizing federal courts to exercise their traditional equity powers. . . . Accordingly, unless a statute expressly, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, we will infer that all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. . . . In our view, . . . Congress did not intend to limit the court's subsection (a) authority by reference to the identity or nature of the plaintiff.

*Id.* (internal citations and quotations omitted). Accordingly, based on this Court's holding in *Chevron*, the first prong of the *Mitchum* test is satisfied, to *wit*: the RICO Act provides private litigants a federal right and remedy enforceable in a court of equity.

With respect to the second prong of the *Mitchum* test— whether the RICO Act could be given its intended scope only by an injunction of the state court proceedings, that is clearly the case here. As this Court noted in *Chevron*, "the interpretation of § 1964 as authorizing the grant of equitable relief to private plaintiffs is consistent with Congress's intent 'to "encourag[e] civil litigation to supplement Government efforts to deter and penalize the . . . prohibited practices.

5

The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to <u>eliminating racketeering activity</u>." *Chevron* 2016 WL 4173988, at *54 (alteration in original) (emphasis added) (internal quotation marks omitted) (quoting *National Organization for Women, Inc. v. Scheidler*, 267 F.3d 687, 698 (7th Cir. 2001) (quoting *Rotella v. Wood*, 528 U.S. 549, 557 (2000))).

Absent a stay of the state court proceedings here, the RICO violations alleged in the Complaint will continue unabated, allowing Defendants-Appellees to perpetuate their alleged fraud through those state court proceedings, each one of which seeks the unlawful fruit of a RICO predicate act. Far from "deterring and penalizing prohibited practices" or "eliminating racketeering activity," allowing the state court actions to proceed here would have the opposite effect: it would both reward and further the racketeering activity by offering the Defendants-Appellees a forum to seek their ill-gotten gains. It is for this reason that permitting the state court matters to proceed under the specific circumstances of this case would cut directly against the intended scope of the RICO Act in eliminating racketeering activity as articulated in *Chevron* and by the United States Supreme Court.

Furthermore, interpreting the RICO Act to allow a District Court the power to stay state court matters in order to prevent and restrain RICO violations clearly promotes the Act's objective. A contrary reading would risk stripping federal courts

6

of their power to issue effective relief in cases involving an ongoing racketeering scheme in which state courts are being used to further a RICO enterprise—a result which would undermine the RICO Act's purpose and severely undercut its intended scope. *See.* Pls.' Br., ECF No. 44, at 31–34. In the instant case, Plaintiffs-Appellants asked the District Court to place a temporary hold on Defendants-Appellees' state court No-fault actions, which directly seek the fruits of their racketeering activity. In light of the wide latitude given to District Courts in shaping equitable relief in RICO actions, and the congressional and judicial guidance consistently reaffirming RICO's broad scope, it is clear that the provisional remedy sought by Plaintiffs-Appellants here—a temporary stay of the state court actions in order to preserve the status quo and prevent and restrain further violations of Section 1962—was and is necessary in order to give the RICO Act its intended extensive remedial purpose and scope.

In sum, even if the text of the RICO Act does not expressly allow for the issuance of preliminary injunctions to private plaintiffs, as the Court stated in *Chevron*, that would have no impact on the relief requested below because the fundamental issued presented by this appeal is whether Plaintiffs-Appellants met the criteria for falling within the "Act of Congress" exception to the AIA. Such a finding is dependent upon whether the RICO Act, which plainly grants Plaintiffs-Appellants a federal right and equitable remedy, could only be given its intended

scope by a stay of the state court proceedings at issue. For the reasons set forth in Plaintiffs-Appellants' brief and further herein, it is respectfully submitted the answer is "yes", and Plaintiffs-Appellants' motion for equitable relief should have been granted.

Finally, as set forth in Plaintiffs-Appellants' brief and incorporated herein by reference, the Supreme Court has found the "expressly authorized" exception to the Anti-Injunction Act particularly applicable when it is "evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights," which is the case with the RICO Act, *see* Pls.' Br., ECF No. 44, at 34–35, and because the "expressly authorized" exception to the AIA applies where the state court actions sought to be stayed contribute to ongoing violations of a federal statute, which is also the case here. *See* Pls.' Br., ECF No. 44, at 35–38.

