# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

James A. McKenney
Phone: 646-870-1742
Fax:    646-233-1916
jmckenney@morrisonmahoney.com

120 BROADWAY, SUITE 1010
NEW YORK, NY 10271
212-825-1212

MASSACHUSETTS
BOSTON
FALL RIVER
SPRINGFIELD
WORCESTER

CONNECTICUT
HARTFORD
STAMFORD

ENGLAND
LONDON

NEW HAMPSHIRE
MANCHESTER

NEW JERSEY
PARSIPPANY

NEW YORK
NEW YORK

RHODE ISLAND
PROVIDENCE

September 29, 2018

**Via ECF**
Hon. Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Allstate Ins. Co. v. Avetisyan*, No. 17-CV-4275 (LDH) (RML)
      **Opposition to Motion to Quash of Non-Party Multi LVR LLC (ECF No. 199)**

Dear Judge Levy:

  Along with Cadwalader, Wickersham & Taft, LLP, we represent Plaintiffs in the above-referenced matter and write to respectfully oppose the motion (*see* ECF No. 199) (the "Motion") filed by non-party Multi LVR LLC ("Multi LVR") seeking (1) to quash the subpoena *duces tecum* (ECF No. 199-1) (the "Subpoena") served by Plaintiffs upon non-party TD Bank, N.A. ("TD Bank"), seeking bank records pertaining, *inter alia*,[1] to Multi LVR, including the account number ending in -6364 (the "Subject Account"), or (2) in the alternative, a protective order limiting the Subpoena. Plaintiffs respectfully submit that the Motion should be denied because: (1) the Subpoena seeks relevant documents concerning the money laundering allegations in this action; and (2) any concerns Multi LVR may have about commercially sensitive information is mitigated as Plaintiffs will hold any such records confidential on same terms as the proposed confidentiality order currently before the Court (ECF No. 189-1) (the "Proposed Order").[2]

  By way of background, the Amended Complaint (the "Complaint") in this matter alleges that defendant Top Q, which purports to be a durable medical equipment ("DME") retailer owned by Levy Davidov ("Davidov"), engaged in a scheme to defraud Plaintiffs through the submission of hundreds of fraudulent insurance claims for DME. *See* ECF No. 5 (Am. Compl.), at ¶¶ 161-73. As part of the scheme, Top Q and other Retailers engaged in complex money laundering activities designed to generate funds to pay kickbacks and/or other financial compensation to No-fault Clinics and/or DME wholesalers that facilitated the fraudulent billing. *See id.* at ¶¶ 174-94. During discovery, Plaintiffs identified at least $68,000 that was transferred by Top Q to a TD Bank account in the name of

---

[1] The Subpoena seeks records from TD Bank pertaining to Defendant Top Q, Inc. ("Top Q") beginning in 2016 to the present, as well as to two non-parties. *See* ECF No. 199-1.

[2] The Proposed Order has already been agreed to by Defendant Top Q. *See generally* ECF No. 189.

Cont'd

M<small>ORRISON</small> M<small>AHONEY</small> <small>LLP</small>

Hon. Robert M. Levy
September 28, 2018
Page 2

Multi LVR, an entity with no online presence, no apparent storefront or business address, and no obvious connection to the DME business other than suspicious transfers of funds. Plaintiffs subpoenaed Multi LVR's bank records, and its Motion followed. TD Bank, to which the Subpoena was issued, has not moved to compel or expressed any objections to the requested discovery.

As a threshold matter, Multi LVR has already lost a substantially identical motion in *Allstate v. Abramov*, wherein the court denied Multi LVR's motion to quash Allstate's subpoena for bank records for the very same account, rejecting the argument that Multi LVR is an entity that engages in real estate and gold transactions with no relationship to the scheme to defraud alleged against DME Retailer MDAX, Inc. ("MDAX"). *See* No. 16-CV-1465 (AMD) (SJB) (E.D.N.Y. Dec. 15, 2017) (Order) (annexed hereto as **Exhibit "A"**).[3] In denying Multi LVR's motion, the *Abramov* court ordered bank records produced from the time of MDAX's opening to the time it ceased operations in June of 2016. Those bank records were subsequently produced.[4] The result should be the same here.

Additionally, Multi LVR has neither shown that the Subpoena is burdensome nor provided any good cause for the protective order it seeks. The party seeking such an order "bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *Neogenix Oncology, Inc. v. Gordon*, 2017 WL 1207558, at *8 (E.D.N.Y. 2017) (citations omitted). "[C]onclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information," *id.*, and a protective order may only issue when the moving party demonstrates good cause, upon a particularized demonstration of fact, as distinguished from stereotyped and conclusory statements, *see In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987). Here, any burdens of production fall solely on TD Bank, not Multi LVR, which therefore cannot claim undue burden or oppression would result from complying with the Subpoena. Further, any claim that the records are irrelevant is (a) wrong, and (b) insufficient to warrant a protective order. *See, e.g., S.E.C. v Fed. Alliance Grp., Inc.*, 93-CV-0895E(F), 1994 WL 661056 (W.D.N.Y. Nov. 9, 1994) (denying motion for protective order based solely on stated belief subpoenaed bank records irrelevant, and not "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). In cases such as these – involving insurance fraud and money laundering schemes, with allegations of illegal kickbacks and secret intermediaries – Plaintiffs are entitled to the records in order to assist in identifying, *inter alia*: (i) entities that are used as clearinghouses for all monies received by MDAX; (ii) the destination of all monies paid to Top Q and funneled to pay the kickbacks alleged in the Complaint; (iii) any individuals who may have profited from Top Q's fraudulent scheme; and (iv) the extent to which (and how) money received by entities such as Multi LVR was used in furtherance of the scheme to defraud.

