UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY, *et al.*,

                           Plaintiffs,

     -against-

ARTUR AVETISYAN, *et al.*,

                           Defendants.

17-CV-4275 (LDH) (RML)

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PRE-ANSWER MOTION TO DISMISS AMENDED COUNTERCLAIM OF DEFENDANTS LENEX SERVICES, INC., ALEXANDER BLANTZ, GALA TRADING INC., AND IGAL BLANTZ

MORRISON MAHONEY, LLP
120 BROADWAY, SUITE 1010
NEW YORK, NEW YORK 10271
TELEPHONE: (212) 825-1212

CADWALADER, WICKERSHAM & TAFT LLP
ONE WORLD FINANCIAL CENTER
NEW YORK, NEW YORK 10281
TELEPHONE: (212) 504-6361

ATTORNEYS FOR ALLSTATE

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF RELEVANT FACTS ............................................................ 5

1.    The No-fault Law and Additional Verification of No-Fault Claims ...................... 5

2.    Allstate's Original Complaint ................................................................... 6

3.    Defendants' Original Counterclaim ............................................................ 7

4.    Plaintiffs' Amended Complaint and Defendants' Amended Counterclaim .......... 9

STANDARD OF REVIEW ............................................................................. 11

ARGUMENT ................................................................................................ 12

I.    THE COUNTERCLAIM MUST BE DISMISSED BECAUSE IT DEPENDS ON
      THE FACIALLY IMPLAUSIBLE "PAYMENT AVOIDANCE SCHEME" .................. 12

II.   THE COUNTERCLAIM MUST BE DISMISSED BECAUSE
      IT FAILS TO STATE A CLAIM UNDER GBL § 349 .......................................... 15

      A.    Defendants Fail to Sufficiently Allege
            Relevant Consumer-Oriented Conduct .............................................. 17

      B.    Defendants Fail to Sufficiently Allege
            Materially Misleading Acts or Practices ............................................ 20

III.  THE COUNTERCLAIM IS BARRED BY THE
      *NOERR-PENNINGTON* DOCTRINE ............................................................. 22

IV.   A. BLANTZ, GALA, AND I. BLANTZ LACK STANDING TO
      ASSERT CAUSES OF ACTION WHICH BELONG TO RETAILER LENEX ........... 23

V.    LEAVE TO FURTHER AMEND THE COUNTERCLAIM
      WOULD BE FUTILE .................................................................................. 24

CONCLUSION ............................................................................................. 26

## **TABLE OF AUTHORITIES**

### **CASES**

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
  241 F. Supp. 3d 461 (S.D.N.Y. 2017) .................................................................. 19

*Abrams v. Donati*,
  66 N.Y.2d 951 (1985) ........................................................................................... 24

*Allahabi v. New York Life Ins. Co.*,
  No. 98-CIV-4334, 1999 WL 126442 (S.D.N.Y. Mar. 10, 1999)............................ 16

*Allstate Ins. Co. v. Halima*,
  No. 06-CV-1316 (DLI) (SMG), 2009 WL 750199 (E.D.N.Y. Mar. 19, 2009) ......... 2

*Allstate Ins. Co. v. Lyons*,
  843 F. Supp. 2d 358  (E.D.N.Y. 2012) ............................................................... 1, 2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................... 11, 12

*Barroso v. Polymer Research Corp. of Am.*,
  80 F. Supp. 2d 39 (E.D.N.Y. 1999) ...................................................................... 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................... 11

*Bologna v. Allstate Ins. Co.*,
  138 F. Supp. 2d 310 (E.D.N.Y. 2001) ................................................................... 21

*Capitelli v. Riverhouse Grill, Inc.*,
  No. 15-CV-2638 (ADS) (ARL), 2015 WL 9413102 (E.D.N.Y. Dec. 21, 2015)..... 11

*Daniels v. Provident Life & Cas. Ins. Co.*,
  No. 00-CV-668E, 2001 WL 877329 (W.D.N.Y. July 25, 2001 ............................. 16

*Foster v. N.Y. City Prob. Dep't*,
  No. 11-CV-4732 KAM JMA, 2013 WL 1342259 (E.D.N.Y. Mar. 7, 2013), *report
  and recommendation adopted,* 2013 WL 1305775 (E.D.N.Y. Mar. 30, 2013) ........ 11

*FragranceNet.com. Inc. v. Fragrancex.com. Inc.*,
  679 F. Supp. 2d 312 (E.D.N.Y. 2010) ................................................................... 11

*Gotlin ex rel. Cty. of Richmond v. Lederman*,
  483 F. App'x 583 (2d Cir. May 1, 2012)................................................................ 16

*Gov't Employees Ins. Co. v. Hazel*,
    No. 11-CV-00410 (CBA) (VMS), 2014 WL 4628655 (E.D.N.Y. Aug. 11, 2014)
    *report and recommendation adopted*, 2014 WL 4628661 (E.D.N.Y. Sept. 15, 2014)....... 22, 23

*Greenspan v. Allstate Ins. Co.*,
    937 F. Supp. 288 (S.D.N.Y. 1996) ............................................................... 17

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) ...................................................................... 11, 12

*Hill v. Curcione*,
    657 F.3d 116 (2d Cir. 2011) ......................................................................... 25

*Jones v. Niagara Frontier Transp. Auth.*,
    836 F.2d 731 (2d Cir. 1987) ........................................................................ 24

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011). ....................................................................... 11

*Lava Trading Inc. v. Hartford Fire Ins. Co.*,
    326 F. Supp. 2d 434 (S.D.N.Y. 2004) ...................................................... 19, 20

*Liberty Mut. Fire Ins. Co. v. Shapson*,
    13-CV-05046 (ENV)(PK) (E.D.N.Y. Mar. 29, 2016) ..................................... 2

*MaGee v. Paul Revere Life Ins. Co.*,
    954 F. Supp. 582 (E.D.N.Y. 1997) ............................................................... 16

*Med. Soc. of State of New York v. Oxford Health Plans, Inc.*,
    15 A.D.3d 206 (1st Dep't 2005) ................................................................... 17

*Med. Soc'y of State of N.Y. v. Serio*,
    100 N.Y.2d 854 (2003). ........................................................................... 5, 6

*Perl v. Meher*,
    18 N.Y.3d 208 (2011) ................................................................................ 6

*Ruffalo v. Oppenheimer & Co.*,
    987 F.2d 129 (2d Cir. 1993) ........................................................................ 25

*Schwartzco Enter. LLC v. TMH Mgmt., LLC*,
    60 F. Supp. 3d 331 (E.D.N.Y. 2014) ............................................................ 19

*Singh v. NYCTL 2009-A Tr.*,
    683 F. App'x 76 (2d Cir. 2017) ................................................................... 22

*Singh v. NYCTL 2009-A Tr.*,
   No. 14 CIV. 2558, 2016 WL 3962009 (S.D.N.Y. July 20, 2016),
   *aff'd*, 683 F. App'x 76 (2d Cir. 2017) ................................................................... 23

*State Farm Mut. Auto. Ins. Co. v. Rabiner*,
   749 F. Supp. 2d 94 (E.D.N.Y. 2010) .......................................................................... 1

*Stutman v. Chem. Bank,*
   95 N.Y.2d 24 (2000) .................................................................................................. 16

*T&G Med. Supp., Inc. v. Nat'l Grange Mut. Ins. Co.*,
   800 N.Y.S.2d 835 (N.Y. Civ. Ct., N.Y. Cnty. 2005) .............................................. 24

