UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ALLSTATE INSURANCE COMPANY *et al.*,

        Plaintiffs,

   -against-

ARTUR AVETISYAN *et al.*,

        Defendants.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

17-CV-04275 (LDH) (RML)

LaSHANN DeARCY HALL, United States District Judge:

    Plaintiffs Allstate Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate New Jersey Insurance Company; Allstate New Jersey Property and Casualty Insurance Company; Allstate Property & Casualty Insurance Company; and Northbrook Indemnity Company bring claims against Defendants Advanced Orthopedic Solutions Inc.; Advanced Pharmacy, Inc.; Almatcare Medical Supply Inc.; AVA Custom Supply Inc.; Daily Medical Equipment Distribution Center, Inc.; Lenex Services, Inc.; Top Q Inc (collectively, the "Retailers"); Artur Avetisyan; Alexander Blantz; Levy Davidov; Murdakhay Khaimov; Zlatislav Komisarchik; Alexandra Matlyuk; Gregory Miller; Igal Blantz; Gala Trading Inc.; IG&NAT Services, Inc.; John Does 1–20; and ABC Corporations 1–20, pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), New York common law, and the Federal Declaratory Judgment Act. (*See* Am. Compl., ECF No. 157.)[1]

    On June 4, 2018, Plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction to enjoin the Retailers from (1) proceeding with no-fault collection actions

---

[1] Other defendants named in the complaint have been voluntarily dismissed from this action. (*See* ECF Nos. 106, 107, 108, 164, 203.)

1

or arbitrations pending in any court or arbitral forum against Plaintiffs under New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law §§ 5101–5109 ("New York's No-Fault Law"), and (2) filing any new no-fault arbitral proceedings or civil actions seeking collection of benefits from Plaintiffs. (*See* Order Show Cause & TRO, ECF No. 168.) By order dated June 6, 2018, Judge Ann M. Donnelly denied Plaintiffs' motion. On June 20, 2018, Plaintiffs moved for reconsideration. (Mot. Recons., ECF No. 173.) By order dated June 21, 2018, Judge Donnelly granted Plaintiffs' motion and ordered supplemental briefing. Oral argument was heard before Judge DeArcy Hall on August 22, 2018.

## STANDARD OF REVIEW

"'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion.'" *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (alteration and emphasis in original)). To obtain a preliminary injunction, a moving party must show "(1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation,[2] and that the balance of hardships tips decidedly in favor of the moving party." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citations omitted). "It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

---

[2] Plaintiffs concede that "it would be premature for the Court to determine the likelihood of Plaintiffs' success on the merits," so they argue instead that their complaint "sets forth sufficiently serious questions going to the merits to make them fair grounds for litigation." (Mem. Law Supp. Pls.' Mot. TRO & Prelim. Inj. ("Pls.' TRO Br.") 16–18, ECF No. 168-3.)

## DISCUSSION

In urging the Court to reconsider Judge Donnelly's June 6, 2018 order, Plaintiffs argue that Judge Donnelly erred to the extent the Second Circuit's summary order in *Allstate Insurance Co. v. Harvey Family Chiropractic, Physical Therapy & Acupuncture, PLLC*, 677 F. App'x 716 (2d Cir. 2017), "provided the lone basis" for Judge Donnelly's findings. (Mem. Law Supp. Pls.' Mot. Recons. ("Pls.' Recons. Br.") 7, ECF No. 173-1.) In particular, Plaintiffs note that because *Harvey Family* was a summary order, it is not entitled to precedential effect.[3] (*Id.* at 10–13; Suppl. Mem. Law Supp. Pls.' Mot. TRO and Prelim. Inj. ("Pls.' Suppl. TRO Br.") 6–9, ECF No. 178.) While this may be true, courts in this district have relied on summary orders by the Second Circuit as "highly persuasive" authorities. *E.g.*, *Guida v. Home Savings of Am., Inc.*, 793 F. Supp. 2d 611, 618 n.5 (E.D.N.Y. 2011); *LaSala v. Bank of Cyprus Pub. Co., Ltd.*, 510 F.Supp. 2d 246, 274 n.10 (S.D.N.Y.2007); *Bernshteyn v. Feldman*, No. 04 Civ. 1774 (GEL), 2006 WL 2516514, at *3 n.3 (S.D.N.Y. Aug. 29, 2006); *Harris v. United Fed'n Teachers, N.Y.C. Local 2*, No. 02 Civ. 3257 (GEL), 2002 WL 1880391, at *1 n.2 (S.D.N.Y. Aug. 14, 2002). In any event, I do not construe Judge Donnelly's decision as having been based solely on *Harvey Family*— although that case is cited in her order. Rather, after applying long-established principals used to assess the propriety of a preliminary injunction, Judge Donnelly denied Plaintiffs' request because Plaintiffs had failed to establish the requisite irreparable harm. I agree.

