UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ALLSTATE INSURANCE COMPANY *et al.*,

                        Plaintiffs,

v.

ARTUR AVETISYAN *et al.*,

                        Defendants.

**MEMORANDUM AND ORDER**
17-CV-04275 (LDH) (RML)

---

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

      Plaintiffs Allstate Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate New Jersey Insurance Company; Allstate New Jersey Property and Casualty Insurance Company; Allstate Property & Casualty Insurance Company; and Northbrook Indemnity Company bring claims against Defendants Artur Avetisyan; Alexander Blantz ("A. Blantz"); Levy Davidov; Alexandra Matlyuk; Gregory Miller; Almatcare Medical Supply Inc.; AVA Custom Supply Inc.; Daily Medical Equipment Distribution Center, Inc.; Lenex Services, Inc. ("Lenex"); Top Q Inc.; Igal Blantz ("I. Blantz"); Gala Trading Inc. ("Gala"); IG&NAT Services, Inc.; John Does 1–20; and ABC Corporations 1–20 pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), New York common law, and the Federal Declaratory Judgment Act. (*See* Am. Compl., ECF No. 157.)[1]

      Defendants A. Blantz, Lenex, I. Blantz, and Gala (collectively, "Counterclaim Plaintiffs") assert a single counterclaim against Plaintiffs ("Counterclaim Defendants") for unfair and deceptive trade practices under New York General Business Law ("GBL") § 349. (Counter-Claim, ECF No. 160-2 ("Countercl.").) Counterclaim Defendants move to dismiss the

---

[1] Other defendants who were named in the amended complaint have been voluntarily dismissed from this action. Although some of the stipulations of dismissal were filed before the amended complaint, such dismissals were with prejudice, barring further litigation of any and all claims by Plaintiffs against the dismissed defendants. (*See* ECF Nos. 106, 107, 108, 121, 130, 131, 140, 164, 170, 188, 194, 203, 225, 227.)

counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Notice Mot. Dismiss Am. Countercl., ECF No. 205.)

## BACKGROUND[2]

I. Blantz owns Gala, which is a wholesaler of durable medical equipment ("DME") to New York retailers. (Contercl. ¶¶ 2, 4.) A. Blantz owns Lenex, which is a retail provider of DME to patients in New York. (*Id.* ¶¶ 1, 3.) Lenex is an assignee of certain of Counterclaim Defendants' insurance contracts with customers, allowing Lenex to file claims with Counterclaim Defendants for the DME Lenex provides to such customers. (*See id.* ¶ 52.)

New York's no-fault insurance law and regulations impose certain obligations on insurers, like Counterclaim Defendants, to review DME reimbursement claims submitted by providers like Lenex. (*Id.* ¶¶ 21–22.) However, Counterclaim Plaintiffs allege, Counterclaim Defendants did not conduct such review of Lenex's reimbursement claims, paid Lenex the amounts billed, and "intentionally omitted" their doubts about the appropriateness of Lenex's claims in order to "lure" Lenex and A. Blantz into believing that Plaintiffs were complying with the law and their own fraud-prevention policies. (*Id.* ¶ 37.) These alleged deceptions "in turn led to [Gala and I. Blantz] into [*sic*] believing that [Counterclaim Defendants] were conducting themselves in a proper and lawful manner." (*Id.*) Counterclaim Defendants allegedly disregarded their internal fraud-prevention policies and made other false statements in administrative reports filed with state regulatory agencies. (*Id.* ¶¶ 41–43.) Counterclaim Plaintiffs allege that this conduct was part of Counterclaim Defendants' "scheme" to refrain from contesting individual reimbursement claims from providers while setting a "RICO trap" to "be

---

[2] The following facts are taken from Defendants' counterclaim and, unless otherwise indicated, are assumed to be true for the purposes of this memorandum and order.

able to not pay any remaining claims, force the provider[s] to spend vast monies to defend the RICO [*sic*], and effectively force the providers out of business." (*Id.* ¶ 20.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

## DISCUSSION

As an initial matter, Counterclaim Defendants argue that dismissal of the counterclaim is warranted because the alleged scheme at issue is facially implausible. (Mem. Law Supp. Pls.' Pre-Answer Mot. Dismiss Am. Countercl. Defs Lenex, A. Blantz, Gala, & I. Blantz ("Pls.' Mem.") 12, ECF No. 205-1.) Specifically, Counterclaim Defendants argue that it would defy logic to believe they "embraced the very risky prospect of protracted, uncertain, and costly RICO actions as a sort of business plan (or business malpractice), knowingly paying claims [they] believe[] to be fraudulent or otherwise subject to denial." (*Id.* at 12–13.) The Court could not agree more.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, Counterclaim Plaintiffs allege the existence of a scheme in which Counterclaim Defendants accepted claims submitted by Counterclaim Plaintiffs and others, reimbursed them, then later filed RICO actions like this one to recoup their payments and drive providers like Counterclaim Plaintiffs out of business. (*See generally* Countercl. ¶¶ 14, 20.) This far-fetched theory of the case fails to pass the laugh test. Moreover, neither of the two cases Counterclaim Plaintiffs cite in support of their plausibility argument is analogous to this case. Notably, the plaintiffs in both of those cases sued their respective insurance companies for improperly *denying* their claims after inadequate review, despite promises to the contrary in standard-form contracts. *Shebar v. Metro. Life Ins. Co.*, 807 N.Y.S.2d 448, 449–50 (N.Y. App. Div. 2006); *Acquista v. New York Life Ins. Co.*, 730 N.Y.S.2d 272, 279 (N.Y. App. Div. 2001). Of course, it would be plausible to infer that an insurer's practice of summarily denying insurance claims could result from an improper profit motive. However, to assume, as Counterclaim Plaintiffs urge, that Counterclaim Defendants summarily accepted and reimbursed their claims with the intention of engaging in costly and unpredictable future litigation for the purpose of gaining competitive advantage would place the Court far beyond the bounds of reason.[3] The Court refuses to accompany Counterclaim Plaintiffs on their flight of fancy.

