UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------

**ALLSTATE INSURANCE COMPANY,** *et al.*,

**Plaintiffs,**

-against-                                        **17-CV-4275 (RPK)(RML)**

**ARTUR AVETISYAN,** *et al.*,

**Defendants.**

------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A DEFAULT JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 55 AGAINST DEFENDANTS ARTUR AVETISYAN, ALEXANDRA MATLYUK, GREGORY MILLER, ALMATCARE MEDICAL SUPPLY INC., AVA CUSTOM SUPPLY INC., DAILY MEDICAL EQUIPMENT DISTRIBUTION CENTER, INC., AND IG & NAT SERVICES, INC.**

**MORRISON MAHONEY, LLP**
**ATTORNEYS FOR PLAINTIFFS**
**ALLSTATE INSURANCE COMPANY, ET AL.**
**WALL STREET PLAZA**
**88 PINE STREET, SUITE 1900**
**NEW YORK, NEW YORK 10005**
**TELEPHONE: (212) 825-1212**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................. 1

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND .................................................................... 4

STANDARD OF REVIEW .................................................................... 8

ARGUMENT ..................................................................................... 12

I. THE DEFAULTED DEFENDANTS HAVE FAILED TO PLEAD OR OTHERWISE DEFEND AGAINST THE ACTION  12

II. BY VIRTUE OF THEIR NON-APPEARANCE, DEFAULTED DEFENDANTS HAVE ADMITTED THE FACTUAL ALLEGATIONS OF PLAINTIFFS' COMPLAINT ................... 14

    A.   The Defaults Were Willful ..................................................... 14

    B.   The Defaulted Defendants Do Not Have Any Meritorious Defenses ............... 16

    C.   Plaintiffs Will Suffer Substantial Prejudice If A Default Judgment Is Not Entered Against the Defaulted Defendants ................................................. 17

III.  THE COMPLAINT SETS FORTH VALID CLAIMS FOR RELIEF ................................ 18

    A.   Plaintiffs' Complaint States Valid Claims for Relief with Respect to Plaintiffs' RICO Claims ................................................................ 19

        i.   RICO Person ..................................................... 20

        ii.   RICO Enterprise ................................................... 22

        iii.   Pattern of Racketeering Activities ................................... 23

        iv.   Participation in the Racketeering Activities .......................... 29

        v.   The Acts Alleged in the Complaint Affect Interstate Commerce .......... 30

    B.   Plaintiffs' Complaint States Valid Common Law Fraud Claims .................. 30

    C.   Plaintiffs' Complaint States Valid Unjust Enrichment Claims for Relief. ....... 36

IV. PLAINTIFFS ARE ENTITLED TO TREBLE DAMAGES ................................... 36

    A.   Defaulted Defendants Are Jointly And Severally Liable. ...................... 38

    B.   Plaintiffs Are Entitled To Treble Damages Under The Civil Rico Statute ......... 38

V. PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST ON THEIR CLAIMS ................................................................................... 39

VI. PLAINTIFFS ARE ENTITLED TO A DECLARATORY JUDGMENT ........................... 41

CONCLUSION ................................................................................. 45

# TABLE OF AUTHORITIES

Cases

*Abdou-Khadra v. Mahshie*, 4 F.3d 1071 (2d Cir. 1993) .................................................. 40

*Abramovich v. Oliva*, 11-CV-1755 (ERK)(SMG), 2012 WL 3597444 (E.D.N.Y. Aug. 20, 2012) ........................................................................................................................ 24

*Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504 (2d Cir. 1991) ............................... 37

*AIU* Ins. Co. v. Olmecs Med. Supply, Inc., 04-CV-2934 (ERK), 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005) ...................................................................................... 33, 34

*Allstate Ins. Co. v. Abutova*, No. 13 CV 3494 (ARR)(LB), 2017 WL 1185222 (E.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 1184107 (E.D.N.Y. Mar. 29, 2017) ....................................................................................... 8, 19, 21

*Allstate Ins. Co. v. Afanasyev*, No. 12-CV-2423 (JBW)(CLP), 2016 WL 1156769 (E.D.N.Y. Feb. 11, 2016), *report and recommendation adopted*, 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016) ........................................................................................ 9

*Allstate Ins. Co. v. Aminov*, No. 11-CV-2391 (MKB), 2014 WL 527834 (E.D.N.Y. Feb. 7, 2014) ................................................................................................................. passim

*Allstate Ins. Co. v. Bogoraz*, 10-CV-5286 (SJF)(ETB), 2012 WL 1655552 (E.D.N.Y. May 9, 2012) ...................................................................................................... 15, 17

*Allstate Ins. Co. v. Halima,* 06-CV-1316 (DLI)(SMG), 2009 WL 750199 (E.D.N.Y. Mar. 19, 2009) .............................................................................................................. 34

*Allstate Ins. Co. v. Howell*, No. 09-CV-4660 (RJD)(VVP), 2013 WL 5447152 (E.D.N.Y. Sept. 30, 2013) ...................................................................................... 23, 39

*Allstate Ins. Co. v. Kumar*, No. 10-CV-8166, 2013 WL 2395748 (S.D.N.Y. Jun. 3, 2013) ......... 38

*Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358 (E.D.N.Y. 2012) ................................. 22

*Allstate Ins. Co. v. Nazarov*, 11-CV-6187 (PKC)(VMS), 2015 WL 5774459 (E.D.N.Y. Sept. 30, 2015) ...................................................................................... passim

*Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384 (E.D.N.Y. 2008) ......................... 29

*Allstate Ins. Co. v. Smirnov*, 12-CV-1246 (CBA), 2013 WL 5407224 (E.D.N.Y. Aug. 21, 2013) ...................................................................................................... 24, 38

*Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.,* 05-CV-5934 (DRH)(MLO), 2009 WL 3245388 (E.D.N.Y. Sept. 30, 2009) ................................................. 20, 28

*AW Indus., Inc. v. Sleep Well Mattress, Inc.*, 07-CV-3969 (SLT)(JMA), 2009 WL 485186 (E.D.N.Y. Feb. 26, 2009) ........................................................................ 12

*Barkany Asset Recovery & Mgmt. v. Sw. Sec. Inc.*, 972 N.Y.S.2d 458 (N.Y. Sup. Ct. 2013) ...................................................................................................................... 33

*Boards of Trustees of Ins., Annuity, & Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.*, 12-CV-3363 (KAM)(VMS), 2014 WL 674098 (E.D.N.Y. Feb. 3, 2014) .......................... 11

*Bounty Fresh, LLC v. J N.Y. Produce, Inc.*, 12-CV-2415 (FB)(JO), 2014 WL 1010833 (E.D.N.Y. Mar. 14, 2014) ............................................................................................ 19

*Bricklayers Ins. & Welfare Fund v. Vinza Concrete, Inc.*, 15-CV-0080 (AMD)(CLP), 2017 WL 4326562 (E.D.N.Y. Sept. 11, 2017), *report and recommendation adopted*, 2017 WL 4296729 (E.D.N.Y. Sept. 26, 2017) ................................................. 10

*Buffalo Laborers Welfare Fund v. Elliott*, No. 04-CV-516S, 2008 WL 9073853 (W.D.N.Y. Mar. 31, 2008) ............................................................................................ 15

*Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993) .......................................... 41

*Cazarez v. Atl. Farm & Food Inc.*, No. 15-CV-2666 (CBA)(RML), 2017 WL 3701687 (E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017) ..................................................................... 9, 18

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) ..................................... 21, 22, 23

*Circuito Cerrado, Inc. v. Morgalo Corp.*, 10-CV-3338 (JS)(AKT), 2011 WL 3919411 (E.D.N.Y. July 29, 2011), *report and recommendation adopted*, 2011 WL 3919679 (E.D.N.Y. Sept. 7, 2011) ............................................................................................. 11

*Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126 (E.D.N.Y. 2010) .......................................... 29

*Cummings v. HCHC, Inc.*, 17-CV-3907 (BMC), 2017 WL 4162306 (E.D.N.Y. Sept. 19, 2017) ...................................................................................................................... 12

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ......................................................... 19, 29, 30

*Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 2017 WL 4043325 (E.D.N.Y. 2017) ...................... 10, 17

*Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396 (E.D.N.Y. 2013) .......................... 19

*E.R. Squibb & Sons, Inc. v. Lloyd's & Co.*, 241 F.3d 154 (2d Cir. 2001) ........................... 41

*Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation & Scholarship Funds v. Darken*, 11-CV-46 (JS)(AKT), 2012 WL 194075 (E.D.N.Y. Jan. 17, 2012), *report and recommendation adopted sub nom. Trustees of Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation & Scholarship Funds v. Darken Arch. Wood*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012) ..................................... 16

*Feel Better Kids, Inc. v. Kids in Need, Inc.*, 06-CV-0023 (DRH)(AKT), 2012 WL 4483000 (E.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012) ............................................................... 14, 17

*Ferri v. Berkowitz*, 678 F. Supp. 2d 66 (E.D.N.Y. 2009) ............................................. 25

*Finkel v. Robco Elec. Corp.*, 11-CV-2353 (NGG)(RLM), 2011 WL 3204603 (E.D.N.Y. July 27, 2011) ................................................................................................. 9

*Finkel v. Romanowicz*, 577 F.3d 79 (2d Cir. 2009) ...................................................... 9

First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004) .................. 22, 25

*Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38 (2d Cir. 1989) ................................. 37

*Gesualdi v. Magnolia Pro Trucking Inc.*, 11-CV-4082 (ADS)(AKT), 2012 WL 4036119 (E.D.N.Y. Aug. 20, 2012), *report and recommendation adopted sub nom. Gesualdi v. Magnolia PRO Trucking Inc.*, 2012 WL 4035779 (E.D.N.Y. Sept. 11, 2012 ................... 14

*Gesualdi v. Reid*, 198 F. Supp. 3d 211 (E.D.N.Y. 2016), *motion for relief from judgment denied sub nom. Gesualdi v. J.H. Reid, Gen. Contractor*, 14-CV-4212 (ADS)(GRB), 2017 WL 752157 (E.D.N.Y. Feb. 27, 2017) .............................................. 11, 18

*Gov't Employees Ins. Co. v. Infinity Health Prods., Ltd.*, 10-CV-5611 (JG)(JMA), 2012 WL 1427796 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted*, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012) ......................................................... passim

*Gov't Employees. Ins. Co. v. Active Care*, 2015 WL 7281630 (E.D.N.Y. Nov. 16, 2015) ........... 44

*Gov't Employees Ins. Co. v. AMD Chiropractic, P.C.*, 12-CV-4295 (NG)(JO), 2013 WL 5131057 (E.D.N.Y. Sept. 12, 2013) ............................................................. 9, 21

*Gov't Employees Ins. Co. v. Damien*, 10-CV-5409 (SLT)(JMA), 2011 WL 5976071 (E.D.N.Y. Nov. 3, 2011), *report and recommendation adopted*, 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2010) ......................................................... 15, 17, 18

*Gov't Employees Ins. Co. v. David Sanni-Thomas, D.O.*, 13-CV-4966 (MKB)(SMG), 2015 WL 5692875 (E.D.N.Y. Sept. 4, 2015) *report and recommendation adopted sub nom. Gov't Employees Ins. Co. v. Zemlyansky*, 2015 WL 5692899 (E.D.N.Y. Sept. 27, 2015) .......................................................................................... 22

iv

*Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.*, 11-CV-4261 (ARR)(RER), 2013 WL
   764735 (E.D.N.Y. Feb. 8, 2013), *report and recommendation adopted*, 2013 WL
   765190 (E.D.N.Y. Feb. 28, 2013) ................................................................................ passim

*Gov't Employees Ins. Co. v. IAV Medical Supply, Inc.*, 11-CV-4261 (ARR)(RER), 2013
   WL 764735, (E.D.N.Y. Feb. 8, 2013), *report and recommendation adopted*, 2013
   WL 765190 (E.D.N.Y. Feb. 28, 2013) ...................................................................... 4, 44

*Gov't Employees Ins. Co. v. Jacques*, 14-CV-5299 (KAM)(VMS), 2017 WL 9487191
   (E.D.N.Y. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 1214460
   (E.D.N.Y. May 31, 2017) .............................................................................................. 4

*Gov't Employees Ins. Co. v. Li-Elle Serv., Inc.*, 12-CV-2157 (KAM)(VMS), 2013 WL
   829302 (E.D.N.Y. Feb. 11, 2013), *report and recommendation adopted as modified*,
   12-CV-2157 KAM VMS, 2013 WL 829274 (E.D.N.Y. Mar. 6, 2013) ......................... 18, 41

*Gov't Employees Ins. Co. v. Simakovsky*, 14-CV-3775 (KAM)(SMG), 2015 WL
   5821407 (E.D.N.Y. Oct. 5, 2015) .................................................................................. 22

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) ................................ 24, 26, 27

*Hemmerdinger Corp. v. Ruocco*, 12-CV-2650 (WFK)(VMS), 2013 WL 5516194
   (E.D.N.Y. Oct. 7, 2013) ................................................................................................ 25

*In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996) ...................... 40

*Koszkos v. Janton Indus., Inc.*, 15-CV-1700 (SJ)(JO), 2016 WL 4444329 (E.D.N.Y. Aug.
   3, 2016), *report and recommendation adopted sub nom. Koszkos v. Janton Indus.*,
   2016 WL 4444782 (E.D.N.Y. Aug. 23, 2016) .............................................................. 12

*Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243 (E.D.N.Y. 2012) ..... 21

