UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ALLSTATE INSURANCE COMPANY, *et al.*,

                              Plaintiffs,

-against-

ARTUR AVETISYAN, *et al.*,

                              Defendants.

17-CV-4275
(RPK)(RML)

DECLARATION OF MICHAEL BRUNO IN SUPPORT OF PLAINTIFFS' MOTION FOR A DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P. 55

---

Michael Bruno, declares pursuant to 28 U.S.C. § 1746 that the following is true and correct:

      1.      I am employed as an Analyst in the Special Investigations Unit ("SIU") of Allstate Insurance Company ("Allstate"), one of the Plaintiffs in the above-entitled action, and submit this affidavit in support of the Motion for a Default Judgment by Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and Northbrook Indemnity Company ("Plaintiffs") against Artur Avetisyan ("Avetisyan"), Alexandra Matlyuk ("Matlyuk"), Gregory Miller ("Miller"), Almatcare Medical Supply Inc. ("Almatcare Medical Supply"), AVA Custom Supply, Inc. ("AVA Custom Supply"), Daily Medical Equipment Distribution Center, Inc. ("Daily Medical"), and IG & NAT Services, Inc. (collectively the "Defaulted Defendants"). In particular, this declaration is limited to setting forth the amounts paid by Plaintiffs, resulting in the damages alleged in Plaintiffs' Complaint as a result of the Defaulted Defendants' fraudulent acts.

      2.      By way of brief background, SIU is responsible for investigating suspicious claims for, among other things, medical services submitted under No-fault automobile insurance policies issued by Allstate. Pursuant to Article 4 of the New York Insurance Law and implementing

1

regulations, insurance companies are mandated to create, establish and maintain an SIU that is responsible for investigating suspect claims. My responsibilities include, but are not limited to, *identifying trends and patterns of fraud; providing analytical support for the investigation of suspected fraud rings when such patterns are identified;* assisting in the prosecution of insurance fraud rings based on such investigations through the commencement of civil actions to recoup money paid by Allstate as a result of fraud and, to the extent requested, working with law enforcement agencies in connection with their criminal investigations and/or prosecutions. In my role as an SIU Analyst, I assisted with and was involved in the identification and investigation of the defendants in this action, including the Defaulted Defendants.

3. In connection with the instant application for a default judgment, I reviewed payment summaries, which are maintained by Plaintiffs in the ordinary course of their business, which reflect payments that Plaintiffs made to the retailers in connection with their claims for No-fault reimbursement. Specifically, the payment summaries are records that Plaintiffs maintain in the ordinary course of business and that itemize each check Plaintiffs issued to each of the retailer defendants in connection with the retailers' No-fault insurance claims. Plaintiffs create and maintain these payment summaries contemporaneously with the issuance of the specific check to a particular retailer. Attached to the McKenney Declaration as Exhibits "20" through 23" are spreadsheets prepared by counsel containing information extracted from the payment summaries that reflect payments Allstate made to the relevant durable medical equipment DME Retailer enterprises relevant to this motion. I compared the spreadsheets in Exhibits "20" through "23" to the payment summaries maintained by Allstate and confirmed that the information in them is true and correct.

4. Based on my review of the foregoing documents, I have determined that during the relevant time period of the First Amended Complaint (hereinafter the "Complaint"), Plaintiffs paid the Defaulted Defendants through the Retailer enterprises in which they participated in excess of $945,000 (exclusive of any interest Plaintiffs may be entitled to recover), as a result of fraudulent claims submitted by, among others, the Defaulted Defendants, through the Retailers. As alleged in the Complaint, had Plaintiffs known of the fraudulent content of the bills, delivery receipts, wholesale invoices and prescriptions contained in the claims submitted by the Retailers, Plaintiffs would not have paid the Retailers' claims for No-fault insurance benefits submitted in connection therewith.

5. In addition, with respect to Defaulted Retailer Defendants Almatcare Medical Supply, AVA Custom Supply, and Daily Medical, I have reviewed billing summaries, which are maintained by Plaintiffs in the ordinary course of their business, that itemize and reflect the details of each claim submitted by DME retailers to Plaintiffs for No-fault reimbursement. Plaintiffs create and maintain these billing summaries contemporaneously with receipt of a claim from each retailer and when each claim is processed. Attached to the McKenney Declaration as Exhibits "27" through "29" are spreadsheets prepared by counsel containing information extracted from the billing summaries that reflect the bills Allstate received from the Defaulted Retailers but which remain unpaid. I compared the spreadsheets in Exhibits "27" through "29" to the billing summaries maintained bu Allstate and confirmed that the information in them is true and correct.

6. Based on my review of the billing and payment summaries, I have determined that there is in excess of $720,000 in pending and/or unpaid claims that are actively in dispute. The pending and/or unpaid claims actively in dispute from each Defaulted Retailer Defendant are as follows:

3

- $52,102.38 in claims made by Almatcare Medical Supply
- $32,152.88 in claims made by AVA Custom Supply
- $636,263.44 in claims made by Daily Medical

7. The Defaulted Retailers continue to litigate and/or arbitrate active matters to recover No-fault benefits on claims admitted to be fraudulent in this action by virtue of their default. In that regard, Defaulted Retailer Defendants have commenced and continue to litigate and/or arbitrate in at least 177 No-fault collections against Allstate in the New York City Civil courts and/or No-fault collection arbitrations through the American Arbitration Association, in which the Defaulted Retail Defendants are seeking to recover No-fault benefits that are connected to the fraudulent billing which is the subject of this action. These 177 No-fault collection actions are set forth in Exhibit "26," annexed to the McKenney Declaration.

8. Moreover, in the past six months, Allstate has issued in excess of $29,000 in payments on claims by the Defaulted Retailers. A list of these payments is attached to the McKenney Declaration as Exhibit "31." I compared the spreadsheet in Exhibit "31" to the payment summaries maintained by Allstate and confirmed that the information in them is true and correct.

9. I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief, and that the amounts referenced herein are accurate and justly due and owed to Plaintiffs.

**WHEREFORE**, it is respectfully requested that the Court grant Plaintiffs' application for a default judgment.

Dated: June 5, 2020

                                                             Michael Bruno