## II.

### DEFENDANTS-APPELLANTS' ARGUMENT REGARDING THE FEDERAL ARBITRATION ACT IS NOT AT ISSUE ON THIS APPEAL

Defendants-Appellees oppose an argument that was not raised on appeal or addressed in Plaintiffs-Appellants' brief. In particular, Defendants-Appellees argue that the District Court lacks the power to stay *No-fault arbitrations* pending between the parties, due to the mandates of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. *See* Defs.' Br., ECF No. 57, at 16. However, that issue is not

8

before this Court on appeal, which solely seeks clarity regarding the District Court's power to stay *state court actions*, not arbitrations. In that regard, Defendants-Appellees' argument is irrelevant and should be ignored by the Court.

## III.

### PLAINTIFFS-APPELLANTS MADE THE PROPER SHOWING NECESSARY FOR A STAY OF THE STATE COURT ACTIONS

Plaintiffs-Appellants' brief in support of this appeal detailed the sufficiency of their showing below of entitlement to preliminary injunctive relief, *See* Pls.' Br., ECF No. 44, at 38–49. Accordingly, Plaintiffs-Appellants principally rely on the arguments made therein, and seek only to make a few clarifying remarks for the purposes of addressing Defendants-Appellees' arguments in opposition.

First and foremost, it is worth noting that the District Court here took no issue with any of the substantive elements of Plaintiffs-Appellants' motion for a preliminary injunction, and in fact noted that in a prior case, under the very same circumstances and showing made, it had granted the relief sought insofar as staying arbitrations. A-776. As the court noted below, the sole issue it was seeking to determine was whether or not the court had the power to enjoin the state court litigations, not whether Plaintiffs-Appellants had made the proper showing of entitlement to such relief. A-776. Plaintiffs-Appellants have plainly satisfied the prerequisites for entitlement to the injunctive relief sought.

## A. Plaintiffs-Appellants Would Suffer Irreparable Harm in the Absence of a Stay

Defendants-Appellees argue that Plaintiffs-Appellants would not suffer irreparable harm in the absence of the requested injunction, but fail to address the fundamental reason why such harm exists, and why District Courts in this Circuit have repeatedly found such harm to exist in substantially similar circumstances. At bottom, "allowing a large number of proceedings to be heard by a mix of [factfinders], each of whom will likely come to their own independent and potentially contradictory conclusions, will result in harm to [Plaintiffs-Appellants] from which [they] cannot recover." *Elzanaty*, 929 F. Supp. 2d at 222; *see also Tvildiani*, 14-CV-07328 (E.D.N.Y. April 14, 2015) (granting the plaintiffs' motion to preliminarily enjoin the defendants from filing and proceeding with any No-fault collection arbitrations pending the resolution of the federal court action, finding that the "[p]laintiffs demonstrated that they face[d] irreparable harm absent the award of a preliminary injunction.").

Moreover, while Defendants-Appellees assert that Plaintiffs-Appellants would suffer no harm outside of monetary damages, this is simply not true and ignores the fact that Plaintiffs-Appellants also seek declaratory relief from the District Court. If Defendants-Appellees are permitted to continue filing and pursuing hundreds of claims in state courts seeking reimbursement from Plaintiffs-Appellants to which they are not entitled due to Harvey FCPTA's fraudulent

incorporation, the risk of contradictory decisions which may then be rendered unenforceable by a decision in the instant action would constitute an irreparable harm. *See Elzanaty*, 929 F. Supp. 2d at 221 ("If this Court were to grant a declaratory judgment finding [Defendants] ineligible for reimbursement, it may be that an award won by the Defendants in arbitration would conflict with this Court's ruling and may not be enforceable. With this in mind, it cannot be said that the only injuries at stake here are money, time and energy necessarily expended in the absence of a stay." (quotations and citations omitted)); *Government Employees Insurance Co., et al. v. Damien*, *et al.,* No. CV 10-5409 (SLT) (JMA) (E.D.N.Y Jan. 4, 2011) (enjoining defendants from "commencing and/or prosecuting, or causing to be commenced or prosecuted, any future collection proceeding against [plaintiffs] seeking payment for No-fault benefits…either through state court proceedings or arbitration, except as counterclaims to this action"). Accordingly, Plaintiffs-Appellants have demonstrated irreparable harm in the absence of a stay.