---

[3] MDAX is owned by Uriyel Mirzakandov. His brother, Roshel Mirzakandov, is the owner of Multi LVR. *See* **Exhibit "B"** (Mirzakandov Affs. in *Abramov*). On information and belief, Defendant Davidov is married to Freida Mirzakandov and is related to the Mirzakandovs. Recently, MDAX, Multi LVR, and both Mirzakandovs were sued for No-fault fraud in this District in another action, in which Multi LVR is alleged to have facilitated MDAX's DME scheme by serving as the clearinghouse for its proceeds. *See* **Exhibit "C"** (GEICO Compl.), at ¶ 11.

[4] Although no confidentiality order was entered in *Abramov* forbidding the use of such bank records here, the relevant parties did agree to terms like those of the Proposed Order herein. Accordingly, out of an abundance of caution, Plaintiffs have not filed herewith such records, which are only summarized to the extent necessary in responding to the Motion. However, if necessary, Plaintiffs will file any such documents under seal or otherwise as the Court may require.

MORRISON MAHONEY LLP

Hon. Robert M. Levy
September 28, 2018
Page 3

*See, e.g., Allstate Ins. Co. v. Afanasyev*, 12-CV-2423 (JBW) (E.D.N.Y. Jan. 17, 2014), ECF No. 406 (annexed hereto as **Exhibit "D"**) (ordering production of non-party bank records to assist the investigation of a money laundering scheme connected to DME fraud); *State Farm Mut. Auto. Ins. Co. v. McGee*, No. 10 CV 3848, 2012 WL 8281725, at *2-3 (E.D.N.Y. Feb. 21, 2012) (finding tax and bank records relevant to show percentage of profits received by various parties).

Here, as in the perviously discussed *Abramov* action, Multi LVR asserts that it "is owned and operated by Roshel Mirzakandar (sic)[5] as an investment company focusing primarily on investments in real estate and rare metals." Mot. p. 1. Based on that description, one would <u>not</u> expect to find frequent, significant movements of cash to and from DME retailers, which is precisely what Multi LVR's bank records show. Undermining Multi LVR's feigned lack of any relationship to the DME business, the records uncovered in *Abramov* show that DME retailer MDAX wrote at least one check (signed by "<u>Mirzakandov</u>") for $54,000 <u>directly</u> to Multi LVR, and at least another <u>24 checks</u> bearing the memo "MDAX" and totaling $91,069.01 were paid to Multi LVR from an IOLTA from Werner, Zaroff, Slotnick, Stern, & Ashkenazy LLP ("Werner Zaroff"). Werner Zaroff, among other things, is a no-fault collections firm that represents MDAX in collection actions to recover payments for its DME claims. *See* **Exhibit "E."** If Multi LVR were just an investment company, there would be no reason for the proceeds of MDAX's collections to be deposited directly into the account of Multi LVR. Top Q began submitting No-Fault claims to Allstate for reimbursement in June 2016, the same month MDAX ceased operations. Thereafter, like MDAX, Top Q transferred funds (at least $68,000) to Multi LVR, suggesting that it had transitioned to serving as a clearinghouse for Top Q's No-fault proceeds – in the same manner as it had for MDAX – and plainly warranting discovery.[6]

Furthermore, the registered service address for Multi LVR is the same as that of MDAX and several other entities that do not appear to have a website, store front or connection to MDAX's business, yet MDAX transferred over $300,000 to these entities between September 2015 and September 2016. Notably, each of the following businesses, in addition to MDAX and Multi LVR, list 139-09 84 Dr. #1A, Briarwood, NY 11435 as its registered service address: BNR Supplies Inc. (a purported supply company), and Best Esthetic Services Inc. (a purported beauty salon/shop). *Id.* The address "139-09 84 Dr." is a residential address, *see* **Exhibit "F"**, and no operational business address for either MDAX or Multi LVR can be found. It is thus implausible and would require the suspension of reason to conclude that these supposedly unrelated entities, all of which have no physical or digital footprint suggesting they are legitimate businesses, are operating out of the same <u>residential</u> address and receiving substantial sums of money from DME companies, yet they are not being used in furtherance of the money laundering scheme alleged in the Complaint. Considering the intrafamily transactions among MDAX, Multi LVR, and now Top Q – for which Multi LVR only offers a conclusory explanation, devoid of any evidence supporting the legitimacy of the business or the payments it received – and in light of the Complaint's allegations of money laundering and kickbacks, the bank records of Multi LVR are materially relevant to Plaintiffs' claims, just as they were in the *Abramov* action.

---

[5] The correct spelling is "Roshel Mirzakandov." *See* Exh. B.

[6] Specifically, TD Bank previously produced all records regarding the Subject Account during the period beginning on March 4, 2015 and ending on June 30, 2016. Accordingly, Plaintiffs are only seeking Records after July 1, 2017.

**MORRISON MAHONEY LLP**

Hon. Robert M. Levy
September 28, 2018
Page 4

      Accordingly, Plaintiffs respectfully submit that the Motion should be denied, and that the Court should enter an Order directing Multi LVR to comply with the Subpoena, and further ordering that any records produced by TD Bank in accordance with the Subpoena shall be handled in accordance with the Proposed Order (ECF No. 189-1) until the entry of the Proposed Order or other applicable order of the Court.

      Thank you for your consideration in this regard.

      Respectfully submitted,

      **MORRISON MAHONEY LLP**

By:    /s/ James McKenney
      James A. McKenney

Encl.

cc:    All Counsel (via ECF)