*U1IT4less, Inc. v. FedEx Corp.*,
   896 F. Supp. 2d 275 (S.D.N.Y. 2012) ...................................................................... 16

*Vitolo v. Mentor H/S, Inc.*,
   426 F. Supp. 2d 28 (E.D.N.Y. 2006), *aff'd*, 213 F. App'x 16 (2d Cir. 2007) ......... 17

## STATUTES

N.Y. Ins. Law § 5109 .......................................................................................................... 1, 2

N.Y. Ins. Law § 5101 .............................................................................................................. 5

N.Y. Ins. Law § 5106 ..................................................................................................... *passim*

N.Y. Gen. Bus. Law § 349 ............................................................................................. *passim*

## RULES

Fed. R. Civ. P. 12 .............................................................................................................. 1, 11

Fed. R. Civ. P. 15 ................................................................................................................... 25

## REGULATIONS

11 N.Y.C.R.R. § 65–3.11 ......................................................................................................... 5

11 N.Y.C.R.R. § 65–3.5 ........................................................................................................... 5

11 N.Y.C.R.R. § 65–3.8 ........................................................................................................... 5

## INTRODUCTION

Plaintiffs-Counterclaim Defendants ("Allstate") respectfully submit this memorandum of law pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure in support of their pre-answer motion to dismiss the Amended Counterclaim (ECF No. 160-2) (the "Amended Counterclaim" or the "Counterclaim") of Defendants-Counterclaim Plaintiffs Lenex Services, Inc. ("Lenex"), Alexander Blantz ("A. Blantz"), Gala Trading Inc. ("Gala"), and Igal Blantz ("I. Blantz," and collectively, "Defendants")[1] asserting a purported cause of action under Section 349 of the New York General Business Law ("GBL § 349 or Section 349").

## PRELIMINARY STATEMENT

Defendants' Counterclaim represents an emerging and troubling species of nuisance suit, by which those who commit No-fault insurance fraud actually imagine that they – not the consuming public of New York which pays for their fraud through higher premiums – are the real victims of their own conduct, and that, by suing insurers for discovering and taking action against their own fraud, they are somehow vindicating the public interest.  For decades, DME and other No-fault providers have made novel and meritless arguments designed to deprive Plaintiffs and other insurers of their well-settled right to pursue RICO and other affirmative recovery actions in federal court. Each of those theories has been rejected. [2] Now, having seemingly exhausted the

---

[1] Defendants filed the Amended Counterclaim as part of their Amended Answer (*see* ECF No. 160) to Plaintiffs' First Amended Complaint (*see* ECF No. 157), and it replaces the first iteration of their Counterclaim (*see* ECF No. 56-2) (the "Original Counterclaim").   For the Court's information, a chart comparing the Original and Amended Counterclaims is annexed to the accompanying McKenney Declaration as Exhibit "A".

[2] Such attempts include: (a) the failed attempt to argue that insurers were precluded by N.Y. Ins. Law § 5106(a) from initiating affirmative civil recovery actions beyond the prescribed "thirty-day" period that the statute allowed for an insurer to either pay or deny a No-fault claim, *see Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 378 (E.D.N.Y. 2012); (b) the failed attempt to argue that insurers could not maintain affirmative fraud claims because those claims sounded in breach of contract, *see Allstate Ins. Co. v. Halima*, No. 06-CV-1316 (DLI) (SMG), 2009 WL 750199, at *7-8 (E.D.N.Y. Mar. 19, 2009); (c) the failed attempt to argue that the enactment of Ins. Law § 5109 (which requires the Superintendent, along with the Commissioners of Health and Education, to create a process for de-authorizing certain fraudulent health care providers) stripped insurers of standing to maintain affirmative recovery actions, *see State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 101 (E.D.N.Y. 2010); (d) the failed attempt to argue

litany of failed arguments for why recovery actions like this one are inappropriate, the latest tactic to avoid or delay the consequences of their own fraud is an attempt to turn the tables on insurers by asserting that Plaintiffs allowed themselves to be defrauded and voluntarily paid claims while harboring the secret – and economically irrational– motive to wait and pursue RICO damages years later. In any event, like past stewards of this ignoble legacy, Defendants have failed to plead plausible allegations supporting any claim – much less a GBL § 349 claim.  As discussed herein, Defendants' GBL § 349(a) claim fails for no fewer than six independent reasons.

First, the Counterclaim depends entirely on the so-called "Payment Avoidance Scheme," which is facially implausible. It defies credulity that Allstate would seek to avoid paying claims it believed were not properly reimbursable by voluntarily paying them, just so that it could, years later, engage in speculative, costly litigation to recover those same payments, or to use the suit or accumulated fraudulent claims as leverage for settlement. Allstate would not benefit, and would not rationally expect to benefit, from a business strategy whereby it allows itself to be defrauded for millions of dollars in the hope that it could use RICO suits to attempt to recoup that money and a trebled RICO judgment.  Further, Defendants only undermine their own Counterclaim by pointing to settlements, whose amounts seldom even cover Plaintiffs' compensatory damages.

Second, the law is settled that conclusory allegations of a deceptive scheme are not sufficient to state a claim under GBL § 349. Importantly, to defeat a motion to dismiss, a party advancing such a claim must allege facts showing a consumer-oriented harm or injury. Here,

---

that the No-fault claims process' arbitration provision (*see* Ins. Law § 5106(b)) denied insurers their independently recognized right and obligation to seek affirmative recoveries through the court system because such claims were subject to arbitration, *see Lyons*, 843 F. Supp. 2d at 380; and (e) the failed attempt to invoke the arcane and obscure theory of "primary jurisdiction" to claim that because Ins. Law § 5109 allows for investigation of insurance fraud by the New York State Departments of Health, Education and/or Financial Services, those agencies have "primary jurisdiction" over the core allegations of recovery complaints, to the exception of the courts. *See Liberty Mut. Fire Ins. Co. v. Shapson*, 13-CV-05046 (ENV) (PK), ECF No. 64 (E.D.N.Y. Mar. 29, 2016) (rejecting argument as "Hail Mary attempt to oust plaintiffs of their chosen forum and claimed remedy").

Defendants have alleged none; for example, they state in conclusory fashion, in a single paragraph without any supporting facts or statistics, that Allstate's alleged actions led to a purported "deterring" of bodily injury lawsuits and related settlements "by making the pool of medical providers who accept No Fault Insurance smaller, thus harming the public at large as legitimate auto accident victims in New York State have a more difficult time obtaining medical treatment, and are thus unable to make the 'serious injury' threshold to bring a bodily injury lawsuit against Allstate." Significantly, these mere suppositions are devoid of any factual underpinnings.  There are no alleged facts regarding how such lawsuits or settlements were deterred; no alleged facts or statistics relating to the number of lawsuits or settlements allegedly deterred; no identification of any specific lawsuit or settlement deterred; and no alleged facts or statistics relating to the "pool" of No-fault providers which was allegedly reduced. These deficiencies are fatal.