A showing of irreparable harm is "'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118

---

[3] Plaintiffs maintain, among other arguments, that summary orders should not be relied upon because they "frequently do not set out the factual background of [cases] in enough detail" to analogize to future cases. (Pls.' Recons. Br. 7.) Notably, Plaintiffs in this action were also the named plaintiffs in *Harvey Family*, and they present additional facts they believe distinguish that case from this one. (*Id.* at 8–9.) In particular, Plaintiffs say that this case is far more complex than *Harvey Family* and involves different means of fraud. (*Id.*) Even if true, none of those facts are material to the Court's analysis here, as discussed below.

3

(2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). This element is so critical to the Court's inquiry that the Court need not reach any of the other requirements necessary for the grant of injunctive relief where irreparable harm has not been demonstrated. *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66–67 (2d Cir. 2007) ("[T]he moving party must first demonstrate [irreparable harm] before the other requirements for the issuance of an injunction will be considered." (internal quotation marks and citation omitted)). Such is the case here.

"To satisfy the irreparable harm requirement, [plaintiffs] must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* at 66 (internal quotation marks and citation omitted). In this case, Plaintiffs argue principally that if the Retailers' state-court and arbitral proceedings against Plaintiffs (the "Parallel Proceedings") are not enjoined, there is a serious risk of inconsistent rulings. (*See* Pls.' TRO Br. 11–12.) Moreover, Plaintiffs insist that continued arbitration and state litigation threaten to render illusory any declaratory relief they obtain in this action, and therefore an injunction is warranted. (*See id.* (noting that the threat of inconsistent rulings "could ultimately strip Plaintiffs[] of their right to seek and be awarded declaratory relief by this Court").) In support of these contentions, Plaintiffs rely heavily on cases where courts have stayed pending no-fault arbitral proceedings on the basis that failing to do so would result in inconsistent judgments.

Of note, Plaintiffs direct the Court to *Allstate Insurance Co. v. Elzanaty*, where the district court temporarily stayed pending arbitrations and temporarily enjoined the defendants from commencing any additional arbitrations to recover no-fault payments from the plaintiffs. 929 F. Supp. 2d 199, 222 (E.D.N.Y. 2013). The logic of the district court's decision "under the

4

complicated procedural facts" of that case, *id.* at 220, is sound. However, Plaintiffs fail to recognize a critical distinction between *Elzanaty* and this case. In *Elzanaty*, unlike in the instant action, the issues before the federal court were identical to the issues in the arbitral proceedings the plaintiffs sought to enjoin. The plaintiff insurers ("the Allstate parties") asserted RICO claims in federal court seeking damages to recoup previously paid no-fault claims and a declaratory judgment that they need not make future payments, on the grounds that the defendants ("the Elzanaty parties") had violated certain licensing requirements and had engaged in other misconduct. *Id.* at 204. The Elzanaty parties asserted a counterclaim that they were entitled to payment. *Id.* at 205. Significantly, the Elzanaty parties then asserted the very same no-fault claims in arbitrations under New York's No-Fault Law. *Id.* at 205–06. As defenses to non-payment, the Allstate parties alleged that the Elzanaty parties had fraudulently incorporated as professional medical-service providers and were therefore not legally entitled to payment. *Id.* at 205, 220–21. Critically, the district court determined that those parallel proceedings presented actual risks of inconsistent rulings on the same issue: "It would severely threaten any judgment of [the district court] to have pending arbitrations or future arbitrations result in inconsistent rulings with regard to [the defendants'] eligibility for reimbursement of No–Fault insurance payments." *Id.* at 220. Under such circumstances, the court found an injunction warranted, reasoning the "allowing a large number of proceedings to heard by a mix of arbitrators, each of whom [would] likely come to their own independent and potentially contradictory conclusions, [would] result in harm to Allstate from which it [could not] recover." *Id*. at 222. The court further reasoned that "'the issuance of a preliminary injunction [would] not unduly cause hardship to any of the defendants, but, to the contrary, all parties [would] benefit from having the issue of fraudulent incorporation determined in one action.'" *Id.* (quoting *Autoone Ins. Co. v. Manhattan Heights Med., P.C.*, 899 N.Y.S.2d 57, at *3 (N.Y. Sup. Ct. 2009)).