Even if the Court were construe the counterclaim as somehow plausible, the counterclaim would nonetheless fail on the merits. GBL § 349(a) prohibits "[d]eceptive acts or practices in

---

[3] The counterclaim sounds in entrapment. However, entrapment is not a cause of action but rather an affirmative defense to a criminal charge. More importantly, entrapment is a legal concept reserved for government conduct. "A defendant cannot establish entrapment by showing that he was induced to commit a crime by a private individual who was not then serving as an agent of the government." *United States v. Collier*, 172 F.3d 38 (2d Cir. 1999).

the conduct of any business, trade or commerce or in the furnishing of any service." To make out a prima facie case, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result. *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Counterclaim Defendants argue that Counterclaim Plaintiffs have failed to meet the first and second elements of a § 349 claim. (Pls.' Mem. 17–21.) Because the Court agrees that the allegedly deceptive acts at issue were not directed at consumers, the Court need not decide whether they were materially misleading.

The New York Court of Appeals has defined the phrase "deceptive act or practice" under § 349 as "a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 604 (1999) (quoting *Karlin v. IVF Am.*, 712 N.E.2d 662, 668 (N.Y. 1999)). "'Consumers' are 'those who purchase goods and services for personal, family or household use.'" *Med. Soc'y of State of N.Y. v. Oxford Health Plans, Inc.*, 790 N.Y.S.2d 79, 80 (N.Y. App. Div. 2005) (quoting *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (N.Y. App. Div. 2000)). To be consumer-directed, "conduct need not be repetitive or recurring" but "must have a broad impact on consumers at large; private contract disputes unique to the parties would not fall within the ambit of the statute." *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) (internal quotation marks and alterations omitted). Applying these principles, state and federal courts in New York have held that insurers' denials of claims by medical-service providers do not satisfy the consumer-directed element of § 349, because such denials are "directed, not at the underlying consumers of medical services, but at the [medical-service providers] themselves." *Precision Imaging of N.Y., P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 476 (S.D.N.Y. 2017) (citing

5

*Josephson v. United Healthcare Corp.*, No. 11-CV-3665, 2012 WL 4511365, at *8 (E.D.N.Y. Sept. 28, 2012); *Med. Soc'y*, 790 N.Y.S.2d at 80).  This analysis is fatal to the counterclaim.

That said, at least one court has noted that deliberately delaying and denying medical providers' reimbursement claims could theoretically affect consumers and the public at large by "erecting barriers to reimbursement," "imposing additional social costs," and "affect[ing] the ability of accident victims to obtain medical treatment." *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 294 (S.D.N.Y. 1996).  Even if the Court were to adopt this reasoning, no such consumer-facing concerns are implicated in this case.  Instead, the deceptive acts or practices at issue are Counterclaim Defendants' allegedly pretextual approval and payment of insurance claims made by Lenex and other DME providers for the true purported purpose of later litigating the validity of those very claims.[4]  (Countercl. ¶¶ 14–15, 37.)  Counterclaim Plaintiffs do not allege that Counterclaim Defendants delayed or denied any reimbursement claims or otherwise erected any barriers to reimbursement.  Quite the contrary.  And Counterclaim Plaintiffs' allegation that Counterclaim Defendants' purported scheme exposed them to costs and potential civil liability in RICO litigation reflects "a quintessentially private dispute" outside the scope of § 349.  *Precision Imaging*, 263 F. Supp. 3d at 477.  Thus, Counterclaim Plaintiffs fail to adequately plead that the acts at issue were consumer-directed, as necessary to support a § 349 claim.[5]

---

[4] Counterclaim Plaintiffs' further allege that an additional goal of Counterclaim Defendants' alleged claims-approval-and-subsequent-litigation scheme was to diminish the supply of DME providers willing to accept no-fault insurance, forcing personal-injury plaintiffs to accept relatively low settlements and thereby "harming the public at large." (Countercl. ¶ 28.)  Such an effect on consumers is simply too attenuated from the alleged conduct at issue to support the § 349 claim.

[5] The cases Counterclaim Plaintiffs cite in their two-sentence opposition on this issue do not alter the Court's conclusion.  (Defs.' Opp. 26.)  In *Kapsis v. American Home Mortgage Servicing, Inc.*, the district court held that the defendant mortgage servicers' alleged conduct was consumer-directed because it affected a large class of similarly situated residential-home-mortgage borrowers.  923 F. Supp. 2d 430, 449–50 (E.D.N.Y. 2013).  In *Bose v. Interclick, Inc.*, allegations that the defendant advertiser used hidden code "to circumvent consumers' ordinary browser privacy and security settings on their computers" were sufficient to plead the element consumer-directed

## CONCLUSION

For the foregoing reasons, Counterclaim Defendants' motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  
       June 4, 2019

s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge

---

conduct. No. 10-CV-9183, 2011 WL 4343517, at *8 (S.D.N.Y. Aug. 17, 2011). In both cases, the deceptive acts at issue had direct effects on consumers. Here, by contrast, the alleged acts at issue were directed at providers, not consumers.