*Luna v. Gon Way Constr., Inc.*, 16-CV-1411 (ARR)(VMS), 2017 WL 835321 (E.D.N.Y.
   Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y.
   Mar. 2, 2017) ............................................................................................................. 11, 14, 17

*Mack Fin. Servs. v. Poczatek*, 10-CV-3799 (JS)(AKT), 2011 WL 4628695 (E.D.N.Y.
   Aug. 30, 2011), *report and recommendation adopted in part*, 2011 WL 4628692
   (E.D.N.Y. Sept. 30, 2011) ............................................................................................ 16

*Mahoney v. Amekk Corp.*, 14–CV-4131 (ENV)(VMS), 2016 WL 6585810 (E.D.N.Y.
   Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y.
   Nov. 7, 2016) ............................................................................................................... 16

*Md. Cas. Co. v. Rosen*, 445 F.2d 1012 (2d Cir. 1971) .................................................... 41

*Mejia v. United States*, 862 F. Supp. 2d 263 (E.D.N.Y. 2012) ....................................... 30

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d.Cir. 2007) ...................... 33

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992).............................................................. 25

*NAP, Inc. v. Shuttletex, Inc.*, 112 F. Supp. 2d 369 (S.D.N.Y. 2000) .............................................. 42

*Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10 (2d Cir. 1993) ................................................ 41

*Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095 (2d Cir. 1993)............................ 41

*Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167 (2d Cir. 2001)................................................... 10

*Pennsylvania Manufacturers Indem. Co. v. Citywide Transit, Inc.*, No. 16-CV-3842
    (KAM)(CLP), 2017 WL 2992099 (E.D.N.Y. June 26, 2017), *report and
    recommendation adopted*, 2017 WL 2992099 (E.D.N.Y. July 13, 2017)............................... 9

*Philip Morris USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669 (S.D.N.Y. 2009) ........... 9

*Phillips 66 Co. v. TNT Petroleum, Inc.*, 15-CV-5938 (DRH)(SIL), 2017 WL 765884,
    (E.D.N.Y. Feb. 2, 2017), *report and recommendation adopted*, 2017 WL 758498
    (E.D.N.Y. Feb. 27, 2017), *order corrected and superseded*, 2017 WL 902533
    (E.D.N.Y. Mar. 2, 2017)..........................................................................................................11, 17

*Pieper v. Benerin, LLC*, 12-CV-3999 (ADS)(AKT), 2013 WL 4506164 (E.D.N.Y. Aug.
    22, 2013) ................................................................................................................................... 25

*Premium Sports Inc. v. Alzate*, 10-CV-1982-CBA, 2011 WL 1240558 (E.D.N.Y. Feb. 25,
    2011), *report and recommendation adopted as modified*, 2011 WL 1258511
    (E.D.N.Y. Mar. 30, 2011)......................................................................................................... 10

*S.E.C. v. McNulty*, 137 F.3d 732 (2d Cir. 1998)....................................................................11, 14

*SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68 (E.D.N.Y. 2006) ................................ 26

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008) ................................. 26

*State Farm Mut. Auto. Ins. Co. v. Cohan*, 09-CV-2990 (JS)(WDW), 2009 WL 10449036
    (E.D.N.Y. Dec. 30, 2009)......................................................................................................... 44

*State Farm Mut. Auto. Ins. Co. v. Cohan*, 09-CV-2990 (JS), 2010 WL 890975 (E.D.N.Y.
    Mar. 8, 2010) *aff'd*, 409 F. App'x 453 (2d Cir. 2011) ........................................................... 40

*State Farm Mut. Auto. Ins. Co. v. Cohan,* 409 F. App'x 453 (2d Cir. 2011) ............................... 10

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Svcs., P.C.*, 04-CV-5045 (ILG), 2008 WL
    4146190 (E.D.N.Y. Sept. 5, 2008) ........................................................................................... 23

*State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212 (E.D.N.Y. 2009).............. passim

*State Farm Mut. Auto. Ins. Co. v. Jamaica Wellness Med., P.C.*, 16-CV-04948 (FB)(SMG), 2019 WL 3330240 (E.D.N.Y. May 31, 2019), *report and recommendation adopted*, 2019 WL 2723548 (E.D.N.Y. July 1, 2019).............................. 44

*State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221 (E.D.N.Y. 2008) ...................................................................................................... 32

*State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94 (E.D.N.Y. 2010) ........................ 36

*Steinberg v. Sherman*, 07-CV-1001 (WHP), 2008 WL 1968297 (S.D.N.Y. May 2, 2008) .......... 40

*Sunny Farms Landfill LLC v. Rail Sols.*, LLC, CV 15-5988 (ADS)(AKT), 2017 WL 4011137 (E.D.N.Y. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 4011242 (E.D.N.Y. Sept. 11, 2017) ................................................................. 10

*Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. C. Downing Enterprises LLC*, 14-CV-323 (ADS)(AKT), 2015 WL 1042481 (E.D.N.Y. Mar. 10, 2015) ........................................ 16

*Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Tri State Constr. & Masonry Corp.,* 15-CV-6686 (RJD)(RER), 2017 WL 2559126 (E.D.N.Y. June 13, 2017) ................ 12

*United Air Lines, Inc. v. United Airways, Ltd*, 09-CV-4743 (KAM)(JMA), 2013 WL 1290930 (E.D.N.Y. Mar. 4, 2013), *report and recommendation adopted*, 2013 WL 1290916 (E.D.N.Y. Mar. 28, 2013)......................................................... 15, 16, 17

*United States v. Applins*, 673 F.3d 59 (2d Cir. 2011) ................................................... 22

*United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995)................................................ 26

*United States v. Bortnovsky*, 879 F.2d 30 (2d Cir. 1989) ........................................... 24

*United States v. Busacca*, 936 F.2d 232 (6th Cir. 1991) ............................................ 26

*United States v. O'Connor*, 910 F.2d 1466 (7th Cir. 1990)........................................ 26

*United States v. RW Prof. Leasing Servs. Corp.*, 452 F. Supp. 2d 159 (E.D.N.Y. 2006)............. 32

*United States v. Silverman*, No. 15-CV-22 (DRH)(SIL), 2017 WL 745732 (E.D.N.Y. Feb. 3, 2017), *report and recommendation adopted*, 2017 WL 744573 (E.D.N.Y. Feb. 24, 2017) ...................................................................................................... 14

*United States v. Williams,* 11-CV-3593 (NGG)(RLM), 2012 WL 170106 (E.D.N.Y. Jan. 19, 2012)............................................................................................................. 9

*Universal Acupuncture Pain Services v. State Farm Mut. Auto Ins. Co.*, 196 F. Supp. 2d 378 (S.D.N.Y. 2002) ............................................................................................. 42

*W & D Imports, Inc. v. Lia*, 11-CV-4144 (SJF)(ETB), 2013 WL 1750892 (E.D.N.Y. Apr. 22, 2013) *aff'd*, 13-CV-1983, 2014 WL 1465383 (2d Cir. Apr. 16, 2014).............................. 26

*Wood v. Inc. Vill. of Patchogue of New York*, 311 F. Supp. 2d 344 (E.D.N.Y. 2004)................... 20

Statutes

18 U.S.C. § 1341 ........................................................................................................... 23, 24

18 U.S.C. § 1961 ................................................................................................... 4, 20, 22, 23

18 U.S.C. § 1962 ............................................................................................................. 19, 20

18 U.S.C. § 1964 ............................................................................................................. 19, 38

28 U.S.C. § 2201 ..................................................................................................................... 41

N.Y. C.P.L.R. § 5001 ............................................................................................................. 40

Rules

12 N.Y.C.R.R. § 442.2 ............................................................................................................. 6

Fed. R. Civ. P. 4 .................................................................................................................... 13

Fed. R. Civ. P. 55 .................................................................................................... 1, 8, 12, 37

Local Federal Rule 55.1 .......................................................................................................... 1

Local Federal Rule 55.2 .......................................................................................................... 1

## INTRODUCTION

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and Northbrook Indemnity Company ("Plaintiffs") respectfully submit this memorandum of law in support of their application for entry of a default judgment pursuant to Rules 55.1 and 55.2 (a) of the Local Federal Rules for the Southern and Eastern Districts of New York and Rule 55 (b) of the Federal Rules of Civil Procedure ("F.R.C.P.") against defendants Artur Avetisyan ("Avetisyan"), Alexandra Matlyuk ("Matlyuk"), Gregory Miller ("Miller") (together, the Individual Defendants"), Almatcare Medical Supply Inc. ("Almatcare Medical Supply"), AVA Custom Supply, Inc. ("AVA Custom Supply"), Daily Medical Equipment Distribution Center, Inc. ("Daily Medical"), and IG & NAT Services, Inc. ("IG&NAT Services") (collectively, the "Defaulted Defendants") for their failure to answer or otherwise defend against the above captioned action.

## PRELIMINARY STATEMENT

Notwithstanding that Plaintiffs' Original Complaint in the instant matter was served upon all of the Defaulted Defendants over two years ago, and that Plaintiffs' First Amended Complaint (hereinafter the "Complaint" or the "Amended Complaint") was filed just short of two years ago, [1] each and every one of the Defaulted Defendants has failed to appear, answer or defend against

---

1. Plaintiffs commenced this action by filing a complaint on July 19, 2017 (hereinafter the "Original Complaint"). *See* Civil Docket Sheet ("ECF") No. 1.  Service on the last of the Defaulted Defendants was complete on or about November 27, 2017. *See* ECF No. 111. Copies of the Affidavits of Service upon each Defaulted Defendant are annexed to the McKenney Declaration ("McKenney Decl.") as Exhibits "3" through "9."  Thereafter, Plaintiffs filed the Amended Complaint on May 9, 2018, *see* ECF No. 157, correcting an error in the causes of action concerning defendants Gala Trading, Inc. and Igal Blantz, who were inadvertently omitted from the 45th and 48th cause of action. No part of the amendment concerned any of the allegations against the Defaulted Defendants.  In that regard, the Amended Complaint is identical to the Original Complaint with respect to allegations and claims stated against the

this action. Given the Second Circuit's standard of deeming default judgment appropriate when a defendant's default is willful, when the defendant lacks a meritorious defense and when the plaintiff would suffer prejudice if a default judgment is not granted, it is respectfully submitted that default judgment should be entered here against all Defaulted Defendants.

As a threshold matter, there is no doubt that the Defaulted Defendants' defaults were willful. In the Second Circuit, when a defendant fails to respond to a properly served summons and complaint, as is the case here, such conduct is deemed willful for the purposes of default judgment. Second, as a matter of law, when no answer is served, a meritorious defense cannot be established. Third, because Plaintiffs have expended considerable resources in this matter, including, but not limited to, locating and serving Defaulted Defendants, seeking the Clerk's Entries of Default, and filing the instant application, and would be without recourse to seek the relief sought in the Complaint if the instant application were denied, the substantial prejudice that Plaintiffs would suffer if default judgment is not entered against the Defaulted Defendants is apparent.

Moreover, given that by virtue of Defaulted Defendants' failure to appear in this action Plaintiffs' allegations as set forth in the Complaint must be accepted as true, and because the Complaint sets forth detailed allegations establishing the Defaulted Defendants' liability, it is respectfully submitted that the only remaining issue before the Court is the amount of damages owed to Plaintiffs. In that regard, as more fully set forth in the accompanying Declarations of James McKenney ("McKenney Decl.") and Michael Bruno ("Bruno Decl."), Plaintiffs are entitled to receive treble damages, jointly and severally, from the Defaulted Defendants for their violations under the Racketeer Influenced and Corrupt Organizations Act ("RICO" or the "RICO statute")

---

Defaulted Defendants. McKenney Decl. at ¶ 30. A copy of the Amended Complaint is annexed to the McKenney Decl. as Exhibit "2."

compensatory damages and pre-judgment interest. A chart setting forth the damages owed to Plaintiffs by the Defaulted Defendants is below, with amounts calculated in a manner consistent with the modern view of courts in the Second Circuit, permitting plaintiffs to treble RICO damages, and pursuant to New York State law, which allows for recovery of pre-judgment interest. Accordingly, for the reasons set forth herein, Plaintiffs respectfully request that default judgment be entered against the Defaulted Defendants in the following amounts, a more detailed breakdown of which is set forth in Exhibit "25" to the McKenney Decl.:

| Defaulted Defendant | Total Judgment Sought |
|---|---|
| Almatcare Medical Supply, Inc. | $37,884.80 |
| AVA Custom Supply, Inc. | $7,882.33 |
| Daily Medical Equipment Distribution Center, Inc. | $1,162,539.96 |
| IG&NAT Services, Inc. | $403,793.99 |
| Artur Avetisyan | $19,337.93 |
| Alexandra Matlyuk | $101,427.61 |
| Gregory Miller | $2,751,920.64 |

Similarly, in light of the default of Retail Defendants Almatcare Medical Supply, AVA Custom Supply, and Daily Medical (collectively the "Defaulted Retailers"), and as the allegations in the Complaint must be accepted as true, it is respectfully submitted that Plaintiffs' Complaint clearly establishes the existence of an actual case in controversy between Plaintiffs and the Defaulted Retailers regarding the fraudulent billing for durable medical equipment ("DME") and orthotic devices provided to Plaintiffs' insureds. Therefore, because the Defaulted Retailers are deemed to have admitted these allegations, Plaintiffs are entitled to a declaration that they are not obligated to pay the Defaulted Retailers' outstanding fraudulent claims.  Relief identical, or substantially similar to, the relief sought by Plaintiffs in this action has been granted by numerous courts in this district in similar cases involving DME fraud.  *See Gov't Employees Ins. Co. v. IAV Medical Supply, Inc.*, 11-CV-4261 (ARR)(RER), 2013 WL 764735, at *8-9 (E.D.N.Y. Feb. 8,

2013), *report and recommendation adopted*, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013); *Gov't Employees Ins. Co. v. Infinity Health Prods., Ltd.*, 10-CV-5611 (JG)(JMA), 2012 WL 1427796, at *3 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted,* 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012);. *Gov't Employees Ins. Co. v. Jacques*, 14-CV-5299 (KAM)(VMS), 2017 WL 9487191 (E.D.N.Y. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 1214460 (E.D.N.Y. May 31, 2017).