### B. Plaintiffs-Appellants Set Forth Sufficiently Serious Questions Going to the Merits to Make Them Fair Ground for Litigation⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Defendants-Appellees argue that Plaintiffs-Appellants did not establish a likelihood of success on the merits. However, such a showing was not required because Plaintiffs instead asserted sufficiently serious questions going to the merits of this matter to make them fair ground for litigation. Defendants-Appellees'

motivation for applying the wrong standard is clear: in this Circuit, it is well-settled that conflicting stories between parties, as is present here, can establish a sufficiently serious question going to the merits for the purposes of justifying a preliminary injunction. *See, e.g,. Alan Skop, Inc. v. Benjamin Moore, Inc.,* 909 F.2d 59, 61 (2d Cir.1990); *Dandong v. Pinnacle Performance Ltd.*, 2011 WL 6156743 (S.D.N.Y. Dec. 12. 2011). At bar, Defendants-Appellees' opposition sets forth purported facts which directly conflict with those alleged in the Compliant, and they maintain that "Plaintiff(s)' allegations against the Defendant(s) are categorically false." Defs.' Br., ECF No. 57, at 1–3. Those denials, in and of themselves, are adequate for a finding that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, thus satisfying this element for the issuance of a preliminary injunction.

## C. <u>The Balance of Equities Favored Plaintiffs-Appellants</u>

Defendants-Appellees' sole argument that the balancing of the equities tips in their favor is that upon the issuance of a stay, Defendant-Appellants would have to wait to have their No-fault claims heard. Defs.' Br., ECF No. 57, at 15–16. Hyperbole aside, such an outcome is axiomatic, of course, as the entire function of a stay is to postpone litigation. Indeed, if delay in and of itself was sufficient to militate against a stay, no stay would ever issue. Moreover, to the extent that a delay in reimbursement could in some way be considered a significant detriment,

such a detriment is clearly outweighed in this case by the language of 11 N.Y.C.R.R. § 65 3.9(a), which mandates the award of two percent (2%) interest *every month* No-fault payments are overdue. Thus, if the stay requested here were granted, in the extremely unlikely event that Defendants-Appellees prevailed in this matter (and subsequently in the related litigations), they would be well compensated for the delay with a *twenty-four percent* (24%) yearly return on the outstanding principle of their successful claims. On the other hand, the prejudice to Plaintiffs-Appellants in the absence of a stay, wherein Plaintiffs-Appellants could be subject to numerous additional and duplicative proceedings, as well as conflicting, unenforceable, and potentially unrecoverable judgment losses, significantly outweighs the mere inconvenience of delay asserted by Defendant-Appellees.

Thus, because Plaintiffs-Appellants adequately established (1) irreparable harm; (2) sufficiently serious questions going to the merits of the case; and (3) that the balance of the equities tips decidedly in their favor, and because the court below took no issue with Plaintiffs-Appellants' satisfaction of any of those factors, it is respectfully submitted that this Court should remand this matter for the issuance of a stay of the subject state court proceedings, pending the outcome of this litigation.

## IV.

## PLAINTIFFS-APPELLANTS HAVE NOT BEEN AFFORDED THE RELIEF SOUGHT

Defendants-Appellees assert – falsely - that Plaintiffs-Appellants' have already been afforded a stay of the state court proceedings in the lower courts, thus rendering thus appeal moot. That is simply untrue and unsupported by any documentation. Although Plaintiffs-Appellants have filed motions seeking stays of the state court proceedings in the state courts, in accordance with the New York State Civil Practice Law and Rules, those motions have not even been heard yet, let alone granted. Defendants-Appellees' argument in that regard must be ignored. *See e.g. Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 526 (2d Cir.1990) (refusing to consider contention on appeal, "[i]n view of the dehors the record factual nature of [the claim]."

## CONCLUSION

For the reasons set forth herein, and in Plaintiffs-Appellants' initial brief, it is respectfully submitted that: (1) the District Court erred in holding that the Anti-Injunction Act precluded it from issuing the preliminary relief requested by Plaintiffs-Appellants in their Motion for Preliminary Injunction; (2) the District Court erred in failing to issue the requested injunction; (3) the District Court abused its discretion in failing to identify the Second Circuit case upon which it purportedly relied in denying Plaintiffs-Appellants' Motion for a Preliminary

14

Injunction; and (4) the District Court erred in failing to reconsider its denial of

Plaintiffs-Appellants' Motion for Preliminary Injunction.

**STERN & MONTANA LLP**

**CADWALADER, WICKERSHAM & TAFT LLP**

By_____/s/Daniel S. Marvin_____

By_____/s/William J. Natbony_____

Robert A. Stern, Esq. (RAS-1282)
Daniel S. Marvin, Esq.(DM-7106)
Attorneys for Plaintiffs-Appellants
One World Financial Center
New York, New York  10281
Telephone No.:  (212) 532-8100

William J. Natbony, Esq. (WN-5507)
Attorneys for Plaintiffs-Appellants
One World Financial Center
New York, New York  10281
Telephone No.:  (212) 504-6351

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 3,402 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point Times New Roman font with footnotes in 12 point Times New Roman font.

By:     /s/Daniel Marin