Third, GBL § 349(a) requires that a party allege that the complained of acts or practices were consumer-oriented; in other words, that they was directed at the public. Here, there are absolutely no allegations that Allstate engaged in any actions directed at consumers. To the contrary, all of the Counterclaim's allegations, as conclusory as they are, set forth actions involving claim processing and payment, all of which were directed to a single Defendant (Lenex) and not the public. Thus, while the Counterclaim purports to allege some amorphous but unsupported public harm as a derivative effect of actions aimed at Defendant Lenex, the law is absolutely clear that such derivative harm is insufficient to maintain a cause of action under GBL § 349(a). Defendants' claim fails on that ground alone. Moreover, to the extent that Defendants (incorrectly) allege that Allstate also failed to report Defendants' suspected fraud to the appropriate governmental agencies, that too is not a harm directed to the public, but rather, an administrative issue that has no bearing on or relationship to public harm.

Fourth, Defendants fail to plausibly allege that any such aforementioned consumer-oriented conduct constituted a materially misleading act or practice.  Now, rejecting their own prior theory that Allstate's familiar "You're in Good Hands With Allstate" slogan provided the required material deception of consumers,[3] Defendants aver that A. Blantz and I. Blantz have personal No-fault policies of their own, notwithstanding the fact that neither those policies nor any of their personal No-fault claims are at issue in this action, and with a glaring absence of any allegation whatsoever of conduct by Allstate directed at the Blantzes as consumers.  Accordingly, Defendants fail to satisfactorily allege the existence of a materially misleading practice.

Fifth, the Counterclaim is barred by the *Noerr-Pennington* doctrine, which holds that the act of commencing a suit generally cannot form the basis of a private cause of action because of the chilling effect it could have on a litigant's exercise of the First Amendment right to petition the government for a redress of grievances.  Insofar as Plaintiffs' filing of RICO and other affirmative recovery complaints is a *sine qua non* of Defendants' foundational "Payment Avoidance Scheme," the Counterclaim fails on this Constitutional basis as well.

Sixth, the Amended Counterclaim clearly alleges that only Lenex submitted claims to Allstate for processing, and that only Lenex was sent payments. Accordingly, even if there were any sort of viable Section 349 claim alleged, which there is not, only Lenex would have standing to bring it. As to A. Blantz, his status as an individual owner of Lenex does not give him standing to assert claims on the entity's behalf, and the other two Defendants have no *relevant* contactual relationship with Allstate whatsoever.  Nor does the allegation that A. Blantz and I. Blantz are themselves consumers of New York No-fault insurance – pled for the first time in the Amended

---

[3] In fact, the Original Counterclaim relied entirely on the "Good Hands" slogan to supply this element, even though such "false advertising" arguments have been roundly rejected by courts, including this Court, which recognized the slogan as "clear[] puffery."  Despite the apparent central importance of this allegation to the Original Counterclaim, it is simply excised from the Amended Counterclaim and replaced with wholly new yet equally irrelevant allegations.

Counterclaim –permit them to assert what are essentially claims concerning Allstate's alleged performance on contracts only with Lenex.

Accordingly, Plaintiffs respectfully submit that the frivolous Counterclaim should be dismissed with prejudice.

## STATEMENT OF RELEVANT FACTS

### 1.    The No-fault Law and Additional Verification of No-Fault Claims

In 1973, the New York State Legislature enacted the Comprehensive Automobile Insurance Reparations Act, N.Y. Ins. Law § 5101 et seq. (popularly known as the "No-fault Law") with the goals of ensuring prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts, and to provide substantial premium savings to New York motorists. *See Matter of Med. Soc'y of State of N.Y. v. Serio*, 100 N.Y.2d 854, 860 (2003). Pursuant to the No-fault Law and its implementing regulations, a claimant has the right to assign any claim for No-fault benefits to a healthcare provider, which may then submit requests for payment directly to insurance companies. *See* 11 NYCRR § 65–3.11(a). When healthcare providers, such as Lenex, submit an assigned claim to an insurer, such as Allstate, for reimbursement, the insurer generally must pay or deny the claim within thirty (30) days of receiving valid proof of claim. *See* 11 NYCRR § 65–3.8. Once a claim is submitted for reimbursement, an insurer may request "any additional verification required. . . to establish proof of claim." 11 NYCRR § 65–3.5(b). If the insurer denies and/or withholds payment for billed-for services, the provider may initiate an action against the insurer for breach of contract in state court or through arbitration. *See* N.Y. Ins. Law § 5106(b*)*.

Despite the intended goals of the No-fault Law, fraud and abuse in the system have been rampant in this state for many years. For example, the Court of Appeals in *Serio* noted that "No-fault fraud rose from 489 cases in 1992 to 9,191 in 2000, a rise of more than 1700%," and that "the

combined effect of no-fault insurance fraud has been an increase of over $100 per year in annual insurance premium costs for the average New York motorist." *Serio*, 100 N.Y.2d at 861. Ten years later, the Court of Appeals again noted that No-fault abuse continued unabated, and that in 2010, No-fault fraud "accounted for 53% of all fraud reports received by the Insurance Department." *Perl v. Meher*, 18 N.Y.3d 208, 214 (2011). Moreover, a recent report from the Financial Fraud and Consumer Protection Division of the Department of Financial Services indicated that of all 2015 fraud reports, 57% (21,827 reports) involved suspected No-fault fraud. *See* McKenney Decl. ¶ 5, Exh. "C" (Mar. 15, 2016 DFS Report), at p. 16. Such claims accounted for 89% of the total number of healthcare-related complaints received (12,891 of 14,452 claims). *Id* at p. 29. It is against that backdrop of fraud that the Complaint in this matter was filed, and it is in that context that the instant Motion comes before the Court.

### 2.    Allstate's Original Complaint

On July 19, 2017, Allstate filed the original complaint commencing this matter (as once amended, the "Complaint").[4] As set forth in the Complaint, the Allstate entities underwrite automobile insurance pursuant to the No-fault Law, whereby they are required to pay for reasonable health service expenses incurred as a result of injuries arising from the operation of motor vehicles covered by Allstate's No-fault policies. *See* ECF No. 157, at ¶ 30. Claimants may assign their benefits under the No-fault Law to doctors or other properly licensed healthcare providers, including retailers of DME and/or orthotic devices, enabling such providers to bill Allstate and other No-Fault insurers directly. *See id*. Of relevance here, the Complaint alleges that Defendants have abused the prompt-payment provisions of the No-Fault Law, *see* Sec. I, *supra*, by obtaining such assignments of benefits and billing Allstate for DME and/or orthotic

---

[4] As discussed in Section 4, *infra*, Plaintiffs subsequently amended the Complaint to correct a minor technical error. For the sake of consistency, only the operative Amended Complaint (ECF No. 157) is cited herein.

devices that were never actually provided to such Claimants, were not provided as billed or, even if they were provided, were cheap, inexpensive items of inferior quality compared with representations on bills submitted by the Retailers to Allstate, and/or were otherwise medically unnecessary or provided pursuant to fraudulent prescriptions written in conformity with a predetermined course of treatment, such that virtually all Claimants received substantially similar DME and/or orthotic devices. *See id.* at ¶ 31.

In addition to fraudulent DME billing, the Complaint is supported by well-pleaded allegations and evidence that, *inter alia*, several Retailers (including Lenex), by or through their respective Retail Owners (including A. Blantz), paid improper kickbacks to No-Fault Clinics in exchange for prescription forms for DME and/or orthotic devices that were fraudulently altered, duplicated, fabricated, and/or issued based on a predetermined course of treatment rather than medical necessity. *See id*. at ¶ 147. Annexed to the Complaint is evidence demonstrating that the No-fault Clinics supplied DME prescriptions to Lenex (and others) that contained photocopied, forged, or otherwise fabricated, duplicated, or altered signatures. *See, e.g.*, ECF No. 157-3, at pp. 275-303 (representative sample of prescriptions forms). The Complaint further alleges that Defendant Wholesaler Gala, which is operated, managed, and/or controlled by Defendant Wholesale Owner I. Blantz, provided Lenex and other Retailers with "basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided," enabling Retailers to "submit the fraudulent wholesale invoices to insurers, including [Allstate], in support of their fraudulent claims for reimbursement." ECF No. 157, at ¶ 112.