5

The other cases cited by Plaintiffs present similarly identical issues between the federal actions and the parallel proceedings to be enjoined. In *Liberty Mutual Insurance Co. v. Excel Imaging P.C.*, the plaintiff insurers raised the defendants' "fraudulent statements and/or fraudulent conduct" as defenses to the defendants' claims for non-payment in the parallel no-fault proceedings. 879 F. Supp. 2d 243, 260 (E.D.N.Y. 2012) (quotation marks and citation omitted). This same alleged fraudulent conduct provided the basis for the plaintiffs' RICO action in the district court, which resulted in an injunction of the parallel proceedings. *See id.* at 257–60. In *Bruce v. Martin*, the district court found that if "the defendants [were] permitted to commence separate suits, . . . the plaintiffs [would] be required to assert the *same defenses* under federal and state law that they [had] asserted as claims" in the district court. 680 F. Supp. 616, 622 (S.D.N.Y.1988) (emphasis added). The *Bruce* court further found that "the plaintiffs [had] satisfied the irreparable injury standard by showing the destructive effect that scores of fragmented state actions *on the issues raised here* would have on [the district] court's ability to afford the parties full, final and complete relief." *Id.* (emphasis added). In *State Farm Mutual Insurance Co. v. Jamaica Wellness Medical, P.C.*, the court issued an oral ruling from the bench granting a preliminary injunction against pending no-fault state-court and arbitral proceedings. May 18, 2017 Oral Arg. Tr. 19:2, No. 16-cv-4948 (E.D.N.Y. Aug. 12, 2017), ECF No. 45. There, the plaintiff relied on *Elzanaty* and *Bruce* to argue that it "would be required to assert the *same defenses* under federal and state law [in the parallel proceedings] as they assert[ed]" in federal court. *Id.* at 16:14–16 (emphasis added). In granting the preliminary injunction, the court reasoned: "There would be serious questions as to whether or not in this litigation we grant relief and then the state court has made different determinations *on the same claims*." *Id.* at 18:4–6 (emphasis added). Similarly, in *Autoone*, a New York state court enjoined ongoing arbitrations to prevent irreparable harm. 899 N.Y.S.2d, at *3. Notably, the court found that "the plaintiffs ha[d]

6

shown that the issuance of a preliminary injunction [was] necessary to prevent the repetitive litigation and arbitration of numerous no-fault claims for reimbursement by medical providers where the insurers raise[d] the *same defense* of fraudulent incorporation." *Id.* (emphasis added).[4]

It is apparent that the courts in the preceding cases relied, at least in part, on the identity of issues between the actions before them and the parallel proceedings to be enjoined. Because of the identity of issues in each of those cases, failing to issue an injunction would have created a real risk of inconsistent judgments. No such risk exists here.

The instant action is premised upon an alleged pattern comprising discrete claims of fraudulent activity by the Retailers. (*See* Pls.' Recons. Br. 1.) Plaintiffs allege, among other fraudulent activity, that the Retailers:

- "routinely submitted bills for Non-Fee Schedule items, wherein they misrepresented that those items were reimbursable under the Fee Schedule when, in fact, they were utilizing exact [*sic*] same phantom codes for the same items that were not listed on the relevant Fee Schedule in existence at the time" (Am. Compl. ¶ 187, ECF No. 157);

- "routinely submitted bills for Non-Fee Schedule items using Fee Schedule code E1399, which is reserved for miscellaneous items, and in doing so, they fraudulently misrepresented the nature and quality of the billed-for DME and/or orthotic devices and their acquisition costs" (*id.* ¶ 196);

- "routinely submitted bills to Plaintiffs for Non-Fee Schedule Items using codes reserved for Fee Schedule Items in order to maximize the fraudulent charges they could submit to Plaintiffs, despite the fact that they never provided the billed-for items" (*id.* ¶ 199);

- "routinely submitted fraudulent bills in support of expensive custom fabricated DME and/or orthotic devices, despite the fact that, to the extent anything was provided, the DME and/or orthotic devices were cheap, one-size-fits-all items that were not custom fabricated to the Claimants' measurements" (*id.* ¶ 211);

- "routinely submitted fraudulent bills in support of expensive pre-fabricated DME and/or orthotic devices that required a fitting and adjustment in which the device has

---

[4] To the extent Plaintiffs analogize to *Government Employees Insurance Co. v. Strutsovskiy*, No. 12-cv-330, 2017 WL 4837584, at *6–7 (W.D.N.Y. Oct. 26, 2017) (*see* Pls.' Recons. Br. 7–8; Pls.' Suppl. TRO Br. 8–9), the Court notes that the *Strutsovskiy* opinion does not describe the nature of defenses raised in the parallel proceedings. Although the opinion does not address whether there was an identity of issues between the federal action and the parallel proceedings, the court expressly relied on *Elzanaty*, *Excel*, and *Autoone*, where, as discussed above, identical claims and defenses informed the courts' decisions to issue injunctions. *See* 2017 WL 4837584, at *6–7.