## **FACTUAL BACKGROUND**

Plaintiffs commenced this action on July 19, 2017, *see* Civil Docket Sheet No. 1, alleging, *inter alia,* significant violations of the RICO statute, 18 U.S.C. § 1961, *et seq.*, by, among others, the Defaulted Defendants.  As of the date of this filing, besides the Default Defendants, Plaintiffs have settled with every Defendant in this matter, leaving only the Defaulted Defendants remaining in the action.

The Complaint alleges, among other things, that the owners of numerous DME and orthotic device retail supply companies (generally referred to as the "Retail Owners")—including Defaulted Retail Owner Defendants Avetisyan, Matlyuk and Miller—through their retail DME companies (a.k.a. the "Retailers"), including Defaulted Retailer Defendants Almatcare Medical Supply, AVA Custom Supply, and Daily Medical, participated in the mechanics and execution of massive parallel schemes to defraud in which the Retail Owners, through the Retailers, mailed hundreds of fraudulent insurance claims for DME and orthotic devices to Plaintiffs for reimbursement pursuant to the Comprehensive Motor Vehicle Insurance Reparations Act of New York State, N.Y. Ins. Law § 5101 *et seq.* (popularly known as the "No-fault Law"). *See* Exh. "2" at ¶¶ 1-2, 20, 23, 43, 50, 53, 91, 93, 95, 129, 134, 136, 144, 147, 389-91, 463-65, and 537-39.  The Retail Owners and Retailers are collectively referred to herein as the "Retail Defendants."

As described in the Complaint, the Retail Owners, through the Retailers, exploited the No-fault system by billing Plaintiffs for DME and/or orthotic devices that were never provided, not provided as billed, or if provided, were of inferior quality relative to what was represented in the bills submitted to Plaintiffs to have been provided, and/or were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all Claimants received substantially similar DME and/or orthotic devices.[2] *See id.* at ¶¶ 31, 55, 132, 178, 233, 236, 247.

As set forth within the body of the Complaint, as well as in its numerous exhibits and tables setting forth a representative sample of predicate acts, the Retail Owners, through the Retailers, exploited and abused the No-fault Law through various fraudulent billing practices in which they engaged in a pattern and practice of billing for medically unnecessary DME and/or orthotic devices purportedly provided to claimants pursuant to a kickback scheme through which medical clinics provided fraudulent prescriptions which allowed the Retail Owners, through the Retailers, to bill Plaintiffs and other insurers pursuant to a predetermined protocol, irrespective of need. *Id*. at ¶¶ 3, 5–9, 21-22, 136, 147, 149-51, and 156-60. In addition, the Retail Owners, through the Retailers, routinely submitted bills and supporting documentation to Plaintiffs that misrepresented that: (i) certain DME and/or orthotic devices were reimbursable under the relevant Fee Schedule in existence at the time when, in fact, the Retail Owners, through the Retailers, were utilizing phantom codes for which there was no published Fee Schedule; (ii) the charges reflected on the Retailers' bills for Non-Fee Schedule items was the lesser of their acquisition costs, plus 50% or

---

2. DME generally refers to equipment and/or supplies used for a medical purpose by individuals in their homes, including, among other things, cervical pillows, cervical traction units, cold/hot water circulating pumps, EMS units, hot/cold packs, infrared heat lamps, lumbar cushions, massagers, mattresses and whirlpools. *See* Exh. "2" at ¶ 2. Orthotic devices generally refer to items that are used to support a weak or deformed body member or to restrict or eliminate movement for medical purposes. Such items include, but are not limited to, ankle braces, back braces, cervical collars, knee braces, shoulder braces and wrist braces. *Id.*

the usual and customary price charged to the general public; and/or (iii) the Fee Schedule codes
and descriptions contained in the Retailers' bills corresponded with the equipment purportedly
provided.[3] *Id*. at ¶¶ 37-40, 45, 182, 187-98, 203, and 207 and Compl. Exhs. 2, 8-16, 20-25, 27-31.

Furthermore, the Retail Owners, through the Retailers, also routinely submitted fraudulent
bills to Plaintiffs in support of claims for (i) expensive custom fabricated DME and/or orthotic
devices, despite the fact that to the extent anything was provided, the DME and/or orthotic devices
were cheap, elastic, one-size-fits-all items that were not custom fabricated to the Claimants'
measurements; (ii) expensive custom-fitted DME and/or orthotic devices, such as lumbar
sacral orthoses ("LSOs") as well as knee, wrist, elbow and shoulder braces that were never
provided; (iii) expensive DME and/or orthotic devices that required a fitting and/or adjustment
that they never performed; and (iv) reimbursement of DME and/or orthotic devices in excess of
the relevant Fee Schedule in existence at the time. *See e.g., id*. at ¶¶ 192, 208-237 and Compl.
Exhs. 8-9, 21-31, 34–38, 41–45.  Each of those bills materially misrepresented the nature, cost and
quality of the DME and/or orthotic device purportedly provided, to the extent the items were
provided at all. *Id*. at ¶¶ ¶¶ 22, 43-44, 49, 132, 134, 136, 158, 175, 196-198, 405, 479, 553, 1121,
and 1123.

In addition, in furtherance of the scheme to defraud, one or more of the Retailers also
entered into agreements with one or more wholesale owners (the "Wholesale Owners"), through

---

3. The New York State Medicaid program has established limits on the maximum permissible charges for, among
other things, DME and/or orthotic devices. These limits are listed on the New York State Medicaid DME Services
Fee Schedule (hereinafter the "Fee Schedule"). During the relevant time period in the Complaint, "the maximum
permissible charge for the purchase of durable medical equipment, medical/surgical supplies, orthopedic footwear and
orthotic and prosthetic appliances is the fee payable for such equipment and supplies under the New York State
Medicaid program at the time such equipment and supplies are provided [(the "Fee Schedule Items")]...." *See* 12
N.Y.C.R.R. § 442.2. For items for which the NYS Medicaid program has not established a fee payable for the specific
item (the "Non-Fee Schedule Items"), the NYS Workers' Compensation Board regulation provides that the fee payable
shall be the lesser of: the acquisition cost (i.e., the line item cost from a manufacturer or wholesaler net of any rebates,
discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the
provider plus 50%; or the usual and customary price charged to the general public. 12 N.Y.C.R.R. § 442.2 (a).

their respective corporations, including but not limited to the Defaulted Defendant IG&NAT Services (collectively, the "Wholesalers"), to supply the invoices that certain Retailers used to document inflated and outrageous wholesale costs for the DME and/or orthotic devices, for which they submitted bills to, and were paid by, Plaintiffs.[4] *Id*. at ¶¶ 10-11, 15, 113, 136-38, 147, 166-67, 169, 798, 825. The Wholesale Owners and Wholesalers are collectively referred to herein as the "Wholesale Defendants."

As alleged in the Complaint, the Wholesale Defendants (and No-fault Clinics) provided the means through which the Defaulted Defendants were able to execute their scheme to defraud. *Id*. at ¶¶ 138, 140, 158, 176, and 826. Importantly, the fraudulent wholesale invoices were provided with the knowledge that they would be submitted to insurers, in general, and Plaintiffs in particular, to obtain reimbursement under the No-fault Law in excess of the actual cost of the DME and/or orthotic devices purportedly provided. *Id*. at ¶¶ 137-41, and 144.

Specifically, to the extent the Retailers provided any DME and/or orthotic devices to No-fault claimants, the DME and/or orthotic devices were inexpensive items that were materially misrepresented in the wholesale invoices to be much higher in cost than the actual items provided by the Wholesalers. *Id*. at ¶¶ 10, 138, and 166-68. In that regard, the wholesale invoices provided by the Wholesale Defendants to the Retailers reflected grossly inflated prices, upwards of 10 to 20 times the actual prices that the Retailers paid for the DME and/or orthotic devices that were actually provided to the Claimants. *Id*. at ¶¶ 10 and 169. In other instances, the DME and/or orthotic devices reflected in the wholesale invoices that were purportedly provided by the Wholesale Defendants to the Retailers were, in fact, never actually provided to the Retailers; rather, the Wholesale Defendants created and provided the wholesale invoices to the Retailers to create

---

4. With specific regard to the Wholesalers, the Complaint alleges that IG&NAT Services supplied Med Equipments Service, Inc. *See* Exh. "2" at ¶ 113.

the illusion of a sale. *Id*. at ¶¶ 10 and 171.

In return for the inflated and/or illusory invoices, the Retailers would issue checks to the Wholesale Defendants for the full amount of the inflated wholesale invoice. *Id*. at ¶¶ 11, 138, 172-73, and 270. The Wholesale Defendants would then convert the checks to cash through check cashing establishments, or by other means, and would return the majority of the money to the Retailers while keeping a portion of the profits of the scheme for themselves. *Id*. at ¶¶ 11, 134, 138, 172-74, and 266-70. With the assistance of the Wholesale Defendants, the Retail Owners, through the Retailers, were able to submit thousands of fraudulent insurance claims to Plaintiffs for reimbursement under the No-fault Law; claims that Plaintiffs would not have otherwise paid had they known of their fraudulent nature. *Id.* at ¶¶ 4, 10-11, 129, 403, 409, 477, 483, 551, 557, 811, and 816.

## **STANDARD OF REVIEW**

Rule 55(a) of the F.R.C.P. provides for entry of a default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Rule 55 sets forth a two-step process that first requires the entry of default by the Clerk of Court, and then entry of a default judgment, which is the final action in the case. *See Allstate Ins. Co. v. Abutova*, No. 13 CV 3494 (ARR)(LB), 2017 WL 1185222, at *3 (E.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 1184107 (E.D.N.Y. Mar. 29, 2017); *Allstate Ins. Co. v. Aminov*, No. 11-CV-2391 (MKB), 2014 WL 527834, at *4 (E.D.N.Y. Feb. 7, 2014) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). After a default has been entered against a party, if the party fails to appear or otherwise move to set aside the default judgment pursuant to Fed. R. Civ. P. 55 (c), a default judgment may be entered pursuant to Fed. R. Civ. P. 55(b). *See Abutova,* 2017 WL 1185222, at *3; *Aminov,* 2014 WL 527834, at *4. Furthermore, when a default is entered, the defaulting party's failure to defend constitutes an admission of all

well-pleaded factual allegations set forth in the complaint.[5] *See Pennsylvania Manufacturers Indem. Co. v. Citywide Transit, Inc.*, No. 16-CV-3842 (KAM)(CLP), 2017 WL 2992531, at *5 (E.D.N.Y. June 26, 2017) (*citing Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981)), *report and recommendation adopted*, 2017 WL 2992099 (E.D.N.Y. July 13, 2017); *Cazarez v. Atl. Farm & Food Inc.,* No. 15-CV-2666 (CBA)(RML), 2017 WL 3701687, at *2 (E.D.N.Y. May 31, 2017) (*citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017); *Allstate Ins. Co. v. Afanasyev*, No. 12-CV-2423 (JBW)(CLP), 2016 WL 1156769, at *6 (E.D.N.Y. Feb. 11, 2016), *report and recommendation adopted*, 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016); *Gov't Employees Ins. Co. v. AMD Chiropractic, P.C.*, 12-CV-4295 (NG)(JO), 2013 WL 5131057, at *3 (E.D.N.Y. Sept. 12, 2013); *United States v. Williams,* 11-CV-3593 (NGG)(RLM), 2012 WL 170106, at *1-2 (E.D.N.Y. Jan. 19, 2012); *Finkel v. Robco Elec. Corp.,* 11-CV-2353 (NGG)(RLM), 2011 WL 3204603, at *2 (E.D.N.Y. July 27, 2011); *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *Philip Morris USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669, 672 (S.D.N.Y. 2009) (citing *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993)). Moreover, the Court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including (1) "whether the grounds for default are clearly established," *Pennsylvania Manufacturers Indem. Co.*, 2017 WL 2992531, at *4; *Premium Sports Inc. v. Alzate*, 10-CV-1982-CBA, 2011 WL 1240558 (E.D.N.Y. Feb. 25, 2011), *report and recommendation*

---

[5] In addition to the foregoing, on February 18, 2020, in *United States of America v. Miller*, 20-cr-134, in the Southern District of New York, Defendant Miller pleaded guilty to one count of conspiring to commit health care fraud, wherein he owned and operated at least two DME supply companies which fraudulently billed No-fault Insurers upwards of $9,000,000. Similar to Plaintiffs' allegations in the Complaint, the bills submitted by Miller's DME supply companies were fraudulent because, "(a) the bills were for DME that was never provided to patients; (b) the bills were for DME that was medically unnecessary; and (c) the bills were for expensive DME purportedly provided to patients when the DME in fact provided to patients was inexpensive DME." *See* Information, *United States of America v. Miller*, 20-cr-134, S.D.N.Y. (ECF No. 2). A review of New York City Department of Consumer affairs records reveals that the only DME supply company that Miller owns is Daily Medical. McKenney Decl. ¶ 38.