### 3.    Defendants' Original Counterclaim

On October 17, 2017, Defendants filed their Original Counterclaim, whose GBL § 349 count depended (like the Amended Counterclaim presently *sub judice*) on a "Payment Avoidance

Scheme" purportedly conducted by the Allstate entities and their "Claims Departments" and Special Investigations Units in their claims processing activities, and in their governmental reporting."  ECF No. 56-2 at ¶ 11.  This alleged "Scheme" involves Allstate's issuing payments on No-fault claims submitted by Lenex and other Retailers with the intention of filing a RICO action once those claims become "significant in the aggregate," for the chance to pursue, years later, trebled damages, a declaratory judgment to bar future claims, and attorneys' fees within the confines of RICO litigation.  *See* ECF No. 56-2, at ¶¶ 14-31.  The Original Counterclaim relied heavily upon Allstate's "You're in Good Hands" slogan, suggesting that this statement somehow makes some relevant objective representation or promise to consumers, especially Lenex's patients, and alleged that they were deceived by the supposed "Scheme."  *See* ECF No. 56-2, at ¶¶ 52-54.  The remainder of Defendants' first attempt at pleading the GBL § 349 claim consisted of nothing more than a rote recitation of its elements, alleging without meaningful explanation that Allstate has engaged in unfair and deceptive business acts or practices, and that Defendants have somehow been "harmed as a result."  *See id*. at ¶¶ 55-58.

Shortly after the Original Counterclaim was filed, on November 2, 2017, Allstate applied for a pre-motion conference in view of an anticipated motion to dismiss. *See* ECF No. 62.  At the pre-motion conference held on December 1, 2017, the Court expressed skepticism about Defendants' claims generally, prompting them to withdraw four of the five causes of action asserted therein, leaving only the GBL § 349 claim. *See, e.g.,* McKenney Decl. ¶ 8, Exh. "B" (Dec. 1, 2017 H'g Tr.), at 13:5-15:14.   On April 11, 2018, Plaintiffs filed their motion (the "Original Motion"). *See* ECF No. 145 (Mot.), ECF No.  146 (Opp'n); ECF No. 147 (Reply).

4.      **Plaintiffs' Amended Complaint and Defendants' Amended Counterclaim**

On May 9, 2018, while the Original Motion was under consideration by the Court, Plaintiffs sought leave to amend their Complaint to correct a technical error.  *See* ECF No. 148. The Court granted Plaintiffs leave, and the First Amended Complaint was filed on May 9, 2018. *See* ECF No. 157.  Defendants responded on May 23, 2018 by filing (without prior leave of the Court), the Amended Counterclaim. *See* ECF No. 160. By letter motion dated June 11, 2018, Plaintiffs requested a pre-motion conference on a motion to strike the Amended Counterclaim or, in the alternative, for permission to dismiss the Amended Counterclaim.  *See* ECF No. 171.  The Court subsequently decided to permit the Amended Counterclaim to stand, mooting the Original Motion and granted permission to move to dismiss.  *See* Order of Aug. 20, 2018.

Defendants' revisions and additions to the Counterclaim vary in significance, and only some warrant discussion herein.  In particular:

1. Defendants now allege that A. Blantz and I. Blantz have individual No-fault auto insurance policies in New York, and they and other consumers have been deprived of the "full benefit of their insurance premiums," with harms arising from the "Payment Avoidance Scheme."  ECF No. 160-2, at ¶ 57.[5]

2. The Amended Counterclaim omits Defendants' original allegations that Allstate's "You're In Good Hands" slogan supports a deceptive act or practice within the meaning of GBL § 349.  *Compare* ECF No. 56-2, at ¶¶ 52-54, *with* ECF No. 160-2, at ¶¶ 52-53.

3. Defendants now allege that they "reasonably relied" upon purportedly favorable findings resulting from GEICO's investigation, conducted in connection with *GEICO v. Lenex Services Inc.*, of the inventory of both Lenex and Gala, during which the investigator never advised Defendants of any issues with their DME.   *Id*. at ¶ 33.[6] The Amended

---

[5] Such "harms" allegedly include "(i) the potential of not being able to obtain through no-fault, medical treatment, services, goods, or prescriptions following an auto accident in New York; (ii) receiving poor or improper medical treatment, services, goods, or prescriptions following an auto accident in New York; [and] (iii) not being able to be made whole for bodily injuries as a result of an auto accident in New York."  *Id*.

[6] According to the Counterclaim, GEICO's investigator: "made no indication whatsoever, that any of the DME, type, makes or models were improper in any manner from either Lenex or Gala"; "did not inform Lenex[] that it should cease from ordering DME from Gala[] for any reason"; and "did not inform [Lenex] to stop providing such DME and/or orthotics to patients."  *Id*.

Counterclaim also adds that GEICO had investigated the same types of products at issue in this action, and that, upon "information and belief," Allstate has "engaged in the same and/or similar conduct." *Id*.

4. Defendants now allege that "DME Market Surveys" provide the "fair market value of DME" in New York that may be used in verifying No-fault claims, but that Allstate ignored such surveys "in order to be able to later claim ignorance, and falsely claim reliance on DME No-Fault billings and/or any wholesale invoices." *Id*. at ¶ 23.[7]

5. Defendants now allege that "after the filing of the Original RICO Complaint, Allstate continues to pay [Lenex] for the same bills it claims as fraudulent for the same DME and/or orthotic devices it claims as fraudulent," and that "Allstate ratifies [Lenex's] bills by continuing to pay them." *Id*. at ¶ 24.[8] However, the Counterclaim contains no allegations of any law, order, or other authority permitting Allstate to cease processing Lenex's claims in accordance with the No-fault law.

Notwithstanding these significant revisions, Defendants'' purported GBL § 349 claim continues to depend ultimately upon the same "Payment Avoidance Scheme." *See* ECF No. 160, at ¶¶ 14-31; *compare* ECF No. 56-2, at ¶¶ 14-31. On the basis of harms allegedly sustained as a result of the "Scheme," Defendants now seek damages "of at least approximately $179,000.00, and attorneys fees (sic) and costs expended to date in defending the false RICO action of at least approximately $25,000.00, plus loss of business, loss of profits, damage to their reputations, loss of good will, loss of income the exact amounts are still being determined, plus loss of the benefits of auto insurance premiums, or $50.00 whichever is greater pursuant to GBL § 349(h), plus treble damages in the amount of three times the actual damages, plus reasonable attorney's fees pursuant to GBL § 349(a)-(h)." ECF No. 160-2, at ¶ 60.[9]

---

[7] The Amended Counterclaim later alleges that "Allstate was aware at least through its cooperation with GEICO and others, as well as public information and public court documents[,] of the DME Market Surveys." *Id*. at ¶ 34.