7

- been trimmed, bent, molded, assembled, adjusted, modified, or otherwise customized to fit a specific patient by an individual with expertise, which they never provided" (*id.* ¶ 212);

- "routinely submitted fraudulent bills to Plaintiffs for cervical traction units under Fee Schedule Codes E0855 and/or E0849" (*id.* ¶ 238); and

- "routinely submitted bills to Plaintiffs for DME and/or orthotic devices that were never provided" (*id.* ¶ 246).

In the Parallel Proceedings, by contrast, Plaintiffs have failed to raise fraud, a fact they conceded at oral argument. (Aug. 22, 2018 Oral Arg. Tr. 12–13.) According to Plaintiffs' counsel, Plaintiffs strategically declined to assert fraud defenses in the Parallel Proceedings because they believed that any one fraud would be too difficult to prove without looking at a larger alleged pattern. (*Id.* at 19–20 ("We [would] have to bring in other claims . . . that are not before that arbitration. So we're essentially proving the pattern, okay, that we're proving here.").) Defendants rejected this notion (*id.* at 37–38), as I do here.

Certainly, it could be argued that Plaintiffs may have been unable in each of the Parallel Proceedings to prove a pattern of fraud necessary to make out a federal RICO claim.[5] However, as Defendants aptly noted (*id.* at 38–39), nothing prevented Plaintiffs from raising fraud as a defense to non-payment of any given claim. For example, Plaintiffs could have asserted as a defense that one or more of the Retailers used "phantom codes" (Compl. ¶ 187); "misrepresented the nature and quality" of billed-for items (*id.* ¶ 196); submitted bills for items they never delivered (*id.* ¶¶ 199, 212, 246); or submitted bills for expensive custom or trademarked devices but delivered cheap knockoffs (*id.* ¶¶ 211, 238–40) to justify their non-payments. Rather than asserting fraud as a defense in the Parallel Proceedings, as they claim here, Plaintiffs chose to defend the Parallel Proceedings on the grounds of medical necessity. (*See* Aug. 22, 2018 Oral

---

[5] Interestingly, the difficulty of proving a RICO pattern of fraud did not prevent the plaintiffs in *Elzanaty*, all of whom are among Plaintiffs in this action, from raising fraud as a defense in the parallel proceedings they sought to enjoin in that case. *See* 929 F. Supp. 2d at 220–21.

Arg. Tr. 12 ("I don't believe any of those arbitrations have been defended on those broad issues [of fraud] *per se*. They've been defended based on IME peer reviews not applied for request for [*sic*] additional clarification.").) As such, none of the Parallel Proceedings will result in any determination on the issue of fraud. In other words, there is simply no danger of inconsistent determinations. Any harm to Plaintiffs resulting from adverse awards in the Parallel Proceedings can be adequately remedied by future monetary damages in this action. "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore*, 409 F.3d at 510; *see also Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) ("'The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'" (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Plaintiffs have failed to establish the irreparable harm necessary to obtain a TRO and preliminary injunction.[6]

---

[6] Because Plaintiffs have not demonstrated irreparable harm, the Court need not reach any of the other requirements necessary to obtain a TRO or preliminary injunction. *See Grand River Enter.*, 481 F.3d at 66–67. However, the Court notes that it disagrees with Plaintiffs' assertion that the balance of hardships tips decidedly in their favor. On this point, Plaintiffs argue that an injunction would not cause the Retailers undue hardship because if the Retailers ultimately prevailed in the instant action and the Parallel Proceedings, they would be awarded two-percent interest under New York's No-Fault Law on each outstanding no-fault payment for every month the payment is overdue. (Pls.' TRO Br. 18–19.) Although such interest payments may be adequate to protect claimants while they pursue litigation or arbitration of their discrete claims under the No-Fault Law, the Court has no basis to conclude that such interest payments would adequately protect the Retailers against non-payment of their pending no-fault claims, as well as unknown future claims, during the pendency of this large, complex RICO action that may take years to resolve. Given the number of Parallel Proceedings implicated by the proposed injunction, as argued by Defendant Top Q Inc., the potential for recovering accrued interest would not significantly alleviate the Retailers' hardship created by their inability to obtain reimbursements for the duration of this potentially lengthy litigation. (*See* Aug. 22, 2018 Oral Arg. Tr. 41.) This is all the more concerning in a case such as this one, where Plaintiffs have not established a likelihood of success on the merits but instead have opted to base their request for a preliminary injunction, in part, on the complexity of the matter. (*See* Pls.' TRO Br. 16–18.) As such, Plaintiffs have failed to meet their burden in establishing that the balance of hardships tips decidedly in their favor.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a TRO and preliminary injunction is denied.

Dated: Brooklyn, New York
October 30, 2018

SO ORDERED:

/s/LDH
LaSHANN DeARCY HALL
United States District Judge