*adopted as modified*, 2011 WL 1258511 (E.D.N.Y. Mar. 30, 2011), (2) "whether the claims were pleaded in the Complaint thereby placing the defendants on notice," *id.* (citing Fed. R. Civ. P. 55 (c)), and (3) "the amount of money potentially involved …." *id.* (citing *Garcia v. Badyna*, No. 13-CV-4021, 2014 WL 4728287, at *4 (E.D.N.Y. Sept. 23, 2014)). *See also Bricklayers Ins. & Welfare Fund v. Vinza Concrete, Inc.*, 15-CV-0080 (AMD)(CLP), 2017 WL 4326562, at *4 (E.D.N.Y. Sept. 11, 2017), *report and recommendation adopted*, 2017 WL 4296729 (E.D.N.Y. Sept. 26, 2017).

In that regard, in determining whether to grant a default judgment, the Court may consider "numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *See Div. 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Co., Inc.,* 270 F. Supp. 3d 593, 2017 WL 4043325, at *1 (E.D.N.Y. 2017) (citing *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2685 (3d ed.1998)). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default. *See State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. App'x 453, 455 (2d Cir. 2011) (*citing Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir. 1993)); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-171 (2d Cir. 2001). These factors are: (1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Sunny Farms Landfill LLC v. Rail Sols.*, LLC, CV 15-5988 (ADS)(AKT), 2017 WL 4011137, at *4 (E.D.N.Y. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 4011242 (E.D.N.Y. Sept. 11, 2017); *Luna v. Gon Way Constr., Inc.*, 16-CV-1411 (ARR)(VMS), 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174

(E.D.N.Y. Mar. 2, 2017); *Phillips 66 Co. v. TNT Petroleum, Inc.*, 15-CV-5938 (DRH)(SIL), 2017 WL 765884, at *3 (E.D.N.Y. Feb. 2, 2017), *report and recommendation adopted*, 2017 WL 758498 (E.D.N.Y. Feb. 27, 2017), *order corrected and superseded*, 2017 WL 902533 (E.D.N.Y. Mar. 2, 2017) (with respect to awarded prejudgment interest); *Boards of Trustees of Ins., Annuity, & Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.*, 12-CV-3363 (KAM)(VMS), 2014 WL 674098 (E.D.N.Y. Feb. 3, 2014) (citing *Swarna v. Al–Awadi*, 622 F.3d 123, 142 (2d Cir. 2010)); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) Applying the foregoing three factors to the present case, Plaintiffs respectfully submit that default judgment should be entered against the Defaulted Defendants.

With respect to damages, the movant must prove that the damages sought relate to and flow from the injuries pleaded. *See Gesualdi v. Reid,* 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016*), motion for relief from judgment denied sub nom. Gesualdi v. J.H. Reid, Gen. Contractor,* 14-CV-4212 (ADS)(GRB), 2017 WL 752157 (E.D.N.Y. Feb. 27, 2017); *Circuito Cerrado, Inc. v. Morgalo Corp.*, 10-CV-3338 (JS)(AKT), 2011 WL 3919411, at *4 (E.D.N.Y. July 29, 2011), *report and recommendation adopted*, 2011 WL 3919679 (E.D.N.Y. Sept. 7, 2011). The moving party need only prove "that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Circuito Cerrado, Inc.*, 2011 WL 3919411, at *4; (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 159 (2d Cir. 1992)); *see also Gesualdi,* 198 F. Supp. 3d at 218. Moreover, the "moving party is entitled to all reasonable inferences from the evidence it offers. *Circuito Cerrado, Inc.*, 2011 WL 3919411, at *4 (citing *Au Bon Pain Corp.*, 653 F.2d at 64).

In some cases, the Court may find it appropriate to conduct a hearing in order to determine the amount of damages. *See id.*, at *4. However, the Second Circuit has long held that a hearing is not required where there is a basis for the damages sought such as detailed affidavits and/or other

documentary evidence. *See Cummings v. HCHC, Inc.*, 17-CV-3907 (BMC), 2017 WL 4162306, at *1 (E.D.N.Y. Sept. 19, 2017) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)); *AW Indus., Inc. v. Sleep Well Mattress, Inc.*, 07-CV-3969 (SLT)(JMA), 2009 WL 485186, at *3 (E.D.N.Y. Feb. 26, 2009) (same); *see also Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Tri State Constr. & Masonry Corp.,* 15-CV-6686 (RJD)(RER), 2017 WL 2559126, at *3 (E.D.N.Y. June 13, 2017); *Koszkos v. Janton Indus., Inc.*, 15-CV-1700 (SJ)(JO), 2016 WL 4444329, at *2 (E.D.N.Y. Aug. 3, 2016) (citing *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1991)), *report and recommendation adopted sub nom. Koszkos v. Janton Indus.*, 2016 WL 4444782 (E.D.N.Y. Aug. 23, 2016).

## ARGUMENT

## I.

## THE DEFAULTED DEFENDANTS HAVE FAILED TO PLEAD OR OTHERWISE DEFEND AGAINST THE ACTION

As noted above, Rule 55(a) of the F.R.C.P. provides for the entry of default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend against the action. After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the Court may issue a default judgment. In the present case, notwithstanding that the last of the Defaulted Defendants was served with process more than twenty-eight months ago, *see* Docket No. 111, and the Amended Complaint was filed more than twenty-two months ago, they all have failed to either appear, answer, or defend against the action.

As indicated in the affidavits of service annexed to the McKenney Decl. as Exhibits "3," through "6," Plaintiffs served all of the corporate Defaulted Defendants in accordance with

F.R.C.P. 4 (h) by serving copies of the Original Complaint upon a person and/or authorized agent of each corporate Defaulted Defendant. Similarly, Plaintiffs served all of the individual Defaulted Defendants in accordance with F.R.C.P. 4(e) by one or more of the following methods: serving a copy of the Original Complaint upon the individual Defaulted Defendant personally; leaving a copy at the individual's dwelling or usual place of abode with a person of suitable age and discretion; leaving a copy with a person authorized to accept service on behalf of the individual; affixing a true copy to the individual's door and mailing a copy to the individual's last known address; and/or serving the individual via publication pursuant to court order and in accordance with relevant state law and procedures. *See* McKenney Decl. Exhibits "7," "8," and "9."

As set forth in the McKenney Declaration, each of the Defendants failed to appear or otherwise move in response to the Original Complaint within the time set forth in Rule 12 of the Federal Rules of Civil Procedure or any extension granted by the Court. *See* McKenney Decl. ¶¶ 27-29. Following the non-appearances of the Defaulted Defendants, on May 9, 2018, Plaintiffs filed the Amended Complaint, which is identical in every regard to the Original Complaint with respect to allegations and claims stated against the Defaulted Defendants. *Id.* at ¶ 30.

As required by the Local Rules of the Eastern District of New York (the "Local Rules"), Plaintiffs requested that the Clerk of the Court enter a notation of default, certifying that that the Defaulted Defendants had not filed an answer or otherwise defended against the Amended Complaint, in each instance, more than twenty-one (21) days following Plaintiffs' filing of the Amended Complaint, which the Clerk of the Court did. By obtaining entry of default, *see* Exhs. "10" through "16," Plaintiffs satisfied the first part of the two-step process to obtain default judgment against the Defaulted Defendants.

## II.

### BY VIRTUE OF THEIR NON-APPEARANCE, DEFAULTED DEFENDANTS HAVE ADMITTED THE FACTUAL ALLEGATIONS OF PLAINTIFFS' COMPLAINT

In determining whether to grant a default judgment, the Court should consider (1) whether the defendant's default was willful, (2) whether the defendant has a meritorious defense to plaintiff's claims, and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. In consideration of these three factors, it is respectfully submitted that default judgment should be entered against the Defaulted Defendants.

#### A. The Defaults Were Willful

There is no doubt that Defendants' defaults were willful. The Second Circuit has interpreted "willfulness" in the context of a default as conduct that is more than merely negligent or careless, *McNulty,* 137 F.3d at 738, and when, as here, defendants are properly served with a summons and complaint and fail to respond, their conduct is deemed willful for the purposes of default judgment. *See, e.g., Luna*, 2017 WL 835321, at *4 (defendant's failure to respond to the complaint sufficiently shows willfulness); *Gesualdi v. Magnolia Pro Trucking Inc.*, 11-CV-4082 (ADS)(AKT), 2012 WL 4036119, at *3 (E.D.N.Y. Aug. 20, 2012), *report and recommendation adopted sub nom. Gesualdi v. Magnolia PRO Trucking Inc.*, 2012 WL 4035779 (E.D.N.Y. Sept. 11, 2012) (same) (citation omitted); *see also United States v. Silverman*, No. 15-CV-22 (DRH)(SIL), 2017 WL 745732, at *3-4 (E.D.N.Y. Feb. 3, 2017), *report and recommendation adopted*, 2017 WL 744573 (E.D.N.Y. Feb. 24, 2017)) (unexcused or unexplained failure to answer complaint will itself demonstrate willfulness) (citations omitted); *Feel Better Kids, Inc. v. Kids in Need, Inc.*, 06-CV-0023 (DRH)(AKT), 2012 WL 4483000, at *4 (E.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012) (unexplained failure to answer complaint typically sufficient to demonstrate willfulness) (citations omitted); *Gov't*

*Employees Ins. Co. v. Damien*, 10-CV-5409 (SLT)(JMA), 2011 WL 5976071, at *3 (E.D.N.Y. Nov. 3, 2011), *report and recommendation adopted*, 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2010) (proper service of summons and complaint coupled with failure to respond supports a conclusion that default was willful); *United Air Lines, Inc. v. United Airways, Ltd*, 09-CV-4743 (KAM)(JMA), 2013 WL 1290930, at *5 (E.D.N.Y. Mar. 4, 2013), *report and recommendation adopted*, 2013 WL 1290916 (E.D.N.Y. Mar. 28, 2013) (although plaintiff properly served complaint on defendants, they continually failed to appear and therefore defaulted willfully).

As indicated in Section I, *supra*, each Defaulted Defendant was properly served and therefore, there can be no dispute that they willfully failed to respond to the Complaint by failing to answer it or by abandoning any defense to the action. *See Allstate Ins. Co. v. Nazarov*, 11-CV-6187 (PKC)(VMS), 2015 WL 5774459, at *8 (E.D.N.Y. Sept. 30, 2015); (failure to answer or respond in any way to properly served pleadings establishes willfulness of default); *Gov't Employees Ins. Co. v. Infinity Health Prods., Ltd.*, 10-CV-5611 (JG)(JMA), 2012 WL 1427796, at *3 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted,* 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012) (where the defaulting defendants were properly served with a copy of the summons and complaint and have failed to respond, that failure supports a conclusion that the default was willful); *Allstate Ins. Co. v. Bogoraz*, 10-CV-5286 (SJF)(ETB), 2012 WL 1655552, at *4 (E.D.N.Y. May 9, 2012) (willful conduct found where party was aware of case for over one year but took virtually no steps to defend himself against action, failed to file or serve an answer to complaint, failed to oppose entry of default, failed to appear at court conferences, and failed to monitor progress of case); *Buffalo Laborers Welfare Fund v. Elliott*, No. 04-CV-516S, 2008 WL 907385, at *3 (W.D.N.Y. Mar. 31, 2008) (concluding that where defendant answered the complaint but then failed to respond to discovery, comply with court orders, maintain contact with

counsel, retain new counsel, or participate in any other aspect of the case, defendant had consciously abandoned his defense of the matter, a willful act justifying the Court in striking defendant's answer and entering default against him).

### B.  The Defaulted Defendants Do Not Have Any Meritorious Defenses

The second factor for the Court to consider in determining if default judgment is appropriate is whether the Defendants have a meritorious defense. In that regard, when a defendant fails to answer the complaint, a meritorious defense cannot be established. *See, e.g.*, *Mahoney v. Amekk Corp.*, 14–CV-4131 (ENV)(VMS), 2016 WL 6585810, at *6 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) ("Defendants cannot establish a meritorious defense since, by failing to appear in this action, they are unable to present any evidence regarding a defense."); Nazarov, 2015 WL 5774459, at *9 (same); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. C. Downing Enterprises LLC*, 14-CV-323 (ADS)(AKT), 2015 WL 1042481, at *6 (E.D.N.Y. Mar. 10, 2015) (where no answer is filed, "a court is unable to make a determination as to whether the defendant has a meritorious defense to the plaintiff's allegations, which weighs in favor of granting a default judgment"); *Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation & Scholarship Funds v. Darken*, 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012), *report and recommendation adopted sub nom. Trustees of Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation & Scholarship Funds v. Darken Arch. Wood*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012) (same); *Mack Fin. Servs. v. Poczatek*, 10-CV-3799 (JS)(AKT), 2011 WL 4628695 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011) (same); *United Air Lines, Inc.,* 2013 WL 1290930, at *5 (same); *see also Infinity Health Prods.,* 2012 WL 1427796, at *3 (default judgment

appropriate when defaulting defendants failed to present any defense); *Damien*, 2011 WL 5976071, at *3 (same). There is no question that the Defaulted Defendants were all properly served with the Original Complaint, and their failures to serve an Answer establish the absence of a meritorious defense for the purposes of default judgment.