[8] This "ratification" theory, pled as an affirmative defense in both versions of Defendants' Answer (*see* ECF Nos. 56 & 160) was recently rejected as an affirmative defense by Judge Weinstein in a similar case. *See Allstate Ins. Co. v. Art of Healing Medicine, P.C.*, No. 15-CV-3639 (E.D.N.Y. July 18, 2017), ECF No. 420 (Order).

[9] The Original Counterclaim had "demand[ed] judgment in the amount of at least approximately $285,000.00 plus treble damages in the amount of three times the actual damages, plus reasonable attorney's fees," ostensibly based on the face value of claims submitted by Lenex to Allstate at issue in the Complaint. ECF No. 56-2, at ¶ 59. It is unclear how Defendants arrived at the new demand, which differs significantly from that of the first Counterclaim, and which

## STANDARD OF REVIEW

A motion to dismiss a counterclaim "is evaluated under the same standard as a motion to dismiss a complaint." *Capitelli v. Riverhouse Grill, Inc.*, No. 15-CV-2638 (ADS) (ARL), 2015 WL 9413102, at *1–2 (E.D.N.Y. Dec. 21, 2015)(citation omitted)). In deciding such a motion, courts must determine whether the complaint itself is legally sufficient. *FragranceNet.com. Inc. v. Fragrancex.com. Inc.,* 679 F. Supp. 2d 312, 324 (E.D.N.Y. 2010) (internal quotations and citations omitted). In that regard, a complaint or counterclaim is properly dismissed pursuant to Rule 12(b)(6) if it fails to allege sufficient facts "to state a claim of relief that is plausible on its face." *Foster v. N.Y. City Prob. Dep't*, No. 11-CV-4732 KAM JMA, 2013 WL 1342259, at *2 (E.D.N.Y. Mar. 7, 2013), *report and recommendation adopted,* 2013 WL 1305775 (E.D.N.Y. Mar. 30, 2013); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (party seeking relief must plead "enough facts to state a claim to relief that is plausible on its face").

Although a court must accept as true all the factual allegations in the complaint, that requirement is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Id.* Determining the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). Thus, plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative

---

even appears to differ from the "harms" described in the Amended Counterclaim itself. *Compare* ECF No. 160-2, at ¶ 58 (pleading that $179,000 damages estimate *includes* "loss of business, loss of profits, damage to their reputations, loss of good will, [and] loss of income") *with id*. at ¶¶ 59-60 (pleading no specific injuries underlying $179,000 apart from recitation of statutory language, "plus" aforementioned damages including loss of business)

explanations so obvious that they render [the] plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

Applying the above standards, and for the reasons stated herein, Plaintiffs respectfully submit that the Counterclaim should be dismissed with prejudice.

## ARGUMENT

## I.

## THE COUNTERCLAIM MUST BE DISMISSED BECAUSE IT DEPENDS ON THE FACIALLY IMPLAUSIBLE "PAYMENT AVOIDANCE SCHEME"

Before even addressing Defendants' failure to adequately plead any of the required elements for the lone remaining Counterclaim under GBL § 349, it must be noted that Defendants fail to state any claim for relief because the factual premise upon which the Counterclaim is founded, the alleged "Payment Avoidance Scheme," is patently implausible, defying business, legal, and common sense. *See Iqbal*, 556 U.S. at 678 (complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Harris*, 572 F.3d at 72 (context-specific plausibility analysis requires that court rely on "judicial experience and common sense").

This alleged "Scheme," the very quicksand upon which the Counterclaim stands, could hardly be less plausible. Defendants allege that Allstate has planned and executed a nefarious (and economically perverse) strategy to issue No-fault payments which it hopes to recoup later, all for the speculative chance to win trebled damages and attorneys' fees, in cases that usually settle before any such judgment or award. In other words, according to Defendants, Allstate has embraced the very risky prospect of protracted, uncertain, and costly RICO actions as a sort of business plan (or business malpractice), knowingly paying claims it believes to be fraudulent or

otherwise subject to denial.  In that regard, Defendants have contorted facts, law, and reason itself to argue that it is the very fact that Allstate paid claims as billed which was the genesis of the "Scheme."  Indeed, the "Payment Avoidance Scheme" is apparently so insidious that it requires Allstate to pay the Retailers' claims for the sole purpose of attempting to seek that very money back in the future through a costly and uncertain litigation.[10]  Stated simply, the "Scheme" makes no sense.  The very nature of Allstate's RICO action negates the theory upon which the remaining Counterclaim is premised; if Defendants are ultimately found to have committed fraud, Allstate certainly cannot be said to have engaged in deceptive acts or practices by commencing suit.  If the fraud is not proven, Defendants have already received payment for what Allstate has alleged are fraudulent claims. At bottom, there is no plausible argument that Allstate has engaged in a scheme that involves paying hundreds of thousands of dollars in No-fault insurance claims so that, years later, it can attempt to recoup that money through unpredictable RICO actions.

Defendants press this fantasy by alleging that Allstate paid the claims initially because it did not want to "bear the financial burden of paying the Providers' legitimate claims" and "simply did not wish to expend the resources to contest the claims." See ECF No. 160-2, at ¶¶ 15, 20.  Yet again, however, the Counterclaim's entire premise collapses under its own weight.  If Allstate's purpose was to avoid "expend[ing] resources" and the "financial burden" of paying claims, it would not have voluntarily paid the claims in the first place.  If Allstate had denied the claims, the burden of contesting the claims would then have fallen to Defendants, to either institute a state court action or arbitration to dispute the denial.  See Ins. L. § 5106(b).  Moreover, it is entirely illogical to argue that speculative, expensive and time-consuming RICO litigation is an effective

---

[10] This fact was not lost on the Court. See McKenney Decl. ¶ 8, Exh. "A" (Dec. 1, 2017 H'g Tr.), at 10:13-14.

way to avoid expending resources and to reduce Allstate's financial burden. Thus, if "payment avoidance" was ever the plan, the Counterclaim alleges only that Allstate did a lousy job of it.

Likewise, the goals of this alleged "Payment Avoidance Scheme" are incoherent.  On one hand, Defendants argue that the "Scheme" is designed to give Allstate a chance at trebled RICO damages and attorney's fees, but on the other, they argue that Allstate has used such RICO actions as leverage in negotiating settlements.  Each of these purported motives negates the other; Allstate obviously cannot win trebled damages or attorney's fees on claims it settles, and the consideration ultimately received for those settlements (if any) often does not equal Allstate's compensatory damages, let alone RICO damages. Indeed, such is the nature of "settlements."

In this second attempt at pleading the Counterclaim, Defendants pile on with additional conclusory allegations, *see* Sec. 4, *supra*, ostensibly intended to show that Allstate was not diligent or forthright in claims processing – though none of these afterthoughts addresses the headline problem of the "Scheme": its abject irrationality.  First, upon nothing more than self-serving "information and belief," Defendants assert that Allstate had learned of DME Market Surveys from GEICO or otherwise, that Allstate could have used them to verify claims but chose not to do so, "in order to be able to later claim ignorance, and falsely claim reliance on DME No-Fault billings and/or any wholesale invoices."   ECF No. 160-2, at ¶¶ 23, 34.   Notwithstanding that the Counterclaim fails to explain how the use of these surveys would have made any relevant difference in the processing of any claims, Allstate is entitled and indeed required to rely on the information presented on the face of submitted claims documents.  *See generally* Sec. 1, *supra*.[11]

---

[11] Likewise, and contrary to another red herring added to the Counterclaim, *see* ECF No. 160-2, at ¶ 24, the No-fault law does not permit Allstate to halt the processing and paying facially valid claims simply because it has commenced an affirmative suit against the provider.  Indeed, a declaratory judgment to that effect is one of the components of the relief sought by Plaintiffs in the Complaint.  *See* ECF No. 157, at ¶¶ 1120-1127.