### C.  Plaintiffs Will Suffer Substantial Prejudice If A Default Judgment Is Not Entered Against the Defaulted Defendants

Third, Plaintiffs will suffer substantial prejudice if a default judgment is not entered against the Defaulted Defendants. As a threshold matter, since Plaintiffs have established that Defaulted Defendants' defaults were willful, and that Defaulted Defendants do not have any meritorious defenses, a strong showing of prejudice is not necessary. *See Bogoraz*, 2012 WL 1655552, at *6 (citing *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 244 (2d Cir. 1994)). In any event, notwithstanding the low threshold for a showing of prejudice that Plaintiffs are required to meet, the facts demonstrate that Plaintiffs would indeed suffer substantial prejudice if default judgment were not entered against the Defaulted Defendants.

If the Court were to deny Plaintiffs' application for Default Judgment, Plaintiffs would be without recourse to seek the relief sought in the Complaint, as there are no additional steps available to secure relief in this Court. *See, e.g., D & A Bus Co., Inc.*, 2017 WL 4043325 (finding prejudice where ignoring default would leave "no additional steps available to secure relief in this Court") (citation omitted); Nazarov, 2015 WL 5774459, at *8 (same); *Luna*, 2017 WL 835321, at *4; *Phillips 66 Co.,* 2017 WL 765884, at *5; *United Air Lines, Inc.,* 2013 WL 1290930, at *5 (finding prejudice where the denial of a default judgment motion would leave plaintiffs without any additional recourse to secure relief through the Court); *Feel Better Kids, Inc.,* 2012 WL 4483000, at *10 (same); *see also Gov't Employees Ins. Co. v. Li-Elle Serv., Inc.*, 12-CV-2157 (KAM)(VMS), 2013 WL 829302, at *4 (E.D.N.Y. Feb. 11, 2013), *report and recommendation*

*adopted as modified*, 12-CV-2157 KAM VMS, 2013 WL 829274 (E.D.N.Y. Mar. 6, 2013). Indeed, in light of the Defaulted Defendants' failure to respond, requiring Plaintiffs to take any additional steps prior to a determination on the merits would be unfairly prejudicial to Plaintiffs. *See, e.g., Damien*, 2011 WL 5976071, at *3 (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02–CV–9044, 2003 WL 1960584, at *3 (S.D.N.Y. Apr. 25, 2003)).

Moreover, because Plaintiffs have expended considerable resources litigating this matter, including but not limited to serving defendants, seeking and obtaining the Clerk's Entries of Default, and filing the instant application against the Defaulted Defendants, and because Plaintiffs would be without recourse to seek the relief sought in the Complaint if the instant application were denied, the substantial prejudice which Plaintiffs would suffer if default judgment is not entered against the Defaulted Defendants is not in doubt. Thus, it is respectfully submitted that the only issue left for the Court to consider is whether the Complaint sets forth viable Claims for Relief against the Defaulted Defendants. In that regard, as set forth herein, the Complaint's well-pled allegations establish that Plaintiffs are entitled to Default Judgment on the Complaint's RICO, common law fraud, and unjust enrichment Claims for Relief.

## III.

### THE COMPLAINT SETS FORTH VALID CLAIMS FOR RELIEF

Having established that the Defaulting Defendants' defaults were willful, that they do not have any meritorious defenses, and that Plaintiffs would be prejudiced if the instant motion were denied, the Court must determine if Plaintiffs' allegations as set forth in the Complaint state valid claims. *See Cazarez*, 2017 WL 3701687, at *2 ("[I]t remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.") (citation omitted); *Gesualdi*, 198 F.Supp. 3d at 217 ("[w]ith respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it

remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action"); *Bounty Fresh, LLC v. J N.Y. Produce, Inc.*, 12-CV-2415 (FB)(JO), 2014 WL 1010833, at *2 (E.D.N.Y. Mar. 14, 2014) (citing *Finkel*, 577 F.3d at 84) (same)). It is respectfully submitted that they do.

### A.  Plaintiffs' Complaint States Valid Claims for Relief with Respect to Plaintiffs' RICO Claims.

With respect to the Complaint's Thirteenth, Twenty-First, Twenty-Ninth, and Fifty-Seventh Claims for Relief, Section 1964(c) of the RICO statute prescribes a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964 (c). In other words, a substantive RICO violation requires a plaintiff to show: "(1) a violation of the statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Abutova*, 2017 WL 1185222, at *4 (citing *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted)); *Aminov*, 2014 WL 527834, at *4 (same); *Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 408 (E.D.N.Y. 2013) (quoting *DeFalco v. Vernas*, 244 F.2d 286, 305 (2d Cir. 2001)). In order to satisfy the first prong of this analysis, a violation of the statute, a plaintiff must show "(i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity." *DeFalco v. Vernas*, 244 F.2d 286, 306 (2d Cir. 2001) (quoting *Sedima S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 495 (1985)). The Second Circuit has further held that a RICO plaintiff establishes a violation of 18 U.S.C. § 1962 (c) if it shows "(i) that the defendant (ii) through the commission of two or more acts (iii) constituting a 'pattern' (iv) of 'racketeering activity' (v) directly or indirectly invest[ed] in, or maintain[ed] an interest in, or participate[d] in (vi) an 'enterprise' (vii) the activities of which affect[ed] interstate or foreign commerce." *Abutova*, 2017 WL 1185222, at *4 (citing *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.,* 661 F. Supp. 2d 218, 244 (E.D.N.Y. 2009)*, aff'd sub nom.*

*RxUSA Wholesale Inc. v. Alcon Labs.,* 391 Fed.Appx. 59 (2d Cir. 2010) (citation omitted)); *Nazarov,* 2015 WL 5774459, at * 10; *Aminov,* 2014 WL 527834, at *4 (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)); *see also Allstate Ins. Co. v. Valley Physical Med.& Rehab., P.C.,* 05-CV-5934 (DRH)(MLO), 2009 WL 3245388, at *3 (E.D.N.Y. Sept. 30, 2009) (noting elements for RICO Violation in context of No-fault billing fraud case); *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 227 (E.D.N.Y. 2009) (same). As indicated below, the Complaint clearly sets forth valid Claims for Relief on its RICO Claims for Relief with respect to all Defaulted Defendants named therein.

### i.    RICO Person

Plaintiffs' Complaint alleges that each of the Defaulted Retail Owners and Defaulted Wholesale Defendants are RICO "persons" and therefore subject to liability for violations of the RICO statute. A RICO person is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961. The courts have determined that in a cause of action under 18 U.S.C. § 1962(c), the "person" and the "enterprise" may not be one and the same entity; it is permissible, however, that the RICO person also be one of a number of members of the RICO enterprise. *See Wood v. Inc. Vill. of Patchogue of New York*, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004) (citing *Cullen v. Margiotta*, 811 F.2d 698, 730 (2d Cir. 1987) *cert. denied*, 483 U.S. 1021 (1987))*.* Here, Plaintiffs have clearly satisfied the RICO pleading requirements with respect to the Defaulted Defendants as named "persons." As identified in the Complaint, with respect to Counts Thirteen, Twenty-One, Twenty-Nine, and Fifty-Seven, each Defaulted Retail Owner and Defaulted Wholesale Defendant is an "individual or entity capable of holding a legal or beneficial interest in property," thereby satisfying the definition and pleading requirements of a RICO "person" as that term has been defined in the federal statute. Moreover, the Defaulted Retail Owners and Defaulted

Wholesale Defendants are entities separate and distinct from the RICO enterprises alleged in the Complaint, thereby satisfying the pleading requirements of a RICO "person."

In that regard, in the seminal case of *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), the Supreme Court held that in order for a plaintiff to satisfy the person-enterprise distinctness requirement, the RICO statute requires no more than a *formal legal distinction* between the RICO person and the RICO enterprise, and where, as here, the enterprises alleged are corporations, the RICO person/enterprise distinction requirement is satisfied simply by naming, as RICO persons, the individuals who engage in or conduct a pattern of racketeering activity through the corporate enterprise. *See Abutova,* 2017 WL 1185222, at *4 (citing *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 163)( "To satisfy this distinction, plaintiffs need only show a 'formal legal distinction' between the individual defendants and the RICO enterprise."); *Aminov*, 2014 WL 527834, at *5, n.9 (requirement satisfied where plaintiff "adequately explained specifically how the individual defaulting defendants, independent of the enterprise corporations, perpetuated a fraud through the various entity defaulting defendants") (citing *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 163).

Indeed, in light of *King* and its progeny, courts within this District have uniformly found actionable substantive RICO claims in cases where a corporation is alleged as the RICO enterprise and the corporation's owners, employees and/or agents are alleged as the RICO defendants who engaged in a pattern of fraudulent No-fault billing. *See, e.g., Abutova,* 2017 WL 1185222, at *4; *Aminov*, 2014 WL 527834, at *5, n.9; Nazarov, 2015 WL 5774459, at *11-12; *AMD Chiropractic, P.C.,* 2013 WL 5131057, at *6; *see also Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 274-75 (E.D.N.Y. 2012) ("RICO's distinctness rule is satisfied 'when a corporate employee

[the RICO defendant] unlawfully conducts the affairs of the corporation" alleged to constitute the RICO enterprise'") (quoting *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 166)).

### ii.    RICO Enterprise

The RICO statute defines an "enterprise" as "an individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961 (4). The Second Circuit has explained that a "RICO enterprise 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that various associations function as a continuing unit." *United States v. Applins*, 673 F.3d 59, 73 (2d Cir. 2011) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *see also Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 367-68 (E.D.N.Y. 2012) ("[a]lthough the [RICO] statute does not define the outer boundaries of what constitutes an enterprise, it is clear that partnerships, corporations, and 'other legal entit[ies],' as well as associations-in-fact, may be RICO enterprises").

Here, the Complaint plainly includes well-pled allegations of the existence of RICO enterprises. The Complaint alleges that the Retailers described in the Complaint's RICO Claims for Relief are corporate entities through which the Defaulted Defendants engaged in patterns of racketeering activity. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (finding enterprise requirement most easily satisfied when alleged enterprise is formal legal entity); *see also Gov't Employees Ins. Co. v. Simakovsky,* 14-CV-3775 (KAM)(SMG), 2015 WL 5821407, at *8 (E.D.N.Y. Oct. 5, 2015) (citing *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F.Supp.2d 243, 274 (E.D.N.Y. 2012) (citation omitted) (finding enterprise requirement met with respect to legal entities through which owners engaged in a pattern of No-fault insurance fraud); *Gov't Employees Ins. Co. v. David Sanni-Thomas, D.O.*, 13-CV-4966 (MKB)(SMG), 2015 WL 5692875, at *7 (E.D.N.Y. Sept. 4, 2015), *report and recommendation adopted sub nom. Gov't*

*Employees Ins. Co. v. Zemlyansky*, 2015 WL 5692899 (E.D.N.Y. Sept. 27, 2015) (same)); *see also, Cedric Kushner Promotions, Ltd.,* 533 U.S. at 164 (employee who conducts affairs of corporation through illegal acts comes within RICO statue). With respect to the RICO counts in the Complaint, each count properly alleges that the Retailers are legal entity enterprises that are separate from the defendants named in that cause of action.

### iii.    Pattern of Racketeering Activities

Plaintiffs have also sufficiently pled facts demonstrating a pattern of racketeering activity, which, as noted above, is a requirement of a private RICO action. "Racketeering activity" is defined to include mail fraud, 18 U.S.C. § 1961 (1), and a "pattern of racketeering activity" is defined as two or more acts of racketeering activity that occur within 10 years of one another. 18 U.S.C. § 1961(5); *see Allstate Ins. Co. v. Howell*, No. 09-CV-4660 (RJD)(VVP), 2013 WL 5447152, at *5 (E.D.N.Y. Sept. 30, 2013) (federal mail fraud statute proscribes "use [of] the mails in the execution of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises'") (quoting 18 U.S.C. § 1341( a)). As this Court explained in *State Farm Mut. Auto. Ins. Co. v. CPT Med. Svcs., P.C.*, in order to prove mail fraud, a plaintiff must allege: (1) the existence of a scheme to defraud involving money or property; (2) the use of the mails or wires in furtherance of the scheme;[6] and (3) a specific intent to defraud, either by devising, participating in, or abetting the scheme. 04-CV-5045 (ILG), 2008 WL 4146190, at *11 (E.D.N.Y. Sept. 5, 2008 (citations omitted). In addition to the minimum number of two acts that must be pled to establish a mail fraud pattern, plaintiff must also establish

---

6. This Court has further explained that in order to show that a defendant used the mails in furtherance of a scheme to defraud, a plaintiff "must show: 1) that the defendants caused the mailing or use of the wires, namely that they must have acted with knowledge that the use of the mails will follow in the ordinary conduct of business, or where such use can reasonably be foreseen, even if not actually intended, and 2) that the mailing . . . was for the purpose of executing the scheme or, in other words, incidental to an essential part of the scheme." *CPT Med. Services*, 2008 WL 4146190, at *11 (citing *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, 04-CV-2934 (ERK), 2005 WL 3710370, at *10 (E.D.N.Y. Feb. 22, 2005)).

that these "predicate acts" are "related," and that they amount to or pose a threat of continued criminal activity, as it is "*continuity plus relationship* which combines to produce a pattern." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) (emphasis in original) (quoting S. Rep. No. 91–617, 158 (1969)).