Defendants also newly allege that Allstate's references to GEICO's separate action against Lenex and a related physician's affidavit – references made not in either version of the Complaint, but in the now-mooted Original Motion[12] – somehow mean that Allstate is bound by, or that Defendants may (for purposes of *this* action) justifiably rely upon, the purported "results" of what Defendants claim was a favorable GEICO investigation of their inventory.   On that dubious footing, Defendants leap to conclusory allegations that (a) public harm has resulted from GEICO's failure to report any indicia of fraud in Gala's and Lenex's inventory; and (b) Allstate must have engaged in similar conduct.   *See* ECF No. 160-2, at ¶ 33.   Such *non-sequiturs* are nothing more than speculation compounded by conjecture, and GEICO's investigation of wholly different claims in a different action cannot seriously support a *consumer deception* claim against Allstate here.

Indeed, the "Scheme" plead by Defendants is precisely the kind of "counterfactual speculation" that courts have routinely found insufficient to satisfy the basic plausibility pleading requirement.   *Precision Imaging of New York, P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 477–78 (S.D.N.Y. 2017) (rejecting as "far-fetched" GBL § 349 claim based on theory that insurers' "deceptive" conduct while processing claims *might* have deterred policyholders from receiving treatment for which provider *might* have received payment from another insurer).   Putting aside the absence of any rational financial motive on Allstate's part for this supposed "Scheme" and the fact that this action would not exist at all but for Defendants' own fraudulent scheme to rip off insurance companies by submitting claims for grossly overpriced and/or medically unnecessary medical equipment, the Counterclaim rests on the theory that that, were it not for this action, Lenex's No-fault claims *might* be properly payable.   This is precisely the type of rank speculation

---

[12] *See* ECF No. 145, at p. 9, n. 3 (citing *GEICO v. Lenex*, 16-CV-6030 (LDH) (CLP), ECF No. 1-8 (E.D.N.Y. Oct. 31, 2016) (Affidavit of Shaikh Ahmed, M.D.).  Defendants devote considerable – and entirely new – verbiage in the Amended Counterclaim to the cause of undermining this affidavit.  *See* ECF No. 160-2, at ¶ 32.

that the gatekeeping plausibility requirement is designed to jettison from the judicial system. Accordingly, because neither the motives nor mechanics of the "Scheme" make any legal or common sense, and because the lone GBL 349 claim can only stand if the "Scheme" is found to be plausible, the Counterclaim must fail as a matter of law.

**II.**

**THE COUNTERCLAIM MUST BE DISMISSED BECAUSE
IT FAILS TO STATE A CLAIM UNDER GBL § 349**

Section 349(a) of New York's General Business Law declares as unlawful "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Gotlin ex rel. Cty. of Richmond v. Lederman,* 483 F. App'x 583, 587 (2d Cir. May 1, 2012) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 24 (1995)); GBL § 349. "Deceptive acts or practices are those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* Under New York law, a claim for violation of Section 349 requires a plaintiff to allege "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *U1IT4less, Inc. v. FedEx Corp.,* 896 F. Supp.2d 275, 294–95 (S.D.N.Y. 2012); *see Stutman v. Chem. Bank,* 95 N.Y.2d 24, 29 (2000). However, courts in this Circuit have held that a plaintiff cannot state a § 349 claim based solely upon the blanket or unsupported assertion that the defendant's conduct was "consumer-oriented" or "directed at the general public." *See, e.g., MaGee v. Paul Revere Life Ins. Co.,* 954 F. Supp. 582, 586-87 (E.D.N.Y. 1997); *Daniels v. Provident Life & Cas. Ins. Co.,* No. 00-CV-668E, 2001 WL 877329, at *8 (W.D.N.Y. July 25, 2001); *Barroso v. Polymer Research Corp. of Am.,* 80 F. Supp. 2d 39, 43 (E.D.N.Y. 1999); *Allahabi v. New York Life Ins. Co.,* No. 98-CIV-4334, 1999 WL 126442, at *2-*3 (S.D.N.Y. Mar. 10, 1999). Indeed, stating a GBL § 349 claim requires the plaintiff to "allege, with some

specificity, the allegedly deceptive acts or practices that form the basis for the claim," and "conclusory allegations, even of the existence of a claim settlement policy designed to deceive the public, are not sufficient to state a claim under [GBL § 349] in the absence of factual allegations in support thereof." To defeat a motion to dismiss, a plaintiff advancing a § 349 claim "must allege *facts* showing injury or potential injury to the public." *Greenspan v. Allstate Ins. Co.,* 937 F. Supp. 288, 294 (S.D.N.Y. 1996) (emphasis added).

### A. Defendants Fail to Sufficiently Allege Relevant Consumer-Oriented Conduct

At the outset, the GBL § 349 claim must fail because neither Lenex nor any of the other Defendants is a consumer in any way that is relevant to the Complaint or the Counterclaim, and thus none of them could be harmed by consumer-oriented conduct. Nor does the Counterclaim sufficiently allege any nexus for any relevant conduct by Plaintiffs to the consuming public in New York. The so-called "Payment Avoidance Scheme" begins – rather counterintuitively – with Allstate paying assignee-providers on No-fault claims, accumulating such losses just so it can later seek recovery through RICO actions, for which the consumers (patients and insureds) would not be liable in any event. *See Med. Soc. of State of New York v. Oxford Health Plans, Inc.*, 15 A.D.3d 206, 206–07 (1st Dep't 2005) (rejecting GBL § 349 claim asserted by doctors' organization because alleged "acts and practices are directed at physicians, not consumers").

Stated another way, the Counterclaim envisions, at most, that any harm caused by the "Scheme" to consumers or the public is merely derivative of the harm allegedly done to Lenex, the other Defendants, or similarly situated providers, and <u>not</u> the other way around. *See Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 34 (E.D.N.Y. 2006), *aff'd*, 213 F. App'x 16 (2d Cir. 2007) (rejecting GBL § 349 claim where pleading "focuses almost entirely on the losses suffered by Plaintiff and his business, rather than to consumers or Plaintiff's patients," and observing that

"[w]here the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349").  Here, Defendants' GBL § 349 claim focuses solely on the alleged "losses" suffered by the Defendants' DME retail practice, and then speculates that the loss of a fraudulent medical provider will somehow harm the consuming public.  The "Payment Avoidance Scheme" is not directed at consumers, the claimants that received the medical treatment.  As alleged, it is directed at the medical providers that are being sued for fraud.  Throughout the Counterclaim, Defendants repeatedly alleged that Allstate's claims processing and RICO litigations are designed to avoid paying the providers' claims, causing the medical practices losses.  Neither the Counterclaim nor the relevant conduct or harm alleged therein can reasonably be called "consumer-oriented" within the meaning of GBL § 349.  *See Precision Imaging of New York, P.C.*, 263 F. Supp. 3d at 476 (S.D.N.Y. 2017) (dismissing GBL § 349 because insurer's denial of claims submitted by physician's group is directed not at underlying consumers of medical services, but at physicians themselves).