Moreover, it is not necessary that the particular defendant have created or sent the mailing in question, so long as the defendant "'acted with knowledge that the use of the mails will follow in the ordinary course of business,' or that 'such use can reasonably be foreseen, even though not actually intended.'" *Abramovich v. Oliva*, 11-CV-1755 (ERK)(SMG), 2012 WL 3597444, at *10 (E.D.N.Y. Aug. 20, 2012) (*quoting United States v. Tocco*, 135 F.3d 116, 124 (2d Cir.1998) (citation omitted)). Insurance fraud schemes, by their very nature, involve the mailing of fraudulent insurance claims and the receipt by mail of the proceeds of those claims. Accordingly, in cases involving insurance fraud schemes, such as the ones described in the Complaint, the use of the mails is invariably found to be foreseeable. *See, e.g., Allstate Ins. Co. v. Smirnov*, 12-CV-1246 (CBA), 2013 WL 5407224, at *6 (E.D.N.Y. Aug. 21, 2013); *Abramovich,* 2012 WL 3597444, at *10; see also *United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989) (collecting cases from First, Sixth, Seventh and Eighth Circuits wherein courts construed mail fraud statute in context of schemes to defraud insurance companies). Applying these principles to the instant Complaint, it is indisputable that the Defaulting Defendants' mail fraud, as pleaded by Plaintiffs, constitutes a pattern of racketeering activity as defined by the RICO statute. *See Aminov*, 2014 WL 527834, at *5 ("[b]y mailing multiple fraudulent claims [for insurance reimbursement], the defaulting defendants violated the federal mail fraud statute, 18 U.S.C. § 1341, therefore satisfying the two predicate acts necessary for a pattern of racketeering under RICO").

In order to satisfy the "continuity" prong, it must be demonstrated that either (1) the predicate acts occurred over a substantial period of time ("closed-ended" continuity), or (2) the acts establish a threat of continued racketeering activity in the future ("open-ended" continuity). *See Hemmerdinger Corp. v. Ruocco*, 12-CV-2650 (WFK)(VMS), 2013 WL 5516194, at *12 (E.D.N.Y. Oct. 7, 2013) ("Closed ended continuity refers to 'a closed period of repeated conduct,' whereas open-ended continuity refers to 'past conduct that by its nature projects into the future with a threat of repetition.'") (quoting *H.J., Inc.*, 492 U.S. at 241-42). With respect to closed-ended continuity, the Second Circuit has held that predicate acts occurring over a period of two or more years (as is the case with the enterprises alleged in the Complaint) certainly satisfy the temporal requirements of closed-ended continuity. *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992) (series of predicate acts extending over two-year period constitutes closed-ended pattern).[7] A plaintiff seeking to establish "open-ended continuity," on the other hand, "need not . . . show[ ] that predicate acts were engaged in over an extended period of time . . . . [i]nstead, [a] plaintiff must show that there was a threat of continuing criminal activity 'extending indefinitely into the future.'" *Ferri v. Berkowitz*, 678 F. Supp. 2d 66, 74 (E.D.N.Y. 2009) (quoting *H.J., Inc.*, 492 U.S. at 242-43)). Open-ended continuity "exists where a defendant's 'predicate acts represent an ongoing way of conducting [the defendant's] business.'" *Pieper v. Benerin, LLC*, 12-CV-3999 (ADS)(AKT), 2013 WL 4506164, at *8 (E.D.N.Y. Aug. 22, 2013) quoting *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 406 (S.D.N.Y. 2013)). Under an open-ended scheme, predicate acts committed over even very short periods of time may be sufficient to form a RICO pattern where the acts pose a threat of continuing criminal activity. *See H.J. Inc.*, 492 U.S.

---

[7] While "continuity is primarily a temporal concept," the Second Circuit has also explained that courts should consider "other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes . . . ." *First Capital Asset Mgmt.*, 385 F.3d at 181 (quoting *DeFalco*, 244 F.3d at 321)).

at241-43; *see also United States v. Aulicino*, 44 F.3d 1102, 1110-14 (2d Cir. 1995) (pattern established through acts occurring over period of some three-and-a-half months); *United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991) (predicate acts committed over two-month period); *United States v. O'Connor*, 910 F.2d 1466, 1468 (7th Cir. 1990) (same). Moreover, where, as here, the purpose of the alleged enterprises is "primarily or inherently unlawful," courts will presume that the requisite threat of continuing criminal activity exists. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242-43 (2d Cir. 1999)).

Even where the alleged RICO enterprise is not inherently unlawful, a plaintiff may establish the threat of continued criminality, and thus open-ended continuity, by showing that the "predicate acts are the only way in which the business operated." *SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 80 (E.D.N.Y. 2006) (open-ended continuity adequately pleaded where defendants' home improvement company allegedly only functioned through fraudulent documents and activities); *cf. W & D Imports, Inc. v. Lia*, 11-CV-4144 (SJF)(ETB), 2013 WL 1750892, at *7 (E.D.N.Y. Apr. 22, 2013) *aff'd*, 13-CV-1983, 2014 WL 1465383 (2d Cir. Apr. 16, 2014) (open-ended continuity not established where plaintiffs failed to adequately allege car dealership defendants' predicate acts were "regular way of conducting their business"). Plaintiffs respectfully submit that they have adequately pleaded the existence of open-ended continuity by alleging that the Defendants' RICO enterprises were primarily or inherently unlawful, and/or that such enterprises only functioned by perpetrating the fraudulent schemes alleged in the Complaint.

Further, to satisfy the "relationship" prong of the mail fraud pattern requirement, it must be shown that the predicate acts involve the same or similar purpose, results, participants, victims, and methods of commission or are otherwise interrelated by distinguishing characteristics. *See*

*H.J. Inc.*, 492 U.S. at 240. In the present case, the Complaint alleges that the Defaulted Retail Owners and Defaulted Wholesale Defendants each engaged in a pattern of racketeering activity, participating in and conducting the affairs of the enterprises set forth in the RICO causes of action, the purpose of which was to defraud Plaintiffs into paying fraudulent bills submitted for DME and/or orthotic devices. The Defaulted Retail Owners and the Wholesale Defendants' participation in the alleged racketeering activity included thousands of acts of mail fraud on behalf of the retailer enterprises.[8] These Defendants' activities satisfy the continuity requirements of the mail fraud scheme both because they occurred over a substantial period of time and pose a certain threat to continue into the future if not halted by civil or criminal prosecution.

Moreover, through the numerous specific examples set forth within the body of the Complaint and in the Exhibits and Predicate Act tables annexed thereto, Plaintiffs have shown that:

- The duration of the enterprises alleged relative to Avetisyan, Matlyuk, Miller, and the Wholesale Defendants, spanned periods of time from one to nine years at the time the Complaint was filed;[9]

- On specified dates, Avetisyan, Matlyuk, and Miller, through the Retailers they owned and controlled, mailed to Plaintiffs hundreds of false, fictitious, forged and otherwise fraudulent bills for DME and/or orthotic devices;

- The use of the mails in furtherance of Avetisyan, Matlyuk, Miller, and the Wholesale Defendants' schemes was a foreseeable and intended consequence of the schemes to defraud because these defendants knew that the schemes involved the submission of fraudulent insurance claims and the fraudulent procurement of insurance monies;

---

8. As detailed in the Complaint, each Retailer is a separate enterprise.  Accordingly, the Complaint sets forth separate representative patterns of racketeering activity with respect to each retail enterprise.

9. Specifically, as alleged in the Complaint, the duration of the enterprises for the RICO claims for relief are as follows: Count Thirteen (Almatcare Medical Supply Enterprise): one and a half (1 ½) year period; Count Twenty-One (AVA Custom Supply Enterprise): one (1) year period; Count Twenty-Nine (Daily Medical Enterprise): six (6) year period; and Count Fifty-Seven (Med Equipments Service Enterprise): eight and a half (8 ½) year period.

10. The common law fraud claims are asserted only against the Retail Owner and Retailer Defaulted Defendants. Specifically, the Fourteenth Claim for Relief is asserted against Matlyuk and Almatcare Medical Supply; the Twenty-Second Claim for Relief is asserted against Avetisyan and AVA Custom Supply; and the Thirtieth Claim for Relief is asserted against Miller and Daily Medical.

- Avetisyan, Matlyuk, Miller, and the Wholesale Defendants' schemes constitute continued criminal activity and pose a threat of continued criminal activity in the future;

- Avetisyan, Matlyuk, Miller, and the Wholesale Defendants' criminal conduct involved the same purpose, results, participants, victims and methods of commission;

- Such conduct was knowingly designed to mislead Plaintiffs into believing that the DME and/or orthotic devices were actually and appropriately supplied; and

- Such conduct did indeed mislead Plaintiffs into so believing and resulted in damage to Plaintiffs inasmuch as they paid the fraudulent insurance claims.

*See* Exh. "2" at ¶¶ 393–99, 467-73, 541-547, and 800-06.

With regard to the Wholesale Defendants in particular, the Complaint alleges that the Wholesale Defendants participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, in the form of fraudulent wholesale invoices which grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing. *Id.* at ¶¶ 138 and 798. They did so in exchange for some of the profits of the scheme and with the express knowledge and intent that the medical equipment and documentation they provided were to be used as part of the scheme to submit fraudulent insurance claims to Plaintiffs. *Id.* at ¶¶ 137-41 and 144.

Indeed, as alleged in the Complaint, as a result of all of the Defaulted Defendants' activities, the knowing misrepresentations and/or active concealment of the nature, quality and legitimate cost of items purportedly supplied to No-fault Claimants in the facially valid insurance bills and supporting documentation submitted to Plaintiffs led directly to Plaintiffs' injury: the payment of substantial sums in fraudulent claims. *See Valley Physical Med. & Rehab., P.C.,* 2009 WL 3245388, at *5 (payment of purportedly bogus claims was "foreseeable and natural consequence" of Defendants' predicate acts) (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008)).

### iv. Participation in the Racketeering Activities

As courts in this Circuit have recognized, "[t]he Supreme Court has interpreted the phrase 'to participate . . . in the conduct of [the] enterprise's affairs' to mean participation in the operation or management of the enterprise." *DeFalco*, 244 F.2d at 309 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs, but a defendant's role need not be the primary or even a formal one. *See Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384, 391 (E.D.N.Y. 2008) ("[t]he word 'participate' makes clear that RICO liability is not limited to those with primary responsibility [for the enterprise's affairs], just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise . . . .") (quoting *Reves*, 507 U.S. at 179) (internal citation and quotation marks omitted); *see also Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010) ("[t]hough the Second Circuit has described the 'operation or management' test as establishing a 'relatively low hurdle for plaintiff[ ] to clear' at the pleading stage, 'the RICO defendant must have played *some* part in directing the enterprise's affairs'") (quoting *First Capital Asset Mgmt. Inc.*, 385 F.3d at 176) (internal citation and quotation marks omitted).

Plaintiffs' Complaint clearly sets forth that Avetisyan, Matlyuk, Miller, and the Wholesale Defendants participated in the scheme to defraud. Indeed, Avetisyan, Matlyuk, and Miller are alleged to be masterminds of the scheme, entering into agreements and kickback relationships with one or more of the Wholesale Defendants and others to obtain the necessary equipment and fraudulent documents to enable the Retailer corporate enterprises to submit fraudulent insurance claims for reimbursement under the No-fault Law. The Wholesale Defendants are alleged to have provided the cheap and/or low quality equipment and the false invoices, inflating the actual costs of the equipment, that one or more of the Retail Owners, through one or more of the Retailers,

used to support the fraudulent bills submitted to Plaintiffs, which grossly misrepresented the amounts the Retailers were entitled to receive in reimbursement. Moreover, as part of the money laundering scheme, the Wholesale Defendants are alleged to have converted checks received from one or more of the Retailers as purported payment for the DME and/or orthotic devices allegedly supplied to cash at check cashing establishments, or by other means, and returned the majority of the money to one or more of the Retailers while keeping a portion of the profits of the scheme for themselves. All of the foregoing allegations in the Complaint, taken as true, clearly satisfy the participation element of the RICO claim.

### v.   The Acts Alleged in the Complaint Affect Interstate Commerce

Finally, it is well-settled that a plaintiff need only show a *de minimis* effect on interstate commerce in order to support a RICO claim. *See United States v. Mejia,* 545 F.3d 179, 203 (2d Cir. 2008); *DeFalco v. Bernas,* 244 F.3d 286, 309 (2d Cir. 2001). It is the enterprise, not the individual defendant, that must engage in or affect interstate commerce. *See Mejia v. United States*, 862 F. Supp. 2d 263, 280 (E.D.N.Y. 2012) ("[a]ny conduct by the charged racketeering enterprise 'having even a *de minimis* effect on interstate commerce suffices' to meet this requirement") (quoting *Mejia,* 545 F.3d at 203). Here, Plaintiffs allege that the Retailers, as well as the enterprises in each RICO count, engaged in a scheme to submit fraudulent medical claims to, and affected the business of, Plaintiffs, national insurance companies, and Illinois corporations, with their principal place of business in Northbrook, Illinois. These alleged facts are sufficient to provide the required interstate nexus. *See Grafman*, 655 F. Supp. 2d at 229-30.

### B.  Plaintiffs' Complaint States Valid Common Law Fraud Claims

Under New York law, a plaintiff alleging fraud must state five elements: (i) a material misrepresentation; (ii) made by a defendant knowing that it was false when made; (iii) with the intent to defraud; (iv) upon which plaintiff reasonably relies; and (v) which causes plaintiff injury.