In that regard, Defendants have alleged no facts that describe any injury they have suffered that is consumer-oriented.  For example, Defendants state in a single, conclusory paragraph, without any supporting facts or statistics, that Allstate's alleged actions led to a purported "deterring" of bodily injury lawsuits and related settlements "by making the pool of medical providers who accept No Fault Insurance smaller, thus harming the public at large as legitimate auto accident victims in New York State have a more difficult time obtaining medical treatment, and are thus unable to make the 'serious injury' threshold to bring a bodily injury lawsuit against Allstate." Clearly, this allegation in nothing more than a mere supposition, devoid of any factual underpinnings.  Nowhere in the pleading are there any allegations regarding (1) how such lawsuits or settlements were deterred; (2) statistics relating to the number of lawsuits or settlements

allegedly deterred; (3) the identification of any specific lawsuit or settlement deterred; or (4) statistics relating to the "pool" of No-fault providers which was allegedly reduced. Defendants conclusory allegation is fatal to the Counterclaim. *See Schwartzco Enter. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 359–61 (E.D.N.Y. 2014) ("[F]or a claim to classify as 'consumer-oriented,' a plaintiff must plead and prove injury to the public generally, rather than to himself alone.") (citation omitted); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 483–84 (S.D.N.Y. 2017) ("[W]here a plaintiff makes only conclusory allegations of impact on consumers at large, a § 349 claim must be dismissed.") (citation omitted).

Indeed, it cannot be seriously argued that Defendants' counterclaim is anything more than a cause of action that Allstate has not paid and is required to pay Lenex's unpaid No-fault claims – which is a breach of contract claim. How Defendants arrived at the amount of primary compensatory damages sought by Defendants, $179,000, and any explanation for the massive reduction in that figure from the Original Counterclaim, are wholly unexplained in the Counterclaim, and the only conceivable basis for such damages would be Lenex's unpaid No-fault claims themselves. In that regard, Defendants' GBL § 349 claim is simply a private contractual dispute between Lenex and Allstate to recover No-fault benefits to which Lenex believes it is entitled. Time and again, Courts within this Circuit have rejected such claims finding that such claims are merely private disputes not actionable under GBL § 349. *See Precision Imaging of New York, P.C.*, 263 F. Supp. 3d at 477–78 (dispute between a medical provider and an insurer over the payment and/or non-payment of claims is a "quintessential[] private dispute," not a GBL § 349 claim); *Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 439 (S.D.N.Y. 2004) (rejecting GBL § 349 claim as "nothing more than a dispute between private parties," and observing that "[s]everal courts have considered whether disputes between policy holders and

19

insurance companies concerning the scope of coverage can amount to conduct falling within Section 349," and that "those courts have held that such disputes are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349."); *see also Grand Gen. Store, Inc. v. Royal Indem. Co.*, No. 93 CIV 3741 (CSH), 1994 WL 163973, at *4 (S.D.N.Y. Apr. 22, 1994) ("Except for a conclusory statement at the end of a list of allegations regarding [defendant insurer's] conduct in handling the Plaintiff's claim, Plaintiff has failed to include any evidence of the existence of a claim settlement policy designed to deceive the public at large."). The same infirmities are present here.

### B.       Defendants Fail to Sufficiently Allege Materially Misleading Acts or Practices

In addition, the Counterclaim fails to allege any materially misleading acts or practices by Allstate that have injured consumers, failing the second prong of the GBL § 349 analysis.  As threshold matter, all of the alleged deceptive conduct alleged in the Counterclaim with respect to claim submissions was purportedly directed at Lenex, not the patients or consumers. *Ad nauseam*, the Counterclaim recites alleged deceptive practices in processing and verifying Lenex's claims submitted to Allstate, the failure to report Lenex's fraudulent conduct to the proper state regulatory agency; the filing of a RICO action against Lenex that seeks to recover claims that Allstate has already paid to Lenex.  Nothing therein alleges materially deceptive acts directed at the consumer public at large, requiring dismissal of the Counterclaim. *See, e.g., Lava Trading Inc.*, 326 F. Supp. 2d at 438–39 (noting that a Section 349 pleading must allege with some specificity the deceptive acts or practices that form the basis for the claim, and "conclusory allegations are not sufficient to state a claim in the absence of factual allegations in support).

The Original Counterclaim had at least attempted to imagine some consumer-oriented act or practice that was materially deceptive, with its conclusory allegation that Allstate's "You're in

Good Hands" slogan amounts to false advertising.  In the Amended Counterclaim, Defendants have plainly realized what courts across the United States have long held: that Allstate's motto is a classic example of puffery, which is not actionable as a deceptive practice or otherwise.[13]  Now, it appears that the only alleged deceptive act or practice is the "Payment Avoidance Scheme" itself, which is not only fatally implausible and hopelessly illogical, *see* Sec. I, *supra*, but which also is supported by nothing more than Defendants' conclusory allegations and flailing speculation.

Furthermore, Defendants cannot point to a single case (because none exist) that extends the GBL statute in the manner they seek to have this Court extend it.  Defendants allege that Lenex provided DME to patients – individuals who were purportedly hurt in an automobile accident, and that Lenex was paid for those services. Even if one were to accept as true Defendants' allegation that such payments were made with the belief that the claims were fraudulent, Defendants cannot and do not allege how those payments could possibly deceive a reasonable consumer. The reason is clear: any purported representations or omissions made to Lenex by Allstate when processing its bills, in the context of claims processing on assigned claims, would never reach the consumer. It is part and parcel of a private contractual relationship.  In that regard, it is not enough just to allege broad consumer impact; to avoid the "tidal wave" of litigation to which the statute can be misapplied, the GBL requires that the representations and/or omissions forming the basis of the alleged deceptive practice must be <u>misleading to a reasonable consumer acting reasonably under the circumstances</u>. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, (1995). Thus Defendants have failed to plead any materially deceptive act or practice, and the Counterclaim also fails on this basis.

---

[13] *See, e.g., Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310 (E.D.N.Y. 2001) (recognizing Allstate's slogan "You're in good hands" is mere puffery that is not actionable).

### III.

### THE COUNTERCLAIM MUST BE DISMISSED BECAUSE
### IT VIOLATES THE *NOERR-PENNINGTON* DOCTRINE

Alternatively, even if the purported "Scheme" were somehow plausible, and even if Defendants had pleaded (or could plead) a cognizable cause of action under GBL § 349, the Counterclaim seeks to hold Allstate liable for its alleged litigation and pre-litigation conduct for which Allstate is immune from suit under the *Noerr-Pennington* doctrine. In that regard, among the most fundamental of constitutional principles is the right to "petition the Government for a redress of grievances." U.S. Const. amend. I. That time-honored precept gave rise to what has become known as the *Noerr-Pennington* doctrine, which first arose in the antitrust context, but today "encompasses all petitioning activity, including 'concerted actions before courts and administrative agencies' and 'concerted efforts incident to litigation, such as pre-litigation threat letters and settlement offers.'" *Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017) (*quoting Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 99-100 (2d Cir. 2000)). Indeed, courts in the Second Circuit have applied *Noerr-Pennington* doctrine to grant immunity for claims which, like the Counterclaim here, assert liability for litigation or pre-litigation activities under GBL § 349. *See Gov't Employees Ins. Co. v. Hazel*, No. 11-CV-00410 (CBA) (VMS), 2014 WL 4628655, at *20 (E.D.N.Y. Aug. 11, 2014), *report and recommendation adopted*, 2014 WL 4628661 (E.D.N.Y. Sept. 15, 2014) (rejecting, in part based on *Noerr-Pennington*, GBL § 349 counterclaim of defendant alleging plaintiff No-fault insurer's commencement and prosecution of civil RICO actions amounted to deceptive acts).