*See Aminov*, 2014 WL 527834, at *5 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)); *Grafman*, 655 F. Supp. 2d at 220 (citations omitted). Given the facts averred in the Complaint, to which the Retailer and Retail Owner defendants have admitted by reason of their default, Plaintiffs respectfully submit that the Complaint's allegations set forth all of the elements of a common law fraud claim.[10]

First, as set forth in Section III(A), *supra,* the Complaint, Predicate Act tables and Exhibits describe in detail the nature of the fraudulent misrepresentations that Defaulted Defendant Retail Owners, through the Retailers, made to Plaintiffs. In that regard, the Complaint specifically alleges that Retailer Owners, through the Retailers, routinely submitted bills to Plaintiffs for reimbursement that fraudulently misrepresented that: certain DME and/or orthotic devices were reimbursable under the relevant Fee Schedule in existence at the time when, in fact, the Retailers were utilizing phantom codes for which there was no published Fee Schedule, the charges reflected on the bills submitted by the Retailers for Non-Fee Schedule items were the lesser of their acquisition costs or the usual and customary price charged to the general public; and/or that the Fee Schedule codes and descriptions contained in the bills submitted by the Retailers corresponded with the equipment purportedly provided. *See, e.g.*, Exh. "2" at ¶¶ 402-11 (Matlyuk and Almatcare Medical Supply), 476-85 (Avetisyan and AVA Custom Supply), 550-59 (Miller and Daily Medical) and Compl. Exh. 2.

Second, the allegations in the Complaint demonstrate that the Defaulted Defendant Retail Owners and Retailers possessed the requisite intent to deceive. It is well-established that a defendant's intent to deceive, also known as scienter, may be shown by pleading facts that "give

---

10. The common law fraud claims are asserted only against the Retail Owner and Retailer Defaulted Defendants. Specifically, the Fourteenth Claim for Relief is asserted against Matlyuk and Almatcare Medical Supply; the Twenty-Second Claim for Relief is asserted against Avetisyan and AVA Custom Supply; and the Thirtieth Claim for Relief is asserted against Miller and Daily Medical.

rise to a strong inference of fraudulent intent." *See Infinity Health Prods.*, 2012 WL 1427796, at

*5 (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) ("strong inference of fraud"

may be established by alleging facts that constitute strong evidence of conscious misbehavior)).

Courts in this Circuit have held that "[w]hen it is clear that a scheme, viewed broadly, is necessarily

going to injure, it can be presumed that the schemer had the requisite intent to defraud." *United*

*States v. RW Prof. Leasing Servs. Corp.*, 452 F. Supp. 2d 159, 173 (E.D.N.Y. 2006) (quoting *United*

*States v. Chacko*, 169 F.3d 140, 148 (2d Cir. 1999) (citing *United States v. Regent Office Supply*

*Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970))). Moreover, the requisite strong inference "may be

established either (a) by alleging facts to show that defendants had both motive and opportunity to

commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness." *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589

F. Supp. 2d 221, 236-37 (E.D.N.Y. 2008) (quoting *Lerner*, 459 F.3d at 291 (citation omitted); *see*

*also RW Prof. Leasing Servs. Corp.*, 452 F. Supp. 2d at 173 (courts should "look at the entire

circumstances of defendant's conduct as an indication of the requisite criminal intent") (quoting

*United States v. Barrett*, 178 F.3d 643, 648 (2d Cir. 1999)).

Here, Plaintiffs' Complaint alleges facts that establish that Defendants Avetisyan, Matlyuk,

and Miller submitted fraudulent bills through their Retail DME corporations and had sufficient

motive and opportunity to commit fraud, and further alleges sufficient circumstantial evidence of

their conscious or reckless behavior. Indeed, the submission of fraudulent bills to the Plaintiff-

insurers that grossly overstate the amounts Defaulted Defendant Retailers, Almatcare Medical

Supply, AVA Custom Supply, and Daily Medical, were entitled to receive under the No-fault Law

through, *inter alia*, (a) the use of phantom codes, misrepresenting the acquisition cost or usual and

customary price of the items they allegedly supplied; or (b) choosing codes that do not in any way

correspond to the substantially cheaper item actually supplied (i.e., upcoding), if supplied at all, clearly demonstrate that these Defendants mailed the bills to Plaintiffs with the specific intent to defraud Plaintiffs. Moreover, the Defaulted Defendant Retailers' concealment, generating and obtaining (from the Wholesale Defendants and No-fault Clinics) false and generic documentation to prevent the insurers from determining the nature and quality of the DME and orthotic devices allegedly supplied when attempting to verify the charges in the fraudulent bills, and deliberate misrepresentation of the codes and amounts of the DME and/or orthotic devices in the bills, while engaging in a complex kickback scheme with their co-conspirators (the Wholesale Defendants and No-fault Clinics), provide sufficient circumstantial evidence of these Defendants' conscious and/or reckless behavior. *See, e.g., Aminov*, 2014 WL 527834, at *5 (plaintiffs sufficiently alleged common law fraud claim where complaint similarly described No-fault scheme involving DME and/or orthotic devices); *Infinity Health Prods.*, 2012 WL 1427796, at *5 (E.D.N.Y. Apr. 6, 2012) (same); *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, 04-CV-2934 (ERK), 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005) (same).

Third, the Complaint's fraud allegations more than sufficiently set forth Plaintiffs' reliance. New York law provides that, when the misrepresentations are exclusively within the other party's knowledge, the wronged party may "rely on them without further investigation or sleuthing." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181-82 (2d.Cir. 2007) (citing *Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946) (Hand, J.)); *see also Barkany Asset Recovery & Mgmt. v. Sw. Sec. Inc.*, 972 N.Y.S.2d 458, 466 (N.Y. Sup. Ct. 2013) ("plaintiff does not have the same duty to investigate when the misrepresentations relate to matter peculiarly within the knowledge of the defrauding party"). Moreover, Courts within this Circuit have uniformly found that No-fault insurers are entitled to rely upon facially valid documents submitted by

healthcare providers, particularly in instances similar to the case at bar where the defendants actively conceal the validity of the insurance claims and misrepresent their entitlement to reimbursement under the No-fault Law. *See, e.g., Aminov*, 2014 WL 527834 at *6 ("[plaintiff insurers] reasonably relied on the accuracy of these claim forms because they paid the defendants more than $2.1 million"); *Grafman*, 655 F. Supp. 2d at 221; *Allstate Ins. Co. v. Halima,* 06-CV-1316 (DLI)(SMG), 2009 WL 750199, at *4 (E.D.N.Y. Mar. 19, 2009) (insurer entitled to rely on facially valid insurance claims); *Liguori,* 589 F. Supp. 2d at 238 (reliance sufficiently stated by allegations of false representations in facially valid claims); *CPT Medical Servs., P.C.,* 2008 WL 4146190, at *13; *Olmecs Med. Supply, Inc*., 2005 WL 3710370, at *14.

Here, the Complaint alleges that Matlyuk, through Almatcare Medical Supply; Avetisyan, through AVA Custom Supply; and Miller, through Daily Medical, submitted facially valid insurance claims that they verified by signing the claim form prescribed by the New York State Department of Financial Services (known as a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or "NYS form NF-3") or a substantially similar form in which they falsely attested to the validity of the charges therein. Indeed, pursuant to Section § 403 of the New York State Insurance Law, the claim forms submitted to Plaintiffs by the Retailers contained the following warning at the foot of the page:

> "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime."

Thus, these defendants knew that every claim form they signed and submitted to Plaintiffs was in fact verified as a true and accurate statement of the charges therein and their entitlement to reimbursement, and that the inclusion of any false information was a fraudulent insurance act,

which was a crime. As noted above, the defendants intentionally misrepresented the codes, prices and DME and/or orthotic devices purportedly supplied in their bills and included false documentation to justify and induce payment from the insurers for their inflated claims for reimbursement pursuant to a complex scheme to defraud the No-fault claims process. Given the lengths these defendants went to commit and conceal their fraud, Plaintiffs justifiably relied on these submissions and the supporting documentation—wholesale invoices, delivery receipts and prescriptions—submitted along with them, when issuing payment.

Lastly, the final element of a claim of common law fraud requires that the plaintiff demonstrate that the fraudulent misrepresentation directly and proximately caused the plaintiff injury. *See Aminov*, 2014 WL 527834, at *6 ("[plaintiff insurers] suffered an injury because they issued payments on behalf of their no-fault clients for procedures and prescriptions that were unnecessary or never provided"); *Grafman*, 655 F. Supp. 2d at 220-21. The Complaint and papers submitted in support of the instant motion clearly show that Plaintiffs suffered injury, in the form of loss of funds, as a direct and proximate result of fraudulent misrepresentations by the Retail Owners, through the Retailers. But for these Defendants' acts of submitting fraudulent bills containing material misrepresentations, Plaintiffs would not have paid the no-fault automobile insurance claims. Indeed, based solely on these Defendants' intentional deception and concealment of material facts in this regard, upon which Plaintiffs justifiably relied, these Defendants defrauded Plaintiffs into paying millions of dollars in bogus medical bills. In view of the foregoing, it is respectfully submitted that the facts alleged in the Complaint establish the merits of Plaintiffs' common law fraud claim. *See Aminov*, 2014 WL 527834, at *6 (plaintiffs adequately pled common law fraud as against defaulting defendants); *Infinity Health Prods.* 2012 WL 1427796, at *5-6.

**C.  Plaintiffs' Complaint States Valid Unjust Enrichment Claims for Relief.**

Under New York law, recovery for unjust enrichment requires establishing that: (1) the defendant benefitted; (2) at the plaintiff's expense; and (3) equity and good conscience require restitution. *See Aminov*, 2014 WL 527834, at *7 ("the defaulted defendants should not be rewarded for engaging in a scheme to fraudulently bill [plaintiff] through the guise of filling prescriptions for [plaintiff's] no-fault claimants") (citing *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010)); *see also State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010) ("Unjust enrichment is an equitable principle, an obligation which the law creates, in the absence of any agreement, when and because acts of the parties or others have placed in the possession of one person money . . . under such circumstances that in equity and good conscience he ought not to retain it.") (quoting *Mfrs. Hanover Trust Co. v. Chem. Bank,* 559 N.Y.S.2d 704, 707 (1st Dep't 1990)).

Plaintiffs' Complaint alleges that Matlyuk, through Almatcare Medical Supply; Avetisyan, through AVA Custom Supply; and Miller, through Daily Medical, received monies that they were not entitled to receive as a direct result of their fraudulent claim submissions. Moreover, Matlyuk, through Almatcare Medical Supply; Avetisyan, through AVA Custom Supply; and Miller, through Daily Medical, "set up elaborate schemes to siphon money out of a statutory scheme designed for the public good[,]" and it is clear that "equity and good conscience require restitution." *Infinity Health Prods. Ltd.*, 2012 WL 1427796, at *6. As such, Plaintiffs respectfully submit that they have sufficiently alleged that the Defaulted Retail Defendants have been unjustly enriched.

# IV.

# PLAINTIFFS ARE ENTITLED TO TREBLE DAMAGES

Having established that Plaintiffs' Complaint sufficiently states a valid cause of action with respect to its RICO, Common Law Fraud and Unjust Enrichment Claims, and that Plaintiffs are

entitled to Default Judgment because the Defaulted Defendants' default was willful, there are no meritorious defenses, and to hold otherwise would substantially prejudice Plaintiffs given the circumstances of this case, the only remaining issue for the Court's determination involves the calculation of damages. In that regard, because Allstate has pled sufficient facts to establish, as a matter of law, defendants' liability, the Court may determine damages based on the submission of supporting affidavits. *See Aminov*, 2014 WL 527834, at *7 (finding that because plaintiff-insurer Allstate has pled sufficient facts to establish, as a matter of law, defendants' liability as to RICO and common law fraud arising from a No-fault scheme, the court may determine damages based on the affidavits filed by Allstate) (*quoting Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under Rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment.")); *see also Fustok v. ContiCommodity Servs. Inc.,* 873 F.2d 38, 40 (2d Cir. 1989) (holding that a court "may, but need not" hold a hearing as to damages and "may rely on detailed affidavits or documentary evidence" to establish the appropriate damages to award); *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1991)("[Rule 55 (b)(2)] does not require the district judge conduct a hearing . . . . [W]e have upheld an award of damages where 'the district court relied upon detailed affidavits and documentary evidence.'") (quoting *Fustok,* 873 F.2d at 40). Here, in support of their claim for damages, Plaintiffs have submitted the Bruno Declaration, which establishes the amounts paid by Plaintiffs to Defendants, as well as spreadsheets itemizing each payment made by Plaintiffs to the relevant Retailer enterprise in which the Defaulted Defendants are alleged to have participated. Each spreadsheet sets forth the total amounts paid by Plaintiffs to the Retailer enterprise. *See* McKenney

Decl. at Exhibits "20" through "23." A table summarizing the damages Plaintiffs seek with regard to each enterprise relevant to this application is attached as Exhibit "25."

### A.  Defaulted Defendants Are Jointly And Severally Liable.

As a threshold matter, under Plaintiffs' RICO Causes of Action, the Defaulted Retail Owners and Defaulted Wholesale Defendants are jointly and severally liable for all damages incurred by Plaintiffs relating to the RICO Claims for Relief in which they are named. *See Allstate Ins. Co. v. Kumar*, No. 10-CV-8166, 2013 WL 2395748, at *3 (S.D.N.Y. Jun. 3, 2013) (citing *Abdou-Khadra v. Mahshie*, 4 F.3d 1071, 1074 n.1 (2d Cir. 1993); *Smirnov*, 2013 WL 5407224, at *15 ("Treble damages and joint and several liability are properly imposed under RICO"). The Defaulted Defendants that are named as defendants in each RICO count must be held jointly and severally liable for all of the fraudulent billing submitted by each enterprise and Plaintiffs should be awarded treble damages in amounts referenced in Exhibit "25."