The Counterclaim raises the prototypical scenario for which the modern *Noerr-Pennington* doctrine is intended. Defendants have been emphatic, both in pleadings and representations to the Court, that the relevant conduct allegedly supporting the GBL § 349 claim (and the Counterclaim

22

generally) consists of Allstate's litigation or pre-litigation activities, including the filing of the Complaint itself.  *See, e.g.,* ECF No. 157-2, at ¶ 14 ("Allstate's Original and Amended RICO case is part of its ongoing scheme . . . ."); *id*. at ¶ 15 ("[Allstate has] taken to using . . . RICO (and its lure of treble damages) to force the Providers to return payments . . . ."); *id*. at ¶ 19 (Defendants "could not have discovered the scheme until at least when the Original RICO Complaint was filed."); *id*. at ¶ 20 (Allstate "set up a RICO trap" for providers); *id*. at ¶ 22 ("Allstate elects instead to not properly utilize verification and investigation processes in order to later claim RICO."); *id*. at ¶ 27 (alleging Allstate uses RICO as means to obtain favorable settlements); Exh. "B" (Dec. 1, 2017 H'g Tr.), at 8:11-23 (arguing that Allstate's commencement of RICO actions is "part of the overlying (sic) scheme"); *id*. at 10:11-12 ("We believe the RICO case itself is part and the culmination of their fraudulent payment avoidance scheme.") (emphasis added); *id*. at 62:1-2 ("[P]art of the GBL § 349 [claim] is that the RICO case . . . is itself fraudulent.").

Accordingly, the Counterclaim seeks to hold Allstate liable for petitioning the courts – a clear violation of the *Noerr-Pennington* doctrine – and must be dismissed.[14]  *See Hazel*, 2014 WL 4628655, at *16 (applying doctrine to retaliatory action by No-fault defendant based on insurer's alleged scheme to use threat of affirmative recovery litigation to extract settlements).

## IV.

### A. BLANTZ, GALA, AND I. BLANTZ LACK STANDING TO ASSERT CAUSES OF ACTION WHICH BELONG TO RETAILER LENEX

Although the Counterclaim is purportedly asserted by all four Defendants, it is only Lenex that has received an assignment of benefits from claimants covered by Allstate's policies, and it is

---

[14] To the extent Defendants attempt to argue the Section 349 claim survives because Allstate's RICO action is a "sham litigation," such an argument would be totally without merit. While there exists a "limited exception" to *Noerr-Pennington* immunity; the so-called "sham exception applies only where the [original] litigation is 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.'" *Singh v. NYCTL 2009-A Tr.*, No. 14 CIV. 2558, 2016 WL 3962009, at *4–5 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F. App'x 76 (2d Cir. 2017). No such argument could be credibly made here.

only Lenex that has submitted any claims to, or received any payments from, Allstate.  First, as to A. Blantz, his status as owner of Lenex does not give him standing to assert claims on the entity's behalf.  *See Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987), *cert. denied,* 488 U.S. 825 (1988) ("A shareholder – even the sole shareholder – does not have standing to assert claims alleging wrongs to the corporation.").  This is true even though the shareholder/plaintiff "may have felt personally aggrieved by defendants' [conduct vis-à-vis] the Corporation, and even though he may have faced the risk of financial loss as a result[.]"  *Id.; accord Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985) ("For a wrong against a corporation a shareholder has no individual cause of action").  Moreover, insofar as Wholesale Defendants I. Blantz's and Gala's relationship with Lenex is even more attenuated to the extent that they merely supplied the DME that Lenex distributed to the patients and billed Allstate, they have no assigned right to seek or receive payments from Allstate and therefore also lack standing to bring suit regarding No-fault claims processed through Lenex.  *See T&G Med. Supp., Inc. v. Nat'l Grange Mut. Ins. Co*., 800 N.Y.S.2d 835, 837 (Civ. Ct. N.Y. Cnty. 2005).

To the extent the Amended Counterclaim attempts to sidestep the fatal threshold issue with allegations that A. Blantz and I. Blantz are New York consumers of automobile insurance, and that the "Payment Avoidance Scheme" has deprived them of the benefit of their personal No-fault policies, *see, e.g.,* ECF No. 160-2, at ¶¶ 1, 2, 14, such an attempt fails.  Clearly, neither the Complaint nor the Counterclaim involve any No-fault policy or claim concerning either A. Blantz or I. Blantz in an individual capacity.  Moreover, the fact that the Blantzes (along with virtually every other driver licensed in this State) are No-fault insureds cannot confer standing upon them to assert what are essentially contract-based claims that properly belong to Lenex.  Were it otherwise, any No-fault insured would have standing to sue on behalf of any actor in the No-fault

system, so long as the insured were able to plead that the relevant conduct would have not only statewide effect, but also some ascertainable effect on the insured. Accordingly, the Counterclaim should be dismissed as to A. Blantz, Gala, and I. Blantz on this independent basis.

**V.**

**LEAVE TO FURTHER AMEND THE COUNTERCLAIM WOULD BE FUTILE**

Like the Original Counterclaim before it, Defendants' allegations in the Amended Counterclaim once again fail to approach pleading a viable claim for relief.  Although Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court should freely grant a party leave to amend "when justice so requires," leave to amend is not required where, as here, amendment would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given."); *Ruffalo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (same).  Plaintiffs submit that such futility exists because no conceivable amendment to the Counterclaim could (1) render the alleged "Scheme" plausible, (2) sufficiently plead the required elements of a consumer-oriented cause of action under GBL § 349, (3) save the Counterclaim's reliance on alleged litigation and pre-litigation activities from dismissal under the *Noerr-Pennington* doctrine, or (4) confer standing upon A. Blantz, Gala, or I. Blantz.  Indeed, there can be no greater testament to the inevitability of the Counterclaim's failure than the fact that even after the fully-briefed Original Motion and other briefing and argument on the Original Counterclaim – and even with the opportunity to make revisions to the Amended Counterclaim out of all proportion to Plaintiffs' technical correction in the Amended Complaint – Defendants could not cure *any* of these defects.  Given that this is the second failure to plead a viable claim, further leave to amend would unfairly prejudice Allstate, which has already expended significant resources in dealing with Defendants' frivolous pleadings.

## <u>CONCLUSION</u>

For all the foregoing reasons, Allstate respectfully submits that the Motion should be granted, and that the Court should enter an order dismissing the Counterclaim with prejudice and without leave to amend.

Dated:  September 7, 2018
         New York, New York

                                        Respectfully submitted,

                                        MORRISON MAHONEY LLP


                                        By:  _____/s/ James McKenney_____
                                             Robert A. Stern, Esq.
                                             Daniel S. Marvin, Esq.
                                             James A. McKenney, Esq.
                                             120 Broadway, Suite 1010
                                             New York, New York 10271
                                             (212) 825-1212


                                        CADWALADER, WICKERSHAM & TAFT, LLP



                                        By:  _____/s/ William Natbony_____
                                             William J. Natbony, Esq.
                                             One World Financial Center
                                             New York, New York 10281
                                             (212) 504-6531

                                        *Attorneys for Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, and Allstate Fire & Casualty Insurance Company*

26