### B.  Plaintiffs Are Entitled To Treble Damages Under The Civil Rico Statute

Plaintiffs are seeking a judgment for treble damages on their RICO claims against Avetisyan, Matlyuk, Miller and IG&NAT Services. For the Court's convenience, in support of this application, Plaintiffs have included Exhibits "20" through "23" to the McKenney Declaration, which are copies of spreadsheets itemizing each payment made by Plaintiffs to relevant Retailer enterprises in which Defendants Avetisyan, Matlyuk, Miller, and/or the IG&NAT Services are alleged to have participated, along with the Bruno Declaration which further details the amounts paid by Plaintiffs and explains how the damages have been calculated.

Pursuant to the RICO statute, Plaintiffs are entitled to treble damages on their RICO claims for relief. *See* 18 U.S.C. § 1964 (c) (person injured by RICO violation may sue for "threefold the damages he sustains"); *Smirnov*, 2013 WL 5407224, at *15 ("Treble damages and joint and several liability are properly imposed under RICO"). Treble damages are even appropriate in the case of

default. *See Howell*, 2013 WL 5447152, at *7. Consistent with the foregoing, Plaintiffs seek judgment on their RICO claims against each defendant included in the chart annexed to the McKenney Declaration as Exhibit "25." To determine the amount of damages, Plaintiffs identified their payments to each Retailer enterprise for reimbursement of fraudulent No-fault claims that the Retailers were not entitled to receive.  Plaintiffs then calculated their damages on the RICO claims by trebling that amount. Accordingly, the chart in Exhibit "25" sets forth the compensatory damages attributable to each Defaulted Defendant and the trebled amount pursuant to the RICO statute.  From the foregoing amounts, Plaintiffs deducted any settlement payments made by other non-defaulted defendants named in the RICO claims for relief who have settled at the time of this application.   However, because the settlement amounts are part of confidential settlement agreements and, therefore, cannot be disclosed, the amounts deducted from the final judgment are not identified in Exhibit "25."[11]   In that regard, the judgment amounts Plaintiffs seek in Exhibit "25" reflect the treble damages that Plaintiffs are entitled to receive, minus any amounts received as part of confidential settlements.

## V.

## PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST ON THEIR CLAIMS

Plaintiffs are entitled to pre-judgment interest on their claims. *See Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.*, 11-CV-4261 (ARR)(RER), 2013 WL 764735, at *8-9 (E.D.N.Y. Feb. 8, 2013), *report and recommendation adopted*, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013) (awarding prejudgment interest on common law claims); *Infinity Health Prods.*, 2012 WL 1427796, at *10 (awarding pre-judgment interest on RICO (before trebling), fraud and unjust enrichment claims); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 09-CV-2990 (JS), 2010 WL 890975

---

[11] A copy of Exhibit "25" with the settlement amounts can be provided to the Court under seal upon request.

(E.D.N.Y. Mar. 8, 2010) *aff'd*, 409 F. App'x 453 (2d Cir. 2011) (awarding prejudgment interest on common law fraud and unjust enrichment claims); *Steinberg v. Sherman*, 07-CV-1001 (WHP), 2008 WL 1968297, at *5 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . unjust enrichment qualify for the recovery of prejudgment interest . . . ."). This Court has recognized that a complete recovery necessarily requires the component of prejudgment interest. *See In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996) ("The primary purpose for awarding pre-judgment interest is to compensate a plaintiff for the loss of the use of money.") (citations omitted). In the case of Plaintiffs' RICO claims, where the statute is silent as to prejudgment interest, this Court has held that such an award lies within "the sound discretion of the district court." *Aminov*, 2014 WL 527834, at *9 (citing *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 495 (6th Cir. 2013); *see also Abdou-Khadra v. Mahshie*, 4 F.3d 1071, 1084 (2d Cir. 1993) ("Since the RICO statute does not contain any provisions concerning the award of prejudgment interest, the district court ha[s] discretion as to whether to award such interest.").

New York law provides for prejudgment interest on damages, computed from the "earliest ascertainable date the cause of action existed or upon all of the damages from a single reasonable intermediate date" at the non-compoundable rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5001; *IAV Med. Supply, Inc.*, 2013 WL 764735 at * 8-9; *Infinity Health Prods.*, 2012 WL 1427796 at *10; *see also Aminov*, 2014 WL 527834, at *9 (district court sitting in New York may use New York statutory rate of prejudgment interest where governing federal statute silent as to such awards) (citing *Donogue v. MIRACOR Diag.*, 00 CIV 6696 (JGK)(RLE), 2002 WL 233188, at *4 (S.D.N.Y. Feb. 11, 2002)). Here, in light of the substantial number and amount of fraudulent insurance claims Plaintiffs have paid, resulting in Plaintiffs' loss of the use of the funds, Plaintiffs respectfully request that interest be calculated from the first day of the year following the date of

Plaintiffs' payment to the relevant Retailer's enterprise.[12] Calculating interest in this manner produces an interest amount that is less than the total amount of interest Plaintiffs may seek under New York State law, but is easier for the Court to calculate and has been adopted by courts within this district. *See, e.g.*, *Aminov*, 2014 WL 527834, at *9; *IAV Med. Supply, Inc.*, 2013 WL 764735, at *8-9 (utilizing "first day of the year" methodology); *Infinity Health Prods.* 2012 WL 1427796, at *10-12 (same); *see also Li-Elle Serv.*, 2013 WL 829302, at *11-12 (same). Interest calculations for the relevant Retailer enterprises are annexed to the McKenney Declaration as Exhibit "24."

## VI.

## PLAINTIFFS ARE ENTITLED TO A DECLARATORY JUDGMENT

Plaintiffs' are entitled to a declaratory judgment that they are not obligated to pay the Retail Defendants unpaid no-fault claims.  A party seeking a declaratory judgment from a district court must show the existence of an "actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993); 28 U.S.C. § 2201(a). An "actual controversy" is "real and substantial . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (internal citations omitted).

Declaratory relief is appropriate where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings. *See Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971); *E.R. Squibb & Sons, Inc. v. Lloyd's & Co.*, 241 F.3d 154, 177 (2d Cir. 2001). A court has broad discretion to decide whether to render a declaratory judgment. *See Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1100 (2d Cir. 1993).

---

12. For convenience, interest was calculated thru May 1, 2020.

In deciding whether a plaintiff has stated a claim for declaratory relief, a federal court applies the state substantive law of the forum in which it sits. *See NAP, Inc. v. Shuttletex, Inc.*, 112 F. Supp. 2d 369, 372 (S.D.N.Y. 2000); *see also Universal Acupuncture Pain Services v. State Farm Mut. Auto Ins. Co.*, 196 F. Supp. 2d 378, 385 (S.D.N.Y. 2002).

Plaintiffs' Complaint clearly establishes the existence of an actual case in controversy between Plaintiffs and the Retail Defendants regarding fraudulent billing for DME and orthotic devices that allegedly have been provided to Plaintiffs' insureds. By way of example and not limitation, the Complaint sets forth numerous examples where the Retailers fraudulently billed Plaintiffs for DME and/or orthotics that were not in the Fee Schedule by (i) utilizing phantom codes for devices for which there was no published Fee Schedule; (ii) charging Plaintiffs more than the lesser of their true acquisition costs, plus 50% or the usual and customary price charged to the general public; and/or (iii) utilizing Fee Schedule codes and descriptions which did not correspond with the equipment purportedly provided. Exh. "2" at ¶¶ 182, 187-89, 192-98, 203, and 207 and Compl. Exhs. 2, 11-31. The Complaint also sets forth numerous examples where the Retailers fraudulently billed Plaintiffs for DME and/or orthotics that were in the Fee Schedule by utilizing Fee Schedule codes (i) for expensive custom fabricated devices, despite the fact that to the extent anything was provided, the devices were cheap, elastic, one-size-fits-all items that were not custom fabricated to the Claimants' measurements; (ii) for expensive custom-fitted DME and/or orthotic devices, such as lumbar sacral orthoses ("LSOs"), as well as knee, wrist, elbow and shoulder braces that were never provided; and (iii) for expensive DME and/or orthotic devices that required a fitting and/or adjustment that they never performed. *See e.g., id*. at ¶¶ 185, 208-37 and Compl. Exhs. 8-9, 34-41.  As a result, Plaintiffs' request for declaratory relief is based upon this

42

pervasive, fraudulent scheme whereby the Retail Defendants continue to seek payment for bills containing:

> (i) false and fraudulent misrepresentations submitted to Plaintiffs about the DME and/or orthotic devices purportedly supplied to No-fault Claimants and the amounts they were entitled to be reimbursed in order to manipulate the payment formulas under the No-fault Law and New York State Medicaid Fee Schedule in their claims submissions and obtain reimbursement far in excess of the maximum permissible charges they could submit to Plaintiffs; and

> (ii) false and fraudulent misrepresentations submitted to Plaintiffs about DME and/or orthotic devices purportedly supplied to No-fault Claimants by submitting claims for DME and/or orthotic devices they never supplied to No-fault Claimants.

*See id.* at ¶ 1124-25. The relief sought will clearly resolve the issue of the Defaulted Retail Defendants' fraudulent bills and terminate the controversy with respect to over $720,000 in pending and outstanding No-fault claims. *See* Bruno Decl. ¶ 6. Indeed, the Defaulted Retail Defendants continue to file and pursue collections proceedings in the civil courts of the State of New York and the American Arbitrations Association with 177 suits and arbitrations currently pending. *See* McKenney Decl. Exh. "26." In that regard, in the past six months, the Defaulted Retailers have obtained judgments and/or arbitration awards in at least eight collections actions pending during the course of the instant RICO action. *See* McKenney Decl. ¶ 50, Exh. "30." Furthermore, in the past six months, Plaintiffs have issued payments on eight claims exceeding $29,000.00, including a payment of $6,702.54 issued to Retail Defendant Almatcare in connection with Claimant T.N., claim number 467540454, as recently as April 8, 2020. *See* McKenney Decl. ¶51, Exh. 31. Furthermore, at least 20 of the pending collection matters have appearances, filing dates and/or hearings within the next ten months. *See* McKenney Decl. ¶ 49. In these matters, the Defaulted Retail Defendants are seeking payment for the very same DME and/or orthotic devices that Plaintiffs' Complaint alleges has been fraudulently billed. The foregoing demonstrates that there remains an actual case and controversy with each of the Defaulted Retail Defendants.

Accordingly, because the Defaulted Retail Defendants are deemed to have admitted the allegations in the Complaint, Plaintiffs are entitled to a declaration that they are not obligated to pay these outstanding claims.

Courts in this district have granted declaratory relief in numerous cases where the defendants, including *Daily Medical and Miller,* were involved in similar schemes to defraud insurers for charges that are not permissible under the No-fault Law. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Jamaica Wellness Med., P.C.*, 16-CV-04948 (FB)(SMG), 2019 WL 3330240, at *7 (E.D.N.Y. May 31, 2019), *report and recommendation adopted*, 2019 WL 2723548 (E.D.N.Y. July 1, 2019) (granting declaratory relief to insurer relating to unpaid outstanding claims submitted by Gregory Miller through Daily Medical Equipment Distribution Center, Inc, pursuant to a similarly alleged fraudulent scheme); *Gov't Employees. Ins. Co. v. Active Care*, 2015 WL 7281630 (E.D.N.Y. Nov. 16, 2015) (granting declaratory relief to insurer relating to unpaid outstanding claims submitted by defendant pursuant to a DME fraudulent scheme); *Gov't Employees. Ins. Co. v. Infinity Health Products, Ltd.*, 2012 WL 1427796 (E.D.N.Y. April 6, 2012), adopted by *Gov't Employees. Ins. Co. v. Infinity Health Products, Ltd.*, 2012 WL 1432213 (E.D.N.Y. April 25, 2012) (granting declaratory relief to insurance company regarding fraudulent DME claims submitted by defendants which were pending in state court proceedings); *Gov't Employees. Ins. Co. v. IAV Medical Supply, Inc.*, 2013 WL 764735 (E.D.N.Y. Feb. 8, 2013), adopted by *Gov't Employees. Ins. Co. v. IAV Medical Supply, Inc.*, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013) (granting declaratory judgment to insurer regarding fraudulent pending DME claims submitted by defendants); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 09-CV-2990 (JS)(WDW), 2009 WL 10449036 (E.D.N.Y. Dec. 30, 2009) (granting declaratory relief to insurer relating to unpaid claims).

Accordingly, Plaintiffs' Complaint sets forth all of the requisite elements to establish a proper claim for a declaratory judgment in the context of this matter, and the requested declaration should be granted.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter judgment by default against the Defaulted Defendants in the amounts set forth in Exhibit "1" of the supporting McKenney Declaration and a declaratory judgment.

Dated: New York, New York
       July 1, 2020

                         **MORRISON MAHONEY, LLP**

                      By:   James A. McKenney
                             Robert A. Stern, Esq.
                             James A. McKenney, Esq.
                             Lee Pinzow, Esq.
                             Attorneys for Plaintiffs
                             Wall Street Plaza
                             88 Pine Street, Suite 1900
                             New York, NY 10005
                             T: (212) 825-1212
                             F: (212